# *TRANSCRIPT OF PROCEEDINGS*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO.: 2008-4327



IN RE:

MIRABILIS VENTURE, INC.,
DEBTOR.

_____/

F I L E D

AUG 1 6 2010

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

HEARING ON VARIOUS OBJECTIONS

BEFORE:         THE HONORABLE KAREN S. JENNEMANN
DATE:           MAY 19, 2010
TIME:           2:51 P.M.
LOCATION:       UNITED STATES BANKRUPTCY COURT
                137 WEST CENTRAL BOULEVARD
                ORLANDO, FLORIDA 32801

**APPEARANCES:**

ON BEHALF OF THE DEBTOR:              SCOTT SHUKER, ESQUIRE
                                      JUSTIN LUNA, ESQUIRE
                                      VICKI KATAR, ESQUIRE

SPECIAL COUNSEL FOR DEBTOR            ROY COBERT, ESQUIRE

ON BEHALF OF THE UNITED STATES        SCOTT PARK, ESQUIRE

ON BEHALF OF UNITED STATES IRS        CAROL IDE, ESQUIRE

ON BEHALF OF WITNESS, ANITA CREAM     JERRY LINSCOTT, ESQUIRE

ON BEHALF OF FORGE AND ITS
  AFFILIATED CREDITORS:               ERIC VALDEZ, ESQUIRE



Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
*Sandra A. Dawkins, President • Professional Reporting Since 1977*






2

1                                INDEX

2    TESTIMONY OF ROBERT CUTHILL, JR.

3        DIRECT EXAMINATION BY MR. COBERT            15

4        CROSS EXAMINATION BY MR. PARK               37

5        REDIRECT EXAMINATION BY MR. COBERT          51

6    TESTIMONY OF ELIZABETH GREEN

7        DIRECT EXAMINATION BY MR. PARK              55

8        CROSS EXAMINATION BY MR. SHUKER             63

9    TESTIMONY OF ANITA CREAM

10       DIRECT EXAMINATION BY MR. PARK              66

11       CROSS EXAMINATION BY MR. COBERT             75

12       REDIRECT EXAMINATION BY MR. PARK            95

13       RECROSS EXAMINATION BY MR. COBERT           96

14   CERTIFICATE OF OATH                            109

15

16

17

18

19

20

21

22

23

24

25

| | 3 |
|---|---|
| 1 | PROCEEDINGS |
| 2 | THE CLERK: THE COURT CALLS CASE NUMBER 08-4327, |
| 3 | MIRABILIS VENTURES, INC. |
| 4 | ALL INTERESTED PARTIES, PLEASE COME FORWARD AND |
| 5 | ENTER AN APPEARANCE. |
| 6 | MR. COBERT: GOOD AFTERNOON, AGAIN, YOUR HONOR, ROY |
| 7 | COBERT, APPEARING AS SPECIAL LITIGATION COUNSEL FOR |
| 8 | MIRABILIS AND LITIGATION PENDING OUTSIDE OF THE |
| 9 | BANKRUPTCY COURT. |
| 10 | MR. SHUKER: GOOD AFTERNOON, YOUR HONOR, SCOTT |
| 11 | SHUKER, JUSTIN LUNA AND VICKI KATAR, ON BEHALF OF MIRABILIS |
| 12 | AND MR. CUTHILL IS PRESENT. |
| 13 | MR. PARK: GOOD AFTERNOON, YOUR HONOR, SCOTT PARK, |
| 14 | ON BEHALF OF THE UNITED STATES. |
| 15 | MR. LINSCOTT: GOOD AFTERNOON, YOUR HONOR, JERRY |
| 16 | LINSCOTT, WITH BAKER AND HOSTETTLER. I'M COUNSEL FOR ONE |
| 17 | OF THE WITNESS ON ATTORNEY-CLIENT PRIVILEGE ISSUES, YOUR |
| 18 | HONOR. |
| 19 | MR. VALDEZ: ERIC VALDEZ, ON BEHALF OF FORGE AND ITS |
| 20 | AFFILIATED CREDITORS. |
| 21 | THE COURT: AND DOES ANY OTHER PARTY CARE TO MAKE |
| 22 | AN APPEARANCE? |
| 23 | WE ARE HERE TODAY IN CONNECTION WITH VARIOUS |
| 24 | OBJECTIONS BY THE DEBTOR TO CLAIMS FILED BY CREDITORS AND |
| 25 | THE --- IN MIRABILIS AS WELL AS AEM. AND THEN I SET THE |

1     HEARING ON THE MOTION BY THE DEBTOR TO CONFIRM PROPERTY

2     OF THE ESTATE. PURSUANT TO THE ORDER SETTING TODAY'S

3     HEARING, I THINK EVERYBODY UNDERSTANDS --- I HOPE THEY

4     UNDERSTAND WHY I TRIED TO EXPLAIN SOME OF THE ORDERS

5     SETTING THE HEARING.

6         AND MR. SHUKER, ON THE RESOLVED MATTERS.

7         MR. SHUKER: THE RESOLVED MATTERS ON THE DOCKET ARE

8     NUMBERS ONE THROUGH FIVE, VARIOUS OBJECTIONS AND

9     RESPONSES AND MS. KATAR HAS HANDLED THAT AND DRAFTED AN

10     AGREED ORDER, IF I CAN HAVE HER EXPLAIN THAT.

11         THE COURT: AND ONE THROUGH FIVE.

12         MR. SHUKER: THE OBJECTION TO CLAIM 38 OF RKT,

13     OBJECTION TO DEBTOR TO CLAIM 39 BY ---

14         THE COURT: MS. KATAR, WHY DON'T YOU JUST EXPLAIN IT

15     TO ME.

16         MS. KATAR: GOOD AFTERNOON, YOUR HONOR. YES, WE

17     REACHED AN AGREEMENT WITH RESPECT TO THE DISPOSITION OF

18     CLAIMS NUMBERED 38 THROUGH 52.

19         WITH RESPECT TO CLAIMS NUMBERED 38 THROUGH 49 AND

20     CLAIM NUMBER 52, THOSE WILL BE DISALLOWED IN THEIR

21     ENTIRETY AND STRICKEN.

22         WITH RESPECT TO CLAIM NUMBER 51, OUR OBJECTION WILL

23     BE WITHDRAWN AND THE TRUST WILL HAVE AN ALLOWED

24     UNSECURED CLAIM OF $175,000.00.

25         AND FINALLY, WITH RESPECT TO THE TRUST CLAIM, NUMBER

1   50, THAT WILL BE REDUCED TO THE AMOUNT OF $1,158,568.00, AND

2   THAT WILL BE ALLOWED AS A GENERAL UNSECURED CLAIM. THE

3   BALANCE OF $240,498.00 WILL BE DISALLOWED AND STRICKEN.

4           WE HAVE AN AGREED ORDER AND WE WILL BE READY TO

5   UPLOAD THAT.

6           THE COURT: VERY GOOD. WE MAY NOT CARRY EVERYTHING

7   PROPERLY OVER. ALL OF THAT WASN'T ON THE CALENDAR, SO I

8   DIDN'T REVIEW SOME OF THAT. I'M NOT SURE I DISPUTE THE

9   PARTY'S RESOLUTION. IT JUST WASN'T ON THE COURT'S

10  CALENDAR. I DIDN'T KNOW THAT RESPONSES HAD BEEN FILED.

11          DOES ANY OTHER TAKE A POSITION? WHY DON'T YOU

12  SUBMIT THE PROPOSED ORDER, IF I HAVE ANY QUESTIONS, I'LL LET

13  YOU KNOW.

14          MR. KATAR: THANK YOU.

15          THE COURT: BUT I'LL HAVE TO TAKE SOME TIME TO LOOK AT

16  THOSE.

17          MR. SHUKER: AND WE'VE BEEN WORKING WITH COUNSEL.

18  IT'S THE SAME COUNSEL FOR ALL FIVE.

19          THE COURT: YES. I THINK IT'S JUST THE WAY IT WAS ON THE

20  CALENDAR.

21          MR. SHUKER: OKAY.

22          THE COURT: I CERTAINLY MS. FATUCHI SEND REFERENCES

23  TO EVERYBODY, BUT IT JUST DIDN'T GET TRANSPOSED THAT WAY

24  ON THE CALENDAR. ANY WAY, I WILL FOLLOW UP ON THAT. BUT

25  ASSUME THAT I WILL APPROVE THE AGREEMENT, WHICH GETS US

1     TO ---

2           MR. SHUKER: IT'S UP TO YOU, YOUR HONOR. WE HAVE IN

3     AEM, THE PRE-TRIAL ON OUR OBJECTION THE IRS' CLAIM, BUT I

4     ASSUME MS. IDE IS ALSO STAYING FOR THE MOTION TO CONFIRM

5     PROPERTY, SO THE ONE IS JUST SCHEDULING THOUGH.

6           THE COURT: WHY DON'T WE GO AHEAD AND DO THAT

7     BECAUSE I'M NOT SURE MS. IDE WILL WANT TO STICK AROUND.

8     SHE MAY. SHE MAY NOT. I DON'T KNOW.

9           ANYWAY, WE ARE HERE IN CONNECTION WITH THE

10    CONTESTED ISSUE OF CLAIM 4 OF THE IRS AND WHAT'S THE

11    STATUS?

12          MR. SHUKER: I THINK WE ARE READY TO SET A FINAL

13    EVIDENTIARY HEARING. MS. IDE STILL HAS A DEPOSITION TO TAKE.

14    SHE'S TAKEN ONE. SHE NEEDS TO TAKE ONE OTHER, THAT'S I

15    THINK SET IN MID-JUNE. WE'RE GOING TO WANT TO TAKE

16    WHOMEVER THEY'RE GOING TO HAVE TESTIFY ONCE THAT PERSON

17    IS UP TO SPEED. SO I THINK THERE'S BEEN DISCUSSION OF AUGUST

18    AS THE TIMEFRAME.

19          MS. IDE: GOOD AFTERNOON, YOUR HONOR, CAROL IDE FOR

20    THE UNITED STATES INTERNAL REVENUE SERVICE IN THE AEM

21    MATTER.

22          MR. SHUKER IS CORRECT, WE TOOK MR. CUTHILL'S

23    DEPOSITION LAST TUESDAY. WE HAD ALSO SCHEDULED THE

24    DEPOSITION OF THE CPA FOR WEDNESDAY, MAY 12TH. HIS COUNSEL

25    --- HE'S WITH KPMG --- AND KPMG COUNSEL HAD A LAST MINUTE

1    CONFLICT THAT DAY AND SO, WITH EVERYONE'S AGREEMENT,

2    RESCHEDULED THAT DEPOSITION FOR JUNE 18TH.

3         HOWEVER, MR. CUTHILL'S DEPOSITION, HE DISCLOSED NINE

4    ADDITIONAL INDIVIDUALS THAT WE FEEL OBLIGATED TO

5    INTERVIEW. THEY WEREN'T DISCLOSED IN RESPONSES TO OUR

6    FORMAL DISCOVERY REQUESTS. THEY WERE JUST DISCLOSED LAST

7    WEEK. AND WE ARE TRYING TO TRACK DOWN THOSE INDIVIDUALS.

8    ONE IS AN ATTORNEY AND I NEED THE ASSISTANT ATTORNEY

9    GENERAL'S PERMISSION TO SUBPOENA AN ATTORNEY FOR

10   DEPOSITION.

11        I AM HOPING TO SCHEDULE AT LEAST INTERVIEWS WITH

12   THOSE NINE INDIVIDUALS IN THE NEXT TWO OR THREE WEEKS AND

13   WILL HAVE A BETTER SENSE OF WHETHER WE NEED TO SCHEDULE

14   DEPOSITIONS OF THOSE INDIVIDUALS. BUT ASSUMING WE CAN GET

15   THAT DONE ON THE NEXT FOUR TO SIX WEEKS, AT THAT POINT, THE

16   REVENUE OFFICER WHO IS AUDITING THE EMPLOYMENT TAX

17   RETURNS WILL HAVE AN OPPORTUNITY TO COMPLETE HIS REPORT.

18   ONCE HIS REPORT IS COMPLETED, WHICH I DON'T ANTICIPATE TO

19   TAKE VERY LONG AFTER WE HAVE ALL OF OUR DEPOSITION OR

20   INTERVIEW TRANSCRIPTS, WE WOULD AT A POINT TO BE READY TO

21   SCHEDULE A FINAL EVIDENTIARY HEARING.

22        I THINK THIS CASE BECAUSE IT INVOLVES A REQUEST FOR A

23   REFUND OF 26-MILLION DOLLARS, WOULD BENEFIT GREATLY FROM

24   HAVING A PRE-TRIAL CONFERENCE WHERE THE TWO OF US CAN SIT

25   DOWN AND DO A FORMAL PRE-TRIAL STATEMENT WITH THE

8

| 1 | ISSUES, EXCHANGE EXHIBITS, EXCHANGE WITNESSES, I THINK THAT |
|---|---|
| 2 | WOULD EXPEDITE TRIAL AND WOULD AVOID ANY SURPRISES OR |
| 3 | ANY LAST MINUTE DOCUMENTS DRIPPING IN FROM EITHER PARTY. |
| 4 | IF WE WANT TO TRY AND SCHEDULE A PRE-TRIAL |
| 5 | CONFERENCE FOR LATE AUGUST, I THINK THAT WOULD BE --- I |
| 6 | THINK THAT WOULD BE DOABLE. I MEAN, IT WOULD BE A PRETTY |
| 7 | BUSY SUMMER AND IT'S DIFFICULT TO GET ALL OF THESE NINE OR |
| 8 | TEN PEOPLE SCHEDULES READY, BUT I THINK WE CAN DO IT. |
| 9 | THE COURT: IS THERE ANY REMOTE POSSIBILITY OF |
| 10 | RESOLUTION OR DO YOU --- I MEAN, YOU NEVER KNOW FOR SURE, |
| 11 | BUT DO YOU THINK THAT'S POSSIBLE? |
| 12 | MS. IDE: DISCUSSIONS HAVE BEEN DIFFICULT, YOUR HONOR. |
| 13 | WE'RE NOT RULING IT OUT. WE NEVER DO. THERE ARE SOME --- |
| 14 | YOU KNOW, AEM, ACCORDING TO THE IRS RECORDS OWES ABOUT 3- |
| 15 | MILLION DOLLARS IN 941 TAXES. THE DEBTOR IS REQUESTING |
| 16 | ABOUT A 26-MILLION DOLLAR REFUND. I THINK THAT ONCE WE |
| 17 | INTERVIEW A FEW MORE PEOPLE, IT MAY BE THAT THE DEBTORS |
| 18 | WANT TO RESUME SOME KIND OF DISCUSSIONS, BUT WE HAVE NOT |
| 19 | HAD VERY FRUITFUL DISCUSSIONS TODAY. |
| 20 | THE COURT: OKAY. AND MR. SHUKER, WHAT IS YOUR |
| 21 | THOUGHTS? |
| 22 | MR. SHUKER: YOUR HONOR, I DON'T KNOW ABOUT THE NINE |
| 23 | FOLKS. I THINK MS. IDE IS COMBINING THE REQUEST FOR REFUND |
| 24 | WITH THE CLAIM OBJECTION. THIS HAPPENED, AS YOU WILL |
| 25 | RECALL, MIRABILIS, THE SAME TYPE OF THING, THEY WERE LOSING |

1    FOCUS OF THE FACT THAT THIS IS JUST AN OBJECTION TO THEIR 3-

2    MILLION DOLLAR CLAIM.

3    IF SHE WANTS TO COMBINE THAT WITH THE TRIAL TO GIVE

4    US 26-MILLION IF WE WIN, I'M HAPPY TO DO THAT, BUT I DON'T

5    THINK THAT'S WHAT TEED UP AND THAT'S WHY I THOUGHT WE

6    WOULD BE READY TO GO BY AUGUST BECAUSE I DON'T THINK

7    THERE ARE A WHOLE LOT OF WITNESSES NEEDED FOR THE

8    DISCRETE ISSUE OF THE CLAIM THEY FILED THAT WE'RE

9    OBJECTING TO.

10    THAT BEING SAID, MR. CUTHILL IS OUT FROM JULY 26TH UNTIL

11    AFTER LABOR DAY, SO I WOULD SUGGEST THAT WE COME BACK

12    THE FIRST --- THE SECOND WEEK IN SEPTEMBER FOR A STATUS

13    CONFERENCE TO SEE IF WE CAN SET THE TRIAL.

14    THE COURT: DO YOU ANTICIPATE TEEING UP THE REFUND

15    ISSUE?

16    MR. SHUKER: WE REALLY DIDN'T BECAUSE THERE ARE SOME

17    PROCEDURAL HURDLES YOU HAVE TO GO THROUGH. IT HAS TO BE

18    UNDISPUTED, THEN THEY HAVE TO NOT REFUND IT FOR 120-DAYS

19    OR 160-DAYS AND THEN YOU CAN TEE UP THE REQUEST FOR

20    REFUND.

21    THE COURT: OKAY.

22    MS. IDE: YOUR HONOR, WE ASSUMED IT WAS TEED UP

23    BECAUSE IN THE OBJECTION TO CLAIM, WHAT THEY SAID IS NOT

24    ONLY DO WE NOT OWE THE 3-MILLION DOLLARS, BUT YOU OWE US

25    26.

1           THE COURT: OKAY.

2                MS. IDE: SO WE ASSUMED THAT THEY WERE SEEKING ONE IN

3           THE SAME.

4                MR. SHUKER: IF THEY'LL LET IT BE PART OF THAT, GREAT,

5           WE'VE SAVED TIME. IF THEY'RE NOT GOING TO RAISE A

6           PROCEDURAL OBJECTION THAT IT WASN'T TEED UP PROPERLY,

7           THEN YES, LET'S HAVE FORMAL PRE-TRIAL AND DO THE WHOLE

8           THING IN ONE SWOOP.

9                MS. IDE: WE HAVE NO PROBLEM WITH TREATING THE

10         CONTESTED MATTER AS A 505 PROCEEDING IS HOW WE, IN ESSENCE,

11         WE HAVE ALL TREATED IT THAT WAY EVEN THOUGH IT WASN'T

12         FILED THAT WAY.

13             THE COURT: VERY GOOD. GOOD.

14             MR. SHUKER: IN THAT CASE, YOUR HONOR, I'M HAPPY TO

15         WORK WITH MS. IDE ON A PRE-TRIAL ORDER AND IF WE COULD

16         COME BACK FOR STATUS IN SEPTEMBER, WE CAN SEE HOW WE'VE

17         DONE ON THAT AND A MORE FORMAL PRE-TRIAL ORDER SINCE IT

18         WILL BE THE WHOLE SHOOTING MATCH.

19             THE COURT: VERY GOOD. I WILL SET A CONTINUED PRE-

20         TRIAL CONFERENCE FOR SEPTEMBER THE 15TH AT 11:00 A.M. IF THE

21         PROCEEDING MEMO COULD JUST ASK THE PARTIES TO CONFER ON

22         A PROPOSED CASE MANAGEMENT TYPE OF ORDER, I CAN

23         CERTAINLY MAKE THE RULINGS, BUT I REALLY WOULD LIKE YOU

24         ALL TO TAKE THE FIRST STAB AT ISSUES BECAUSE YOU'LL KNOW

25         MUCH MORE SPECIFICALLY THAN ME WHAT WOULD BE

1     APPROPRIATE.

2          MS. IDE: CERTAINLY.

3          THE COURT: AND THEN IF THERE --- I'LL RESOLVE ANY OPEN

4     ISSUES WHEN WE GET BACK TOGETHER ON SEPTEMBER 15TH AT

5     11:00. IF YOU LIKE TO CONFIRM AND DO ANYTHING ELSE YOU NEED

6     TO TEE UP THE ISSUE, I WOULD PREFER TO DO IT ALL AT ONE TIME

7     IF I'M GOING TO BE THE COURT THAT'S GOING TO DO IT.

8          MR. SHUKER: THANK YOU.

9          THE COURT: SO DO WHATEVER YOU NEED TO DO TO GET IT

10    UP TO --- GET ALL OF THE ISSUES FRAMED.

11         MR. SHUKER: THANK YOU.

12         MS. IDE: THANK YOU.

13         THE COURT: YOU'RE WELCOME. THANK YOU. ANYTHING

14    ELSE BECAUSE WE TURN TO THE MOTION BY THE DEBTOR

15    RELATING TO THE NEXIA ISSUE?

16         I DON'T THINK I'VE EVER ISSUED AN ORDER QUITE LIKE THIS

17    ONE THAT SAYS I'VE LOOKED AT IT AND I SCRATCHED MY HEAD

18    AND ALL I CAN SAY IS: I DON'T KNOW WHAT YOU GUYS

19    THOUGHTS, SO SOMEBODY IS GOING TO HAVE TO GIVE ME A LITTLE

20    MORE EVIDENCE BECAUSE I --- I'LL BE QUITE CANDID, IN

21    CHAMBERS, WE TALKED ABOUT IT BACK AND FORTH AND BOTH OF

22    US MADE REALLY COGENT ARGUMENTS AS TO WHY EITHER ONE IS

23    CORRECT, SO THAT MUST MEAN SOMETHING ELSE IS GOING ON

24    THAT IS NOT IN THE RECORD, SO THAT IS WHY WE SET THE

25    HEARING.

1    MR. COBERT: WELL, YOUR HONOR, IT IS INTERESTING FOR US,

2    FOR MYSELF AND MR. PARK, BECAUSE NEITHER ONE OF US WERE

3    THERE AS WELL WHEN THIS SETTLEMENT ---

4    THE COURT: I THOUGHT THAT COULD BE A PROBLEM, BUT

5    THAT WAS NOT MY PROBLEM.

6    MR. COBERT: BUT IT ACTUALLY MADE IT EASIER BECAUSE

7    THEN WE CAN SEE THE FOREST NOT LOOKING AT THE TREES. SINCE

8    WE SAW IT ACTUALLY FROM THE COURT'S VANTAGE POINT AND

9    THAT'S MAYBE WHY WE'RE ACTUALLY GOING TO PRESENT THIS

10   SINCE WE WEREN'T THERE.

11   YOUR HONOR, WHAT WE'VE DONE --- WHAT MR. PARK AND I

12   HAVE ACCOMPLISHED AT LEAST --- WHILE YOUR HONOR WILL TELL

13   US THE ANSWER --- WE HAVE GOTTEN TOGETHER AND TALKED

14   ABOUT EXHIBITS AND A POLICE REPORT THAT WE ARE GOING TO

15   SHARE THE SAME EXHIBIT BOOK, WHICH IS ALWAYS NICE, AND

16   YOU HAVE, YOUR HONOR --- AND THE CLERK HAS A COPY AS WELL

17   OF OUR EXHIBIT BOOK --- AND YOUR HONOR, WE'VE AGREED TO

18   THE ADMISSIBILITY OF EXHIBITS A, B, C, D AND E, H, I, J AND K.

19   THE ONLY ONES THAT WILL NOT BE ADMITTED RIGHT NOW,

20   UNLESS MR. PARK TELLS ME OTHERWISE IS F AND G, WHICH ARE

21   HANDWRITING NOTES AFTER SETTLEMENT CONFERENCE BY MR.

22   CUTHILL AND HE IS HERE TO TESTIFY AND LAY THE PREDICT FOR

23   THOSE, BUT THE REST OF THE DOCUMENTS, YOUR HONOR, ARE

24   EITHER ALREADY ADMITTED AT AN EARLIER HEARING OR ARE

25   PLEADINGS FROM THREE CASES; THIS BANKRUPTCY CASE, THE

1     DISTRICT COURT <u>PLAXAR</u> LITIGATION OR THE RELATED CRIMINAL

2     FORFEITURE ACTION IN DISTRICT COURT.

3        THE COURT: VERY GOOD. LET ME ASK IF THERE'S ANY

4     OBJECTION TO EXHIBITS A THROUGH E, H THROUGH IS IT J OR K?

5        MR. PARK: NO OBJECTION, YOUR HONOR.

6        THE COURT: IS IT J AND K? I JUST DIDN'T KNOW ---

7        MR. COBERT: YES, YOUR HONOR, I APOLOGIZE. K IS

8     ACTUALLY YOUR ORDER THAT BROUGHT US HERE TODAY.

9        THE COURT: I DIDN'T EVEN LOOK AT IT.

10        MR. COBERT: I JUST DID IT MORE AS A PLACEHOLDER SO WE

11     COULD REFER BACK TO IT.

12        AS YOUR HONOR SAYS, YOU NORMALLY DON'T ENTER THESE

13     KINDS OF ORDERS AND IN TERMS OF PRESENTATION, YOUR HONOR,

14     YOU'LL HEAR SHORTLY FROM MY CLIENT AND FROM THE

15     GOVERNMENT CLIENT ON THE ISSUE, BUT, YOUR HONOR, I DON'T

16     THINK THERE'S A NEED FOR AN OPENING, I WOULD JUST REFER

17     YOUR HONOR BACK TO YOUR HONOR THAT YOU NEVER ISSUED

18     BEFORE SAYING: I NEED SOME PAROLE EVIDENCE.

19        AND YOUR HONOR'S ORDER IN THE SECOND PARAGRAPH

20     LAID OUT THE ISSUE FROM OUR VANTAGE POINT AND FROM THE

21     GOVERNMENT'S VANTAGE POINT, I THINK SUCCINCTLY, SO I THINK

22     OUR OPENING OR MY OPENING WOULD BE READING FROM YOUR

23     HONOR. IT SETS FORTH THE ISSUE.

24        THE COURT: LET ME ASK. I WAS JUST HANDED SOMETHING

25     THAT'S VERY COLORFUL.

1          MR. COBERT: YES, YOUR HONOR.

2          THE COURT: I DON'T KNOW WHAT IT IS.

3          MR. COBERT: YOUR HONOR, WHAT IT IS, IS I'M GOING TO

4    SAVE THAT FOR ARGUMENT AT THE END.

5          THE COURT: OKAY.

6          MR. COBERT: AND THE GOVERNMENT HAS A COPY. IT'S

7    BASICALLY A COMPILATION OF THE FORFEITURE AS WELL AS OUR

8    SETTLEMENT AND IT SHOWS HOW THE TWO MERGED TOGETHER, SO

9    IT'S NOT PART OF THE EVIDENTIARY PRESENTATION.

10         THE COURT: OKAY. I'LL WAIT TO THE END TO GET IT.

11   THAT'S MY QUESTION.

12         MR. COBERT: YES, YOUR HONOR.

13         THE COURT: WHO WILL YOUR WITNESS BE, MR. COBERT?

14         MR. COBERT: YOUR HONOR, I'M ONLY CALLING ONE

15   WITNESS THAT WOULD BE THE CLIENT WHO WAS AT THE

16   SETTLEMENT, MR. CUTHILL, THE PRESIDENT OF MIRABILIS.

17         THE COURT: VERY GOOD. ANYTHING ELSE WE NEED TO DO

18   BEFORE WE START, MR. PARK?

19         MR. PARK: NOTHING, YOUR HONOR.

20         THE COURT: OKAY. MR. CUTHILL, IF YOU'D COME FORWARD

21   AND BE SWORN.

22                    ROBERT W. CUTHILL, JR.,

23   HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS

24   FOLLOWS:

25         THE CLERK: WILL YOU PLEASE STATE YOUR FULL NAME

| | |
|---|---|
| 1 | AND ADDRESS FOR THE RECORD? |
| 2 | THE WITNESS: ROBERT W. CUTHILL, JR., 341 NORTH |
| 3 | MAITLAND AVENUE, SUITE 210, MAITLAND, FLORIDA 32751. |
| 4 | THE CLERK: THANK YOU. YOU CAN HAVE A SEAT. |
| 5 | DIRECT EXAMINATION |
| 6 | BY MR. COBERT: |
| 7 | Q MR. CUTHILL, IN THE INTEREST OF TIME, I'M JUST GOING TO |
| 8 | GO VERY QUICKLY THROUGH SOME HIGHLIGHTS OF YOUR BACKGROUND |
| 9 | TO GET TO THE PREDICATE OF THE SETTLEMENT. |
| 10 | YOU'VE BEEN INVOLVED IN ACCOUNTING AND AUDITING |
| 11 | WORK SINCE THE 1960'S? |
| 12 | A I HAVE. I STARTED WITH A CPA FIRM IN 1967. |
| 13 | Q AND YOU'VE BEEN A CERTIFIED FRAUD EXAMINER SINCE THE |
| 14 | MID-90s? |
| 15 | A I HAVE. |
| 16 | Q OKAY. AND THE LAST SEVEN --- |
| 17 | A FROM THE MID-90s UNTIL I RESIGNED THAT CERTIFICATE AT |
| 18 | THE END OF 2008. |
| 19 | Q YOU DIDN'T ERASE YOUR BRAIN OF THE KNOWLEDGE YOU |
| 20 | LEARNED DURING THAT TIME? |
| 21 | A NO, I GAVE UP MY CERTIFICATION AS A CPA AND AS A FRAUD |
| 22 | EXAMINER AT THE END OF 2008. |
| 23 | Q OKAY. BUT YOU'VE BEEN SPENDING THE LAST SEVEN YEAR |
| 24 | OF YOUR PROFESSIONAL PRACTICE DOING CONSULTING WORK OR |
| 25 | APPOINTMENT WORK ON BEHALF OF AS A TRUSTEE OR EXAMINER IN |

Case 6:08-bk-04327-ARS Doc 596-1 Filed 08/06/10 Page 16 of 109

1  BANKRUPTCY AND FEDERAL COURTS?

2      A    YES, I HAVE DONE SOME STATE COURT WORK DURING THAT

3  TIME FRAME, BUT PRINCIPALLY, IT HAS BEEN FEDERAL COURT

4  APPOINTMENTS IN VARIOUS CAPACITIES; TRUSTEE EXAMINER, IN ONE

5  CASE A CHIEF RESTRUCTURING OFFICER, DIFFERENT APPOINTMENT

6  POSITIONS.

7      Q    WELL, IN THOSE POSITIONS, DO YOU HAVE ANY SIGNIFICANT

8  EXPERIENCE IN DEALING WITH ANALYZING RESTRAINTS OR WEAKNESSES

9  FROM AN ECONOMIC STANDPOINT OF FRAUDULENT TRANSFER

10  LITIGATION?

11      A    I DO.

12      Q    OKAY. AND IN THE MIRABILIS CASE, WHAT DO THE MAJOR

13  ASSETS CONSIST OF?

14      A    IN THE MIRABILIS CASE, THE --- WHEN I CAME INTO THE CASE,

15  WHICH WAS MAY OF 2008, THE PRIMARY ASSETS IN THE CASE WERE

16  EXISTING LITIGATION AND POTENTIAL LITIGATION, THREE FORMS OF

17  LITIGATION; MALPRACTICE LITIGATION, THE FRAUDULENT TRANSFER

18  LITIGATION AND WHAT I TERMED AS OTHER LITIGATION, WHICH

19  INCLUDED SOME COLLECTION LITIGATION OF ACCOUNTS AND NOTES

20  RECEIVABLE AND SOME LITIGATION AGAINST VARIOUS INSIDERS;

21  OFFICERS, DIRECTORS, SUBSIDIARY OWNERS. THERE WAS ALSO A

22  POTENTIAL DNO LITIGATION COVERAGE, WHICH WAS ESSENTIALLY

23  WHIPPED OUT BY THE INDICTMENT OF THE CORPORATION.

24      THE COURT: AND I'M SORRY, I'M GOING TO HAVE TO GO GET

25      A COUGH DROP. EXCUSE ME, MR. CUTHILL, I'LL BE RIGHT BACK,

1    BUT COURT'S IN RECESS.

2         THE CLERK: ALL RISE.

3         (WHEREUPON, A SHORT RECESS WAS HAD.)

4         THE CLERK: ALL RISE. THE COURT IS BACK IN SESSION.

5         THE COURT: THANK YOU. AND GO AHEAD AND PROCEED.

6         MR. COBERT: THANK YOU, YOUR HONOR.

7              CONTINUED DIRECT EXAMINATION

8    BY MR. COBERT:

9    Q    MR. CUTHILL, FROM YOUR EXPERIENCE, ARE YOU

10   COMFORTABLE IN --- IF YOU WILL --- MONETIZING THE VALUE OR

11   SUCCESS OR VALUE OF PURSUING CERTAIN TYPES OF FRAUDULENT

12   TRANSFER LITIGATION?

13   A    YES, THAT'S THE --- ONE OF THE FIRST STEPS I DO IN

14   EVALUATING A BANKRUPTCY CASE WHERE I'M EITHER IN A TRUSTEE

15   POSITION OR IN THIS CASE, AS PRESIDENT OF THE DEBTOR, IS

16   EVALUATING THE VALUE OF THE ASSETS OR THE POTENTIAL ASSETS

17   THAT I CAN RECOVER.

18   Q    OKAY.

19   A    THAT WOULD INCLUDE FRAUDULENT TRANSFER LITIGATION.

20   Q    AND IS THAT SIGNIFICANTLY HARDER THAN VALUING A

21   MERCEDES OR A CONDOMINIUM UNIT? MAYBE NOT IN TODAY'S MARKET,

22   BUT TYPICALLY TO VALUE SOMETHING ALONG THOSE LINES?

23   A    WELL, I WOULD SAY THAT VALUING A FRAUDULENT

24   TRANSFER CASE WOULD BE HARDER THAN VALUING A MERCEDES,

25   ALTHOUGH, I'VE NEVER OWNED ONE, BUT IT MIGHT BE A LITTLE BIT

1    EASIER THAN EVALUATING A PIECE OF REAL ESTATE IN TODAY'S

2    MARKET.

3         Q    FAIR ENOUGH.  IN YOU'RE INVOLVED IN THE WORLD VISION

4    ENTERTAINMENT CASE?

5         A    I WAS.

6         Q    AND WHAT WAS YOUR ROLE?

7         A    I HAD TWO ROLES IN THAT CASE.  ORIGINALLY, I WAS

8    APPOINTED AS THE CHAPTER 11 TRUSTEE AND THEN THE CASE

9    CONVERTED TO CHAPTER 7 AND I WAS APPOINTED AS THE CHAPTER 7

10   TRUSTEE.

11        Q    OKAY.  AND IN THE WORLD VISION ENTERTAINMENT CASE,

12   WHAT WAS THE MAJOR ASSET OR ASSETS YOU WERE ADMINISTERING

13   THERE?

14        A    FRAUDULENT TRANSFER LITIGATION.

15        Q    OKAY.  AND IN WORLD VISION ENTERTAINMENT, WAS THE

16   CASE PENDING BEFORE THIS COURT BACK IN 1999, WAS THERE AN

17   INTERPLAY OR WORKING RELATIONSHIP, IF YOU WILL, WITH THE

18   CRIMINAL AUTHORITIES?

19        A    YES.  THE PROSECUTOR IN THAT CASE WAS OUT OF THE

20   MIDDLE DISTRICT OF FLORIDA.  IT WAS ACTUALLY MICHAEL RUNYON.

21   HE'S DECEASED I'M SORRY TO SAY, BUT HE WAS THE PRIMARY

22   PROSECUTOR IN THE CASE AND I WORKED CLOSELY WITH HIM AND THE

23   FBI THAT WAS DOING THE INVESTIGATION.

24        Q    OKAY.  IN CONJUNCTION TO THAT CASE, WAS THERE A

25   MECHANISM BETWEEN THE CRIMINAL AND THE CIVIL ASPECTS TO

1    PROVIDE A PRO-RATA DISTRIBUTION TO VICTIMS OR CREDITORS?

2        A    YES. THE CRIMINAL DEFENDANTS WHO PLED OUT IN THE

3    CASE IN WORLD VISION WERE ORDERED RESTITUTION AND THE

4    BANKRUPTCY VEHICLE WAS USED TO MAKE DISTRIBUTION OF THAT

5    RESTITUTION. IN OTHER WORDS, AS THE U.S. ATTORNEY'S OFFICE WAS

6    PAID THE RESTITUTION, THEY SENT IT TO ME TO DISTRIBUTE TO THE

7    CREDITORS IN THE BANKRUPTCY ESTATE.

8        Q    OKAY. FAST FORWARDING TO THIS DECADE, WERE YOU

9    ALSO INVOLVED IN A CASE CALLED EVERGREEN SECURITIES?

10       A    I WAS.

11       Q    THAT CASE WAS PENDING BEFORE JUDGE ARTHUR

12    BRISKMAN?

13       A    IT WAS.

14       Q    AND WHAT WAS YOUR ROLE IN THAT CASE?

15       A    I WAS ORIGINALLY IN THAT CASE THE CHAPTER 11 TRUSTEE

16    UNTIL THE CASE FILED A PLAN OR REORGANIZATION. ONCE THE PLAN OF

17    REORGANIZATION WAS CONFIRMED AND TOOK EFFECT, I BECAME THE

18    PRESIDENT AND DIRECTOR OF EVERGREEN SECURITY LIMITED.

19       Q    AND THE MAJOR ASSET IN THAT CASE, WAS IT ALSO

20    LITIGATION, THIRD PARTY LITIGATION, FRAUDULENT TRANSFER

21    LITIGATION?

22       A    IT HAD MORE LITIGATION. THERE WERE ACTUALLY 157

23    PIECES OF LITIGATION IN FOUR COUNTRIES, BUT THE PRIMARY

24    LITIGATION, OVER 100 HUNDRED OF THOSE 157 CASES WERE FRAUDULENT

25    TRANSFER CASES.

| 1 | Q     AND AS PART OF YOUR ROLE IN EVERGREEN, WAS IT ALSO TO |

1       Q    AND AS PART OF YOUR ROLE IN EVERGREEN, WAS IT ALSO TO

2    MONETIZE AND EVALUATE, PURSUING OR NOT PURSUING, CERTAIN TYPES

3    OF FRAUDULENT TRANSFER LITIGATION?

4    A    THE SAME BASIC ROLE, THREE PRIMARY PRONGS TO THE

5    ROLE. ONE IS TO IDENTIFY THE ASSETS, WHICH WOULD INCLUDE THE

6    FRAUDULENT TRANSFER LITIGATION, TO RECOVER THE ASSETS, AND

7    THIRDLY, TO DISTRIBUTE THE CASE.

8    Q    AND DID THAT CASE ALSO INVOLVE WHAT I CALL A

9    CRIMINAL OVERLAY, WAS THERE INVOLVEMENT WITH THE CRIMINAL

10    AUTHORITIES IN CONJUNCTION WITH THE EVERGREEN CASE?

11    A    IT DID. THERE WAS NINE INDIVIDUALS THAT EITHER PLED

12    GUILTY OR WERE CONVICTED IN THE CASE.

13    Q    AND THAT INVOLVED ALSO THE USA, BUT THAT WAS THE I

14    BELIEVE MANHATTAN DISTRICT ATTORNEY?

15    A    ACTUALLY, THERE WERE SEVERAL GOVERNMENT AGENCIES

16    INVOLVED IN THAT. THE U.S. ATTORNEY'S OFFICE, MIDDLE DISTRICT OF

17    FLORIDA, AGAIN MICHAEL RUNYON WAS THE PRIMARY PROSECUTOR IN

18    THE EVERGREEN SECURITY CASE. THE NY DA'S OFFICE, MR.

19    BLOOMENTHAUGH'S OFFICE PROSECUTED THREE OF THE INDIVIDUALS.

20    THE SECURITIES AND EXCHANGE COMMISSION WAS ALSO INVOLVED IN

21    TIIE CASE FROM A REGULATORY STANDPOINT AND TOOK SEVERAL

22    LICENSES AWAY, AND ALSO, THE NATIONAL ASSOCIATION OF SECURITIES

23    DEALERS WAS INVOLVED IN REGULATORY ISSUES.

24    AGAIN, I WORKED WITH ALL OF THEM. FBI DID THE

25    INVESTIGATION AND AGAIN, I WAS THE DISTRIBUTION ARM OR THE

1   BANKRUPTCY ESTATE, I SHOULD SAY, WAS THE DISTRIBUTION ARM FOR

2   RESTITUTION, BOTH FOR THE NY DA'S OFFICE AS WELL AS THE US

3   ATTORNEY'S OFFICE.

4        Q    LET'S FAST FORWARD TO THE MIRABILIS CASE WHICH WAS

5   FILED TWO YEARS AGO THIS MONTH. THE MAJOR ASSET OF THE

6   MIRABILIS, I BELIEVE YOU DESCRIBED IT PRIMARY AS THIRD PARTY

7   LITIGATION?

8        A    THAT'S CORRECT.

9        Q    AND DOES THAT CASE JUST LIKE THE OTHER TWO ALSO HAVE

10  AN INTERPLAY WITH CRIMINAL AUTHORITIES?

11       A    IT DOES. THE U.S. ATTORNEY'S OFFICE IS PROSECUTING THE

12  CASE. AGAIN, MIDDLE DISTRICT OF FLORIDA, MR. RANDY GOLD IS THE

13  PRIMARY PROSECUTOR.

14       Q    OKAY. BUT UNLIKE THE OTHER CASES, THE SETTLEMENT

15  PROVIDES THAT THERE WILL BE NO USE OF THE BANKRUPTCY SYSTEM TO

16  DO DISTRIBUTION TO CREDITORS; IS THAT TRUE?

17       A    THAT'S CORRECT.

18       Q    OKAY. HOW MUCH WILL CREDITOR'S RECEIVE FROM THE

19  FORFEITURE ACTION?

20       A    I DON'T KNOW.

21       Q    HOW MUCH --- OTHER THAN THE IRS, HOW MUCH WILL

22  CREDITOR'S RECEIVE FROM THE FORFEITURE ACTION, DO YOU KNOW?

23       A    FROM THE FORFEITURE ACTION, I DO NOT KNOW BECAUSE I

24  DON'T KNOW WHAT THEY'LL RECOVER FROM THE FORFEITURE ACTION.

25       Q    OKAY. LET'S TURN TO THE EXHIBITS, IF WE COULD SIR, THAT

1    ARE IN FRONT OF YOU, NOW, THE JOINT BOOK BETWEEN MIRABILIS AND

2    THE GOVERNMENT IN PART. FIRST, TURNING TO EXHIBITS A AND B.

3    THEY'RE ALREADY IN EVIDENCE. I'LL REFERENCE, YOU'VE SEEN THESE

4    SEVERAL TIMES NOW, A AND B ARE THE --- WHAT ARE A AND B?

5        A    A AND B ARE EXHIBITS TO THE COMPROMISED AGREEMENT

6    THAT WAS FILED JOINTLY BY THE US GOVERNMENT AND MIRABILIS

7    VENTURE, INC. BEFORE THIS COURT AND APPROVED BY THIS COURT.

8        Q    OKAY.

9            MR. COBERT:  YOUR HONOR, IF YOU'LL REFERENCE EXHIBIT C

10           IN EVIDENCE IS THE MOTION AND EXHIBITS A AND B ARE NOW

11           TABBED AS A AND B IN FRONT TO MAKE THEM SIMPLER FOR

12           REVIEW PURPOSES.

13           THE COURT:  VERY GOOD.

14   BY MR. COBERT:

15       Q    MR. CUTHILL, WHAT WAS YOUR MOTIVATION FOR THE

16   SETTLEMENT WITH THE GOVERNMENT?

17       A    WELL, THE GOVERNMENT HAD FILED A STAY MOTION PRIOR

18   TO OUR DISCUSSION FOR COMPROMISE.  AND THE STAY MOTION

19   REQUESTED A SIX MONTH STAY OF THE BANKRUPTCY ESTATE, WHICH

20   WOULD HAVE KILLED ALL OF THE LITIGATION.  IT WOULD HAVE

21   ESSENTIALLY ELIMINATED MYSELF AS WELL AS THE PEOPLE I HAD HIRED

22   TO LITIGATE AND WE ALL WOULD HAVE GONE HOME.

23           WE ASKED THE GOVERNMENT TO ENTER INTO COMPROMISED

24   DISCUSSION AND WE ACTUALLY DID ENTER INTO COMPROMISED

25   DISCUSSIONS, WHICH RESULTED IN THIS COMPROMISE MOTION AND

1    ORDER THAT WAS EVENTUALLY APPROVED BY THE COURT.

2        Q    WELL, WHAT WAS IN ESSENCE GENERALLY --- GENERICALLY,

3    IF YOU WILL, WHAT WAS ACCOMPLISHED BY THE SETTLEMENT WITH THE

4    GOVERNMENT?

5        A    WELL, THE GOVERNMENT INITIALLY WANTED ALL OF THE

6    ASSETS OF THE ESTATE.

7        Q    THE BANKRUPTCY ESTATE?

8        A    THE BANKRUPTCY ESTATE.  THE MIRABILIS, AND THERE

9    WERE THREE CORPORATIONS THAT FILED BANKRUPTCY; MIRABILIS AEM,

10   WHICH WAS A WHOLLY OWNED SUBSIDIARY AND HOTH, WHICH WAS A 90-

11   PERCENT OWNED SUBSIDIARY, AND THEY HAD A FORFEITURE ACTION IN

12   THE AMADEO CRIMINAL CASE IN WHICH THEY GOT AMADEO ASSETS, BUT

13   THEY ALSO WANTED MIRABILIS' ASSETS.

14            THIS COMPROMISE, THE PRIMARY PURPOSE OF IT WAS TO

15   SPLIT UP THE ASSETS.  THE GOVERNMENT GOT ALL THE --- LET ME CALL

16   IT THE MONETIZED ASSETS OR THE EASY ASSETS.  THE MONEY RETAINERS

17   FROM LAW FIRM, NOTES RECEIVABLE THAT WE'RE PAYING AND THE

18   BANKRUPTCY ESTATE GOT ALL THE NON-MONETIZED ASSETS, THE NOTES

19   RECEIVABLE THERE WE'RE NOT PAYING AND THE LITIGATION.

20       Q    WELL, LET'S BE FAIR.  IN TERMS OF LITIGATION, THE

21   GOVERNMENT GOT LITIGATION AS WELL.  WHICH LITIGATION DID THEY

22   GET?

23       A    WELL, THEY GOT THE AMADEO LITIGATION, BUT THEY TOLD

24   ME AT THE TIME THAT THEY WEREN'T PLANNING TO PROSECUTE THE

25   CIVIL AMADEO LITIGATION.

| 1 | Q | AND THE MIRABILIS ESTATE GOT TO KEEP THE MIRABILIS |

2    LITIGATION?

| 3 | A | YES. |

| 4 | Q | OKAY. |

| 5 | A | THIS WOULD BE MIRABILIS AND ITS SUBSIDIARIES. |

| 6 | Q | OKAY. DID YOU PARTICIPATE PERSONALLY IN THE |

7    SETTLEMENT DISCUSSIONS WITH THE GOVERNMENT THAT LEAD TO THE

8    EXHIBIT A AND EXHIBIT B CHARTS AND THE APPROVAL OF THE

9    SETTLEMENT BY THIS COURT?

| 10 | A | I DID. |

| 11 | Q | OKAY. AND WHEN YOU WERE PARTICIPATING IN THOSE |

12   SETTLEMENT DISCUSSIONS, WERE THEY IN PERSON?

| 13 | A | THEY WERE. |

| 14 | Q | OKAY. AND WHEN YOU PARTICIPATED IN THOSE PERSONAL |

15   SETTLEMENT DISCUSSIONS, DID YOU TAKE ANY CONTEMPORANEOUS

16   NOTES REGARDING YOUR MEETINGS WITH THE GOVERNMENT?

| 17 | A | I DID. |

| 18 | Q | AND IS IT YOUR COMMON PRACTICE TO TAKE |

19   CONTEMPORANEOUS NOTES WHEN YOU MEET WITH EITHER THE

20   GOVERNMENT OR THIRD PARTIES OR OTHER PEOPLE INVOLVED IN THE

21   LITIGATION?

| 22 | A | IT IS MY COMMON PRACTICE. I AM A FEROCIOUS NOTE |

23   TAKER.

| 24 | Q | OKAY. YOU ALSO TOOK NOTES WHEN YOU MET WITH ME, |

25   DIDN'T YOU?

1    A    I DID.

2    Q    OKAY.

3    A    EVERY TIME.

4    Q    I HAVEN'T SEEN THOSE YET, BUT YOU DID TAKE NOTES.

5  OKAY.

6            DO YOU REGULARLY RELY UPON YOUR HANDWRITTEN

7  NOTES TO DETERMINE WHAT YOU DID OR WHAT YOU DIDN'T DO OR

8  WHAT WAS ACCOMPLISHED, NOT ACCOMPLISHED, WHEN YOU HAVE SUCH

9  A MEETING?

10    A    I DID. I'VE ACTUALLY HAD HUNDREDS OF MEETINGS SINCE I

11  BEGAN THE MIRABILIS CASE AND MY MEMORY IS NOT GOOD ENOUGH TO

12  REMEMBER EVERYTHING, SO THAT IS THE REASON I TAKE NOTES SO I

13  CAN RECALL WHAT I DID.

14    Q    OKAY. DID YOU --- HAVE YOU EVER, WHETHER THIS CASE OR

15  OTHER CASES, HAVE AN OPPORTUNITY TO REFER BACK TO THOSE NOTES

16  AND WERE THOSE NOTES FOUND TO BE RELIABLE IN TERMS OF

17  REMINDING YOU OF WHAT HAPPENED OR DIDN'T HAPPEN IN A CASE?

18    A    YES.

19            MR. COBERT: OKAY. AND I WOULD LIKE TO MOVE, YOUR

20        HONOR, EXHIBITS F AND G IN EVIDENCE, AND FIRST ASK MR.

21        CUTHILL FIRST, COULD YOU PLEASE LOOK AT F AND G AND TELL

22        ME, IS THAT YOUR HANDWRITING?

23            THE WITNESS: YES, IT IS AND F AND G ARE COPIES OF NOTES I

24        MADE IN MEETINGS ON OCTOBER 8TH AND OCTOBER 31ST, AND THE

25        PEOPLE I MET WITH ARE LISTED ON THE NOTES.

1  BY MR. COBERT:

2      Q    OKAY. BUT LOOKING AT F AND G, ARE YOU CERTAIN THAT

3  THOSE, BESIDES BEING YOUR HANDWRITING, ARE NOTES RELATED TO

4  THE COMPROMISED THAT BEFORE THE COURT TODAY FOR

5  INTERPRETATION?

6      A    THEY ARE.

7      Q    OKAY. HOW DO YOU KNOW THAT?

8      A    BECAUSE I READ THE NOTES.

9          MR. COBERT: OKAY. YOUR HONOR, I WOULD LIKE TO MOVE

10         EXHIBITS F AND G IN EVIDENCE.

11         MR. PARK: NO OBJECTION, YOUR HONOR.

12         THE COURT: THEY WILL BE ADMITTED.

13  BY MR. COBERT:

14      Q    OKAY. NOW, WHEN YOU'RE AT THESE MEETINGS, MR.

15  CUTHILL, AND IT INDICATES ON THERE --- FOR EXAMPLE, OCTOBER 8TH,

16  WHO WAS PRESENT ON BEHALF OF THE GOVERNMENT?

17      A    ANITA CREAM, I SPELLED HER NAME WRONG, I APOLOGIZE,

18  RANDY GOLD, STEVE McCABE, HE WAS WITH THE CID GROUP OF THE IRS.

19  RICK SMITH, AGAIN, CID/IRS, WERE ALL REPRESENTING THE

20  GOVERNMENT.

21      Q    OKAY. IF YOU LOOK AT EXHIBIT G IN EVIDENCE, IT LOOKS

22  LIKE A DATE, IS THAT OCTOBER 31ST, 2008, WHO WAS PRESENT FROM THE

23  GOVERNMENT DURING THAT FACE-TO-FACE MEETING?

24      A    RANDY GOLD, ANITA CREAM, AGAIN I SPELLED HER NAME

25  WRONG, I APOLOGIZE, STEVE McCABE AND RICK SMITH.

1      Q     OKAY. DURING THESE MEETINGS, THESE FACE-TO-FACE

2   MEETINGS, DID YOU WITNESS ANYONE FROM THE US GOVERNMENT

3   TAKING ANY NOTES?

4      A     I DIDN'T NOTICE ANYBODY FROM THE US GOVERNMENT

5   TAKING NOTES.

6      Q     OKAY. BACK TO MIRABILIS ITSELF, YOU SAID EARLIER ON

7   DIRECT THAT ONE OF THE BIGGEST ASSETS WAS THIS LITIGATION, THIS

8   THIRD PARTY LITIGATION.

9      A     YES.

10     Q     COULD YOU TELL THE COURT WHAT STEPS, IF ANY, DID YOU

11   TAKE TO AS YOU PUT IT, MONETIZE OR EVALUATE WHETHER YOU

12   SHOULD PURSUE LITIGATION OR NOT PURSUE LITIGATION OR INITIATE

13   LITIGATION?

14     A     INITIALLY WHEN I STARTED THE CASE, I MET WITH THE

15   PRIOR PRESIDENT OF THE CASE, JODI JENNA, TO TRY TO GET AN

16   UNDERSTANDING OF HER PERSPECTIVE OF WHAT WAS HAPPENING IN THE

17   CASE. I ALSO MET WITH COUNSEL FOR MIRABILIS AND AT THAT POINT,

18   MIRABILIS HAD VARIOUS COUNSEL, ERIN BATES BEING PROBABLY ONE

19   OF THE PRIMARY COUNSEL, HE AND HIS PARTNER, MATT MOCKA (SP),

20   AND I MET WITH THEM.

21         BUT I ALSO MET WITH EACH OF THE LAWYERS WHO WAS THE

22   COUNSEL OF RECORD IN EACH OF THE PIECES OF LITIGATION THAT HAD

23   ALREADY BEEN FILED AS WELL AS SEVERAL PIECES OF LITIGATION THAT

24   WERE PROPOSED TO BE FILED, BUT HAD NOT BEEN FILED YET, BUT

25   COUNSEL WAS WORKING ON.

1                  SO I MEET WITH ALL OF THOSE COUNSELS AND ASKED THEM

2   TO GIVE ME AN IDEA OF WHETHER THE CASE HAD VALUE, DID NOT HAVE

3   VALUE, AND TO BRING ME UP TO SPEED ON WHAT WAS GOING ON.

4         Q      OKAY. COULD YOU TURN TO EXHIBIT B IN EVIDENCE, UNDER

5   LAWSUITS, DEBTOR ASSET LIST, IT LOOKS TO BE 25-30 LAWSUITS STYLED

6   THERE, DID YOU MEET WITH COUNSEL WITH REGARD TO THOSE PIECES OF

7   LITIGATION?

8         A      GIVE ME THE TAB NUMBER AGAIN.

9         Q      EXHIBIT B, OR TAB B AS IN BOY.

10        A      OKAY. ON THIS LIST, I WOULD HAVE MET WITH COUNSEL

11   FOR EVERY ONE OF THESE CASES.

12        Q      AND TO BE CLEAR, NONE OF THESE CASES INVOLVE ANY

13   AMADEO INDIVIDUAL OR AMADEO ENTITIES?

14        A      THEY DO NOT.

15        Q      OKAY. AND AS PART OF THOSE MEETINGS SINCE WE'RE

16   TALKING PRIMARY ABOUT ONE CASE I WANT TO FOCUS ON, MIRABILIS

17   AND NEXIA VERSUS PLAXAR IS THE SECOND ONE LISTED THERE ON

18   EXHIBIT B.

19        A      YES.

20        Q      DID YOU MEET WITH MIRABILIS AND NEXIA COUNSEL WITH

21   REGARD TO THAT PIECE OF LITIGATION?

22        A      I DID.

23        Q      AND MIRABILIS AND NEXIA HAD THE SAME COUNSEL?

24        A      THEY DID.

25        Q      OKAY. AND AGAIN, I DON'T WANT TO GET INTO ANY

29

1     ATTORNEY-CLIENT DISCUSSIONS REGARDING THE LITIGATION ITSELF. I

2     RECOGNIZE THAT SOME OF YOUR DEFENSE COUNSEL AND PARTIES FROM

3     OTHER LITIGATION ARE HERE IN THE COURTROOM, FROM THE BERMAN

4     CASE, THE FORGE CASE, COLLINS AND RAE AND HOTH AND BISON, SO I

5     DON'T WANT TO TALK LITIGATION WITH THOSE PRESENT IN THE

6     COURTROOM, BUT COULD YOU AT LEAST TELL THE COURT FROM YOUR ---

7     DID YOU COME TO A CONCLUSION ON THE --- I'LL CALL IT THE PLAXAR

8     CASE, INSTEAD OF CALLING IT MIRABILIS AND NEXIA VERSUS PLAXAR.

9           BUT ON THE PLAXAR CASE, WERE YOU ABLE TO FORMULATE

10    A CONCLUSION AS TO WHETHER ONE OF THE PLAINTIFFS OR THE OTHER

11    HAD A BETTER CASE THEN THE OTHER?

12       A     I DID.

13       Q     AND WHAT WAS THAT CONCLUSION?

14       A     MY CONCLUSION WAS THAT NEXIA HAD SUFFERED THE

15    DAMAGED DIRECTLY, THAT MIRABILIS, BEING THE 100-PERCENT

16    SHAREHOLDER OF NEXIA ONLY INDIRECTLY WOULD HAVE SUFFERED

17    DAMAGES BECAUSE IT WAS THE PARENT COMPANY.

18       Q     SO NEXIA VERSUS PLAXAR IS MUCH MORE VALUABLE THAN

19    MIRABILIS VERSUS PLAXAR?

20       A     YES.

21       Q     NOW, I WANT TO REFER YOU TO EXHIBIT E IN EVIDENCE AND

22    ASK YOU: WHAT THAT IS AND WHO PREPARED IT? AND BEFORE I DO

23    THAT, MR. CUTHILL, I'VE GOT TO GO BACKWARDS ONE SECOND. I'M

24    SORRY, LET'S STAY THERE.

25           TELL ME WHAT EXHIBIT E IS AND WHO PREPARED IT?

30

1      A     I PREPARED EXHIBIT E. AND EXHIBIT E IS TWO VARIATIONS

2 OF THE SAME SCHEDULE AND IT'S THE PRIMARY SCHEDULE THAT WAS

3 PREPARED TO DISCUSS WITH THE GOVERNMENT WHAT ULTIMATELY

4 BECAME EXHIBIT A AND B TO THE COMPROMISE AGREEMENT. IN OTHER

5 WORDS, I WAS THE SCRIVENER WHO STATED OUT THE PRODUCTION OF

6 EXHIBIT A AND B. THESE WERE PREPARED --- THE FIRST EXHIBIT E, THE

7 FIRST PAGE OF EXHIBIT, WAS ACTUALLY PREPARED ON OCTOBER 8,

8 WHICH WAS THE DAY OF MY MEETING WITH THE GOVERNMENT TO

9 DISCUSS THE COMPROMISE MOTION AND WAS PART OF THAT MEETING.

10      Q     AND THE SECOND PAGE?

11      A     THE SECOND PAGE WAS ACTUALLY PREPARED TWO DAYS

12 LATER AND IT WAS BASED ON CHANGES THAT WE HAD DISCUSSED IN THE

13 MEETING.

14      Q     AND IT SAYS ON BOTH E1 AND E2, THIRD FROM THE BOTTOM,

15 IT SAYS: LITIGATION BY MIRABILIS VENTURES, INC. AND ITS

16 SUBSIDIARIES.

17      AND WHAT WAS THAT IN REFERENCE TO?

18      A     WELL, IT MADE THE STATEMENT THAT THE MIRABILIS

19 LITIGATION --- THE MIRABILIS AND ITS SUBSIDIARIES LITIGATION --- ALL

20 BELONGED TO THE BANKRUPTCY ESTATE.

21      Q     OKAY. AND LET'S BE CLEAR OF SOME GROUND RULES HERE,

22 NEXIA, WHAT IS NEXIA'S RELATIONSHIP TO MIRABILIS?

23      A     NEXIA WAS THE 100-PERCENT OWNED SUBSIDIARY OF

24 MIRABILIS.

25      Q     AND IS THAT CONFIRMED BY YOUR STATEMENTS UNDER

1   PENALTY OF PERJURY CONTAINED IN EXHIBIT H AND I IN EVIDENCE,

2   WHICH EXHIBIT H IS YOUR SCHEDULE B, AND EXHIBIT I, IS THE

3   STATEMENT OF FINANCIAL AFFAIRS?

4       A    YES.

5       Q    AND LET'S ALSO BE CLEAR, QUANTUM DELTA ENTERPRISES,

6   WE'RE GOING TO TALK ABOUT IN A MINUTE, WHAT IS THAT ENTITY'S

7   RELATIONSHIP TO MIRABILIS?

8       A    QUANTUM DELTA ENTERPRISES, WHICH IS ALSO KNOWN AS

9   SIREN RESOURCES, WAS A WHOLLY OWNED --- 100-PERCENT OWNED

10  SUBSIDIARY OF MIRABILIS VENTURES, INC.

11      Q    AND IS THAT CONSISTENT WITH YOUR STATEMENTS UNDER

12  PENALTY OF PERJURY CONTAINED IN EXHIBIT H, WHICH IS SCHEDULE B

13  OF THE SCHEDULES AND EXHIBIT I, THE STATEMENT OF FINANCIAL

14  AFFAIRS IN EVIDENCE?

15      A    YES, IT'S LISTED ALSO.

16           THE COURT:  I JUST DID NOT UNDERSTAND THE ALTERNATIVE

17  NAME FOR QUANTUM.

18           THE WITNESS:  SIREN RESOURCES.

19           THE COURT:  THANK YOU.

20           THE WITNESS: I BELIEVE IT'S INC.

21           THE COURT:  THANK YOU.

22           THE WITNESS:  S-I-R-E-N.

23           THE COURT:  THANK YOU.

24  BY MR. COBERT:

25      Q    WELL, MR. CUTHILL, LOOKING AT THOSE EXHIBITS, DID YOU

1  DETERMINE ANY VALUE IN TERMS OF AT LEAST SHARING OF --- PUTTING

2  VALUATIONS ON ANY OF THOSE ITEMS IDENTIFIED ON E1 OR E2?

3     A    I DID. ON THE FIRST PAGE UNDER EXHIBIT E, THERE AREN'T

4  ANY VALUES, BUT IF YOU TURN TO THE SECOND PAGE, YOU CAN SEE I

5  STARTED PUTTING VALUES ON THEM AND I PUT VALUES ON THEM AS I

6  KNEW THEM. THE ONES THAT WERE NOT KNOWN TO ME, EITHER THEY

7  HAVE SOME VALUE AND I DIDN'T KNOW WHAT IT WAS OR THEY HAD NO

8  VALUE, I PUT UNKNOWN.

9     Q    OKAY. NOW, THE PLAXAR LITIGATION, WOULD THAT FALL

10  UNDER THE LITIGATION BY MIRABILIS VENTURES, INC AND ITS

11  SUBSIDIARIES OR SUBS?

12     A    YES, IT WAS A PIECE OF LITIGATION THAT EXISTED BEFORE I

13  CAME INTO THE CASE. IT HAD BEEN FILED BY THE OFFICERS AND

14  DIRECTORS OF MIRABILIS PRIOR TO THE FILING OF BANKRUPTCY AND IT

15  WAS AN EXISTING PIECE OF LITIGATION BY MIRABILIS AND ONE OF ITS

16  WHOLLY OWNED SUBSIDIARIES AND THAT'S WHY WE USE THE TERM ON

17  THIS FOR THIS LINE ITEM.

18     Q    WAS THERE EVER ANY DISCUSSIONS WITH THE

19  GOVERNMENT, EITHER AT THE TIME THAT THE MOTION WAS FILED TO

20  APPROVE THE SETTLEMENT OR AT THE TIME YOU NEGOTIATING THE

21  SETTLEMENT, ANY DISCUSSIONS AT ALL REGARDING THE PLAXAR

22  LITIGATION, WHO WOULD GET IT? HOW WOULD IT BE SPLIT, IF AT ALL?

23     A    I DON'T RECALL ANY DISCUSSION OF ANY SPECIFIC

24  LITIGATION WITH THE EXCEPTION OF LITIGATION RELATED TO THE

25  DEFENSE COUNSEL OF MR. AMADEO, HIS CRIMINAL DEFENSE COUNSEL

1   WAS SPECIFICALLY DISCUSSED AND THE LITIGATION RELATED TO THE

2   FOUR MALPRACTICE SUITS, WHICH WAS --- THE MERITS OF THE CASE

3   WEREN'T DISCUSSED AS MUCH AS HOW THE ATTORNEYS WOULD BE PAID

4   WAS SPECIFICALLY DISCUSSED. BUT OTHER THAN THAT, WE DIDN'T

5   DISCUSS THE LITIGATION.

6       Q      WELL, THE ONES YOU DID SAY WERE DISCUSSED; THE

7   MALPRACTICE, AND THE LITIGATION AGAINST ANY CRIMINAL COUNSEL,

8   ARE THOSE REFLECTED AT ALL ON YOUR CONTEMPORANEOUS NOTES,

9   EXHIBIT F OR G IN EVIDENCE?

10      A      YES, THEY ARE.

11      Q      WHERE?

12      A      IF YOU GO TO THE FIRST NOTE ON F, YOU WILL SEE THAT WE

13  ALSO DISCUSSED THE DNO COVERAGE, THE GOVERNMENT HAD

14  INFORMED ME ON OCTOBER 8TH THAT THEY WERE GOING TO FILE

15  INDICTMENTS AGAINST THE THREE CORPORATIONS THAT I PUT INTO

16  BANKRUPTCY. AND I MADE THE NOTE THAT THIS WOULD BLOW THE DNO

17  COVERAGE. BY BLOW, I MET IT WOULD KILL THE DNO COVERAGE.

18  THAT'S' ABOUT A 20 TO 25-MILLION DOLLAR ITEM THAT BY INDICTING

19  THE CORPORATIONS WOULD NEVER BE ABLE TO COLLECTED BY THE

20  BANKRUPTCY ESTATE.

21          THE NEXT NOTE SAID: REVIEWED 60-MILLION DOLLARS IN

22  ASSETS. THAT REFERS TO ANOTHER SCHEDULE. I HAD A SCHEDULE WITH

23  ME THAT I HAD SUPPLIED TO THE GOVERNMENT THAT'S NOT IN THE

24  EXHIBIT PACKET, WHICH LISTED THE 60-MILLION DOLLARS WORTH OF

25  POTENTIAL ASSETS THAT I HAD, WHICH INCLUDED THE LITIGATION, ALL

1    OF THE LITIGATION. LET ME LOOK AT G.

2    Q   PLEASE.

3    A   ON G, THE FIRST LINE ITEM HAD TO DO WITH WIND PARK

4    BANKRUPTCY ESTATE AND THE --- THERE WAS LITIGATION PENDING.

5    MIRABILIS WAS THE EQUITY CREDITOR. THEY WEREN'T A CREDITOR.

6    THEY WERE THE EQUITY CLAIM HOLDER IN THE CASE AND I HAD THAT

7    VALUED AT ABOUT 2.2-MILLION DOLLARS. THE TRUSTEE, THE CHAPTER 7

8    TRUSTEE IN THE CASE WAS ACTUALLY LITIGATING IN THAT CASE AND

9    WE HAD DISCUSSED THAT.

10    THE FOURTH LINE ITEM THERE IS A DISCUSSION OF THE

11    MALPRACTICE CASES AND MY REFERENCE TO BLENDED RATE

12    REFERENCES THE GOVERNMENT WAS DISCUSSING WHETHER TO DO A

13    CONTINGENCY FEE FOR THE ATTORNEY; A BLENDED RATE, BLENDED

14    WITH CONTINGENCY FEE, OR A STRAIGHT HOURLY RATE.

15    THE NEXT TO LAST ITEM ON THE PAGE AND THE LAST ITEM

16    ON THE PAGE HAD TO DO WITH WHETHER I COULD FILE FRAUDULENT

17    TRANSFER SUITS AGAINST AMADEO'S DEFENSE ATTORNEY, WHICH IS THE

18    NEXT TO LAST LINE ITEM.

19    AND THE QUESTION: IS IT OKAY TO SUE MYER, THAT'S

20    MICHAEL MYER, WHO REPRESENTED MR. AMADEO IN CIVIL CASES AND I

21    WAS CONTEMPLATING A MALPRACTICE CASE AGAINST MR. MYER.

22    THE LAST ITEM ON EXHIBIT G, ON THE SECOND PAGE, HAS TO

23    DO WITH MS. GREEN FILING A MOTION FOR MYER'S FILES. MYER AT THAT

24    TIME WAS REFUSING TO GIVE ME HIS FILES AND WE WERE EITHER GOING

25    TO FILE A TURNOVER MOTION OR ACTUALLY A PIECE OF LITIGATION. I

1   WASN'T AN ATTORNEY, MS. GREEN WAS CERTAINLY GOING TO ADVISE

2   ME ON WHAT TO FILE AT THE TIME.

3       Q       DOES THE WORD PLAXAR APPEAR ANYWHERE ON YOUR

4   NOTES FROM THE OCTOBER 8 MEETING, EXHIBIT F?

5       A       NO.

6       Q       DOES THE WORD PLAXAR APPEAR ANYWHERE IN THE NOTES

7   OF YOUR MEETING ON OCTOBER 31ST?

8       A       NO.

9       Q       YOUR NOTES FROM OCTOBER 8TH MEETING, EXHIBIT F, HAVE

10  THE WORD NEXIA ANYWHERE?

11      A       IT DOES NOT.

12      Q       AND WHAT ABOUT THE SAME FOR NEXIA ON EXHIBIT G,

13  YOUR NOTES FROM OCTOBER 31ST?

14      A       IT DOES NOT.

15      Q       OKAY. IS THAT CONSISTENT WITH YOUR TESTIMONY HERE

16  TODAY?

17      A       YES, WE DIDN'T DISCUSS THE CASE SPECIFICALLY AT THE

18  MEETING THAT I RECALL.

19      Q       WHY DIDN'T YOU DISCUSS THE NEXIA LITIGATION WITH THE

20  GOVERNMENT?

21      A       WELL, THE BASIC DEAL WAS THAT THE GOVERNMENT GOT

22  THE AMADEO CASES, THE MIRABILIS GOT THE MIRABILIS AND

23  SUBSIDIARY CASES AND WE WENT TO DISCUSSING THE POINTS THAT

24  WERE RELEVANT, THAT WE THOUGHT WERE RELEVANT IN THE

25  COMPROMISE, WHICH WASN'T THE LITIGATION.

CaGaase16-08-bN-08323AKSJDoDumesw4611 Filedt008025100 Page 56bo5009

1    Q    AND MIRABILIS AND ITS SUBSIDIARIES WOULD INCLUDE

2    NEXIA?

3    A    YES.

4    Q    OKAY. AND SO THE PLAXAR LITIGATION FROM LOOKING AT

5    E, F, AND G IN EVIDENCE WAS ALWAYS ON YOUR SIDE OF THE LEDGER,

6    THE MIRABILIS SIDE OF THE LEDGER?

7    A    YES.

8    Q    DID YOU EVER ASK ON BEHALF OF MIRABILIS, TO HAVE THE

9    AMADEO LITIGATION AS PART OF THE BANKRUPTCY ESTATE?

10    A    WELL, IT GOT PART OF THE BANKRUPTCY ESTATE BECAUSE

11    IT WAS PART OF THE AMADEO FORFEITURE ACTIONS AND MOST OF THE

12    ASSETS, IF NOT ALL OF THE ASSETS, ON THE GOVERNMENT'S SIDE OF THE

13    LIST CAME FROM A LIST IN THEIR FORFEITURE ACTION, ACTUALLY. I HAD

14    A COPY OF IT. AND SO THE INITIAL SCHEDULE E THAT I PREPARED, I JUST

15    COPIED IT.

16    Q    LIKE A CUT AND PASTE, IF YOU WILL, FROM THEIR

17    DOCUMENT?

18    A    YEAH, THIS WAS AN EXCEL SCHEDULE, SO I --- YOU KNOW,

19    IT'S HARD TO PASTE ON TO YOUR COMPUTER SCREEN, BUT YES, IN

20    ESSENCE.

21    Q    WELL, MY QUESTION REALLY WAS: DID MIRABILIS EVERY

22    TRY TO NEGOTIATE FOR THE AMADEO LITIGATION TO BECOME AN ASSET

23    OF THIS BANKRUPTCY ESTATE?

24    A    NO.

25    Q    DID THE GOVERNMENT EVER TRY TO NEGOTIATE FOR THE

1  MIRABILIS LITIGATION TO BE AN ASSET OF THEIR FORFEITURE ACTION?

2      A     NO.

3            MR. COBERT: THANK YOU.

4            THE WITNESS: YOU'RE WELCOME.

5            THE COURT: MR. PARK.

6            MR. PARK: YES, YOUR HONOR. THANK YOU.

7                      CROSS EXAMINATION

8  BY MR. PARK:

9      Q     MR. CUTHILL, HOW ARE YOU?

10     A     I'M WELL.

11     Q     NICE TO MEET YOU.

12           YOU TALKED ABOUT THE PROCESS YOU WENT THROUGH IN

13  ASSESSING THE LITIGATION WHEN YOU BECAME THE TRUSTEE OF THE

14  ESTATE AND YOUR LAWYER ASKED YOU ABOUT ONE OF THE

15  ATTACHMENTS. IF YOU WANT TO TURN TO EXHIBIT B IN THE BOOK IN

16  FRONT OF YOU. DO YOU HAVE THAT CHART?

17     A     I DO.

18     Q     HOW FAR IN ADVANCE OF YOUR MEETINGS WITH

19  GOVERNMENT COUNSEL DID YOU ACTUALLY START ASSESSING THE

20  VALUES AND MERITS OF ALL THESE PIECES OF LITIGATION?

21     A     I WAS APPOINTED THE PRESIDENT OF THE COMPANY, NOT

22  THE TRUSTEE ON MAY 27, 2008. SOON THEREAFTER, SOON BEING WITHIN

23  30 DAYS, I WAS MEETING WITH THE PRIOR OFFICERS AND COUNSEL THAT

24  REPRESENTED THE COMPANY TO TRY AND EVALUATE ESSENTIALLY

25  WHAT I HAD IN THESE THREE DEBTORS AND WHAT I COULD RECOVER IN

38

1   THE THREE DEBTORS. SO I STARTED PUTTING TOGETHER A SCHEDULE OF

2   ASSETS ON AN EXCEL SPREADSHEET WITHIN 30 DAYS OF THE CASE,

3   WHICH WOULD HAVE BEEN FOUR MONTHS BEFORE THESE MEETINGS

4   TOOK PLACE.

5        Q      AND AT THE TIME YOU SAT DOWN WITH GOVERNMENT

6   COUNSEL FOR THESE NEGOTIATIONS SESSIONS ON OCTOBER THE 8TH, HAD

7   YOU COME TO THE CONCLUSION BASED UPON YOUR DISCUSSIONS WITH

8   COUNSEL, THAT IN THE MIRABILIS AND NEXIA CASE, NEXIA HAD THE

9   STRONGER CLAIMS AGAINST PLAXAR IN THAT LITIGATION?

10       A      YES. I HAD A MEETING WITH THE BOSH AND BIGHAM

11  ATTORNEYS THAT WERE REPRESENTING BOTH NEXIA AND MIRABILIS TO

12  DETERMINE WHETHER I SHOULD CONTINUE THE CASE OR DISMISS THE

13  CASE AND THEY GAVE ME A GENERAL IDEA OF WHAT THE CASE WAS ALL

14  ABOUT. IT HAD TO DO WITH STOLEN OR ALLEGED STOLEN

15  INTELLECTUAL PROPERTY OF NEXIA.

16       Q      I UNDERSTAND THAT, BUT AT THE TIME YOU SAT DOWN ON

17  OCTOBER 8TH WITH GOVERNMENT COUNSEL, YOUR MINDSET WAS THAT

18  THE MIRABILIS NEXIA LITIGATION OF THOSE CLAIMS AGAINST PLAXAR,

19  NEXIA HAS THE STRONGER CAUSE OF ACTION?

20       A      ACTUALLY, IT NEVER ENTERED MY MIND ON OCTOBER 8TH,

21  BECAUSE IT WAS NEVER DISCUSSED.

22       Q      OKAY. NOW, IN TERMS OF THIS MEETING ON THE 8TH, IS IT

23  YOUR TESTIMONY THAT AT SOME POINT DURING THIS DISCUSSION WITH

24  GOVERNMENT COUNSEL THAT EITHER MR. GOLD OR MS. CREAM

25  ADMITTED DURING THAT CONVERSATION THAT ALL OF MIRABILIS AND

1   ITS SUBSIDIARIES LITIGATION WOULD GO IN TO THE BANKRUPTCY

2   ESTATE, WERE THOSE WORDS THAT THEY USED DURING THAT

3   CONVERSATION?

4       A       I DON'T RECALL THEIR SPECIFIC WORDS.

5       Q       WAS IT YOUR UNDERSTANDING AFTER THAT MEETING THAT

6   WHEN YOU WALKED OUT OF THERE THAT THE MIRABILIS AND NEXIA

7   LAWSUIT WAS PART OF THE ESTATE?

8       A       IT WAS MY UNDERSTANDING BEFORE THE MEETING, DURING

9   THE MEETING AND AFTER THE MEETING.

10      Q       AND IT WAS YOUR UNDERSTANDING BEFORE THE MEETING,

11  IS THAT BECAUSE YOU HAD DISCUSSIONS WITH MR. GOLD AND MS.

12  CREAM PRIOR TO MEETING WITH THEM ON OCTOBER THE 8TH?

13      A       NO, IT WASN'T PRIOR TO THE MEETING BASED ON THEIR

14  DISCUSSIONS, IT WAS BASED ON THAT I HAD PREPARED THE FIRST PAGE

15  OF EXHIBIT E, WHICH WAS THE SCHEDULE THAT SHOWED THAT

16  LITIGATION AND I HAD A SUPPORTING SCHEDULE, WHICH SHOWED EACH

17  PIECE OF LITIGATION THAT I HAD PREPARED THAT SUPPORTED THAT

18  FIRST PAGE OF SCHEDULE E, WHICH HAD THE MIRABILIS CASE IN IT.

19  MIRABILIS AND NEXIA CASE IN IT AS WELL AS IT WAS --- I HAD FILED IT

20  WITH THE BANKRUPTCY COURT AND THE STATEMENT OF FINANCIAL

21  AFFAIRS AND SCHEDULES WAY BEFORE THAT.

22      Q       THE FIRST PAGE OF EXHIBIT E, WAS THIS PREPARED IN

23  ADVANCE OF YOUR OCTOBER THE 8TH MEETING, YOU HAD THIS WHEN

24  YOU WALKED INTO THE MEETING?

25      A       YES.

CaGase16:08-0N-0833-27ARS.DoDoco6984611 Fitted0881261100 Page 40of5009

1      Q    AND AT THAT POINT IN TIME, AT THE VERY BOTTOM, YOU

2 WROTE DOWN: LITIGATION BY MIRABILIS VENTURES, INC. AND ITS SUBS,

3 WERE YOU ANTICIPATING THAT AS A RESULT OF THIS MEETING ON

4 OCTOBER THE 8TH THAT THE GOVERNMENT WAS GOING TO AGREE THAT

5 ALL OF THE MIRABILIS AND ITS SUBSIDIARY LITIGATION WOULD BECOME

6 PART OF THE BANKRUPTCY ESTATE?

7      A    YES.

8      Q    WERE THESE ITEMS ALL THAT YOU HAVE LISTED HERE, ALL

9 OF THEM DISCUSSED ONE-BY-ONE DURING THAT MEETING?

10      A    I DON'T RECALL THE SPECIFICS OF OUR DISCUSSIONS IN THE

11 MEETING, BUT I DO RECALL THE DISCUSSION OF SEPARATING THE ASSETS

12 BY CATEGORIES INTO THE TWO AREAS AND THE ONE ITEM THAT IS VERY

13 CLEAR FROM THE DISCUSSION WAS THAT LITIGATION WOULD BE IN THE

14 BANKRUPTCY ESTATES TO PROSECUTE BECAUSE THE GOVERNMENT HAD

15 TOLD ME THAT THEY WEREN'T PLANNING ON HIRING OUTSIDE COUNSEL

16 AND PROSECUTE LITIGATION.

17      Q    WHEN YOU SAY HERE: LITIGATION BY MIRABILIS VENTURES,

18 INC. AND ITS SUBS, WHICH SUBSIDIARIES ARE YOU REFERRING TO?

19      A    ALL OF THEM.

20      Q    CAN YOU TELL ME WHO THEY ARE?

21      A    THERE WERE OVER 70 OF THEM AND I DO NOT HAVE THEM

22 MEMORIZED.

23      Q    GOING BACK UP HIGHER ON YOUR LIST HERE, YOU MENTION

24 ASSETS OF AEM, AQMI, SO FORTH, COULD YOU LOOK AT THAT LIST? ARE

25 ANY OF THOSE COMPANIES THERE CONSIDERED SUBSIDIARIES OF

1   MIRABILIS?

2       A       I CAN GO THROUGH THEM ONE-BY-ONE IF YOU WOULD LIKE

3   ME TO.

4       Q       SURE.

5       A       OKAY. DO YOU WANT ME TO GO THROUGH THE ENTIRE LIST

6   OR JUST THE CORPORATIONS?

7       Q       JUST THE CORPORATIONS.

8       A       ALL RIGHT. ASSETS OF AEM, WHICH WAS ONE OF THE

9   BANKRUPTCY CASES, AND IT WAS 100-PERCENT OWNED SUBSIDIARY OF

10  MIRABILIS.

11              ASSETS OF AQMI STRATEGY CORPORATION, WHICH WAS NOT

12  A SUBSIDIARY OF MIRABILIS.

13              ASSETS OF HOTH HOLDING, LLC, WHICH WAS 90-PERCENT

14  OWNED SUBSIDIARY OF MIRABILIS. MIRABILIS IS LISTED.

15              ASSETS OF NEXIA STRATEGY CORPORATION, WHICH WAS 100-

16  PERCENT OWNED SUBSIDIARY OF MIRABILIS.

17              ASSETS OF PRESIDION SOLUTIONS, INC., WHICH WAS NOT A

18  SUBSIDIARY.

19              ASSETS OF PROFESSIONS BENEFITS SOLUTIONS, INC., WHICH

20  WAS NOT A SUBSIDIARY.

21              ASSETS OF QUANTUM DELTA ENTERPRISES, INC., WHICH WAS

22  A SUBSIDIARY.

23              AND ASSETS TITANIUM TECHNOLOGIES, INC., WHICH WAS

24  NOT A SUBSIDIARY.

25              ASSETS OF TENSHIRE LEASING, INC., WHICH WAS NOT A

1   SUBSIDIARY.

2            ASSETS OF WELLINGTON CAPITAL GROUP, INC., WHICH WAS

3   NOT A SUBSIDIARY.

4            AND THAT'S A LIST OF THE CORPORATIONS AND THAT

5   TERMINOLOGY ACTUALLY CAME DIRECTLY FROM THE FORFEITURE

6   DOCUMENT THAT I WAS USING.

7       Q    NOW, TURN BACK TO EXHIBIT A IN THE BOOK IN FRONT OF

8   YOU. YOU'VE SEEN THIS GOVERNMENT ASSET LIST BEFORE?

9       A    I HAVE.

10      Q    DID YOU HAVE THE OPPORTUNITY TO REVIEW THIS BEFORE

11  COUNSEL FOR MIRABILIS SIGNED OFF ON THE COMPROMISED MOTION

12  THAT WAS FILED WITH THIS COURT?

13      A    I BELIEVE I LOOKED AT BOTH A AND B, MAYBE NOT IN THE

14  FINAL FORMAT, BUT NO SUBSTANTIVE CHANGES.

15      Q    OKAY. AND YOU WERE AWARE ON PAGE 2 OF EXHIBIT A

16  THAT THESE VARIOUS CORPORATIONS LISTED HERE WERE BEING

17  FORFEITED TO THE UNITED STATES?

18      A    OH YES.

19      Q    DO YOU RECALL ANY DISCUSSIONS AT THE MEETING ON

20  OCTOBER THE 8TH WHERE THESE SPECIFIC COMPANIES WERE DISCUSSED

21  IN TERMS OF THEIR ASSETS BEING FORFEITED TO THE US?

22      A    NO, I DON'T RECALL DISCUSSION OF THE SPECIFIC

23  CORPORATIONS, NOT ONE-BY-ONE.

24      Q    OKAY. DID YOU EVER VOICE ANY OPPOSITION DURING ANY

25  OF YOUR MEETINGS WITH MR. GOLD OR MS. CREAM ABOUT NEXIA

1     STRATEGY CORPORATION BEING FORFEITED TO THE UNITED STATES?

2       A     NO, I WAS HAPPY TO GIVE HIM THE CORPORATE SHELL. ALL I

3     WANTED WAS THE LITIGATION.

4       Q     WELL, IF YOU LOOK UP UNDER LITTLE C, IT SAYS THE ASSETS

5     OF THE FOLLOWING CORPORATIONS INCLUDING, BUT NOT LIMITED TO,

6     THE BELOW LISTED LAWSUITS AND/OR SETTLEMENTS. DO YOU SEE THAT

7     LANGUAGE?

8       A     I DO.

9       Q     AND THAT LANGUAGE APPEARS IN EXHIBIT B AS WELL;

10     RIGHT?

11       A     IT DOES.

12       Q     AND IT APPEARS IN EXHIBIT B UNDER LITTLE D ON THE FIRST

13     PAGE THERE?

14       A     YES.

15       Q     AND THERE IT SAYS THE ASSETS OF THE FOLLOWING

16     CORPORATIONS INCLUDING, BUT NOT LIMITED TO, THE BELOW LISTED

17     LAWSUITS AND/OR SETTLEMENTS AND THEN IT LISTS AEM, HOTH

18     HOLDINGS AND MIRABILIS. DO YOU SEE THAT?

19       A     I DO.

20       Q     SO WAS IT YOUR UNDERSTANDING THAT THOSE THREE

21     CORPORATIONS AS A RESULT OF THIS COMPROMISE WERE GOING TO

22     REMAIN WITH THE BANKRUPTCY ESTATE?

23       A     YES.

24       Q     AND THEN ALL OF THE LAWSUITS LISTED IN THE TABLES

25     THAT FOLLOW THIS WERE CONSIDERED AS ASSETS OF THOSE

1   CORPORATIONS?

2       A   OH NO.

3       Q   WELL, THAT'S' WHAT IT SAYS, DOESN'T IT?

4       A   ACTUALLY, THE INTENTION WAS THAT THE BANKRUPTCY

5   ESTATE, ONE OF THE THREE BANKRUPTCY ESTATES WOULD GET

6   POSSESSION OF ALL OF THOSE PIECES OF LITIGATIONS.

7       Q   BUT THAT'S NOT WHAT THIS SAYS. DO YOU AGREE THAT'S

8   NOT WHAT THIS SAYS?

9       A   I CAN READ IT TO YOU.

10      Q   PLEASE.

11      A   ALL RIGHT. IT SAYS: THE ASSETS OF THE FOLLOWING

12  CORPORATIONS INCLUDING, BUT NOT LIMITED TO, THE BELOW LISTED

13  LAWSUITS AND/OR SETTLEMENTS. IT DOESN'T SAY THAT THOSE

14  LAWSUITS WOULD BE ASSETS OF THE CORPORATION.

15      Q   SO THE PLAIN LANGUAGE OF THIS TO YOU DOESN'T MEAN

16  THAT ALL OF THE LAWSUITS THAT ARE LISTED BELOW LITTLE D ARE

17  CONSIDERED TO BE ASSETS OF THE CORPORATION?

18      A   NO, BECAUSE BEFORE THE COMPROMISE, ACTUALLY, SOME

19  OF THEM WEREN'T.

20      Q   WELL, THE LANGUAGE HERE SAYS: THE ASSETS OF THE

21  FOLLOWING CORPORATIONS INCLUDING, BUT NOT LIMITED TO, THE

22  BELOW LISTED LAWSUITS. DO YOU INTERPRET THAT TO MEAN THAT

23  THESE LAWSUITS WERE CONSIDERED TO BE ASSETS OF THESE THREE

24  CORPORATIONS LISTED HERE?

25      A   NO. WE WERE SIMPLY SPLITTING UP THE ASSETS AND THESE

45

1   LAWSUITS WERE GOING TO BECOME THE TOTAL POSSESSION OF THE ---

2   ONE OF THE THREE CORPORATIONS. THE GOVERNMENT'S CONTENTION

3   BEFORE THIS COMPROMISE WAS THAT ALL OF THOSE LAWSUITS

4   BELONGED TO THE GOVERNMENT.

5       Q       WELL, I UNDERSTAND THAT THEY ACTUALLY WERE ALL IN

6   THE ORIGINAL ORDER OF FORFEITURE; RIGHT:

7       A       THAT'S CORRECT. THEY WERE ALL ON THE LIST OF

8   FORFEITURE AND WHAT WE DID WAS SPLIT THE LIST OF FORFEITURE AND

9   THE REASON THEY'RE ON EXHIBIT B INSTEAD OF EXHIBIT A IS BECAUSE

10  THE BANKRUPTCY ESTATE GOT THEM.

11      Q       WELL, BUT THERE ARE LAWSUITS LISTED ON EXHIBIT A,

12  THERE ARE FIVE OF THEM; RIGHT?

13      A       RIGHT. I DIDN'T WANT THEM.

14      Q       DO YOU RECALL --- SO DO YOU RECALL SPECIFIC

15  DISCUSSIONS ABOUT THE FIVE LAWSUITS LISTED ON EXHIBIT A?

16      A       NOT THE SPECIFIC LAWSUITS, BUT THE GENERAL CATEGORY,

17  I DO, BECAUSE THEY WERE THE AMADEO LAWSUITS. I DIDN'T WANT THE

18  AMADEO LAWSUITS.

19      Q       WELL, NEXIA, UNDER THIS AGREEMENT, WAS BEING

20  FORFEITED IN ITS ENTIRETY TO THE UNITED STATES; CORRECT?

21      A       THE CORPORATE SHELL WAS, BUT NOT THE LITIGATION,

22  THAT'S WHY IT'S NOT SPECIFICALLY --- SPECIFICALLY NOT ON EXHIBIT

23  A.

24      Q       SO YOU DON'T --- ON EXHIBIT A WHERE IT SAYS THE ASSETS

25  OF THE FOLLOWING CORPORATIONS, YOU DON'T CONSIDER LITIGATION

1    TO BE AN ASSET OF A CORPORATION?

2         A    NOT WHEN IT'S NOT LISTED.

3         Q    WELL, MR. CUTHILL, WHY WASN'T --- SINCE YOU AGREE THAT

4    NEXIA WAS BEING FORFEITED TO THE UNITED STATES, THE COMPANY

5    WAS FORFEITED TO THE US; RIGHT?

6         A    I DO, BUT LET ME ANSWER YOUR QUESTION.

7         Q    PLEASE.

8         A    YOU DON'T WANT ME TO ANSWER YOUR QUESTION?

9         Q    I WANT TO ASK YOU A FOLLOW UP QUESTION FIRST.  DO YOU

10   AGREE THAT NEXIA WAS BEING FORFEITED TO THE UNITED STATES?

11        A    THE CORPORATE SHELL, YES.

12        Q    OKAY.  BUT WHEN YOU SAY CORPORATE SHELL, SO THAT

13   MEANS THAT YOUR UNDERSTANDING WAS THAT THE GOVERNMENT IS

14   GETTING A SHELL, BUT MIRABILIS IS KEEPING WHATEVER LITIGATION

15   CLAIMS NEXIA HAS?

16        A    CERTAINLY, THAT'S WHY THE LITIGATION IS LISTED WITH

17   NEXIA AS A PLAINTIFF AS EXHIBIT B.

18        Q    MR. CUTHILL, IF THAT'S THE CASE, WHY WASN'T THE

19   AGREEMENT MADE CLEARER TO SAY THAT EVEN THOUGH NEXIA AS A

20   CORPORATION IS BEING FORFEITED TO THE UNITED STATES, THE SPECIFIC

21   CAUSE OF ACTION IS GOING TO REMAIN IN THE ESTATE?

22        A    I THINK IT IS CLEAR AS IT COULD BE.  THE FORFEITURE

23   DOCUMENT HAD THIS PIECE OF LITIGATION LISTED ON THE FORFEITURE

24   DOCUMENT.  IT WAS SPECIFICALLY PUT ON EXHIBIT B BECAUSE THE

25   BANKRUPTCY ESTATES WERE GOING TO RECEIVE IT.

47

1              NOW, WE SPLIT SOME OF THE ASSETS. FOR INSTANCE, A

2   MIRABILIS ASSET, THE EIGENMANN NOTE WAS SPLIT AND IS ACTUALLY

3   ON EXHIBIT A. SO WE TOOK SOME OF THE ASSETS THAT BELONGED TO

4   THESE BANKRUPTCY ESTATES AND WE PUT THEM ON EXHIBIT A BECAUSE

5   THE GOVERNMENT WANTED THEM. THE EIGENMANN NOTE HAPPEN TO

6   BE A PAYING NOTE. I WANTED IT ALSO. BUT WE PUT IT ON EXHIBIT A

7   BECAUSE THE GOVERNMENT WANTED IT AND THAT WAS PART OF THE

8   NEGOTIATION.

9       Q    YOU DON'T RECALL, THOUGH, ANY SPECIFIC

10  CONVERSATION?

11      A    CAN I FINISH MY ANSWER?

12      Q    SURE.

13      A    OR DO YOU WANT ME TO STOP?

14      Q    NO, NO, GO AHEAD.

15      A    OKAY. WE PUT THE PIECE OF LITIGATION, AND ACTUALLY,

16  ALL OF THE LITIGATION FOR MIRABILIS AND ITS SUBSIDIARIES, WE PUT

17  THAT ON EXHIBIT B BECAUSE THAT WAS WHAT WAS NEGOTIATED IN THE

18  MEETINGS AND THAT'S CONSISTENT THROUGHOUT MY NOTES AND MY

19  COMPUTER TEMPLATES, PRIOR TO THE MEETINGS, ADJUSTED TO

20  DISCUSSIONS AFTER THE MEETINGS AND THAT'S WHAT THE COMPROMISE

21  AGREEMENT SAYS.

22      Q    DO YOU RECALL ANY SPECIFIC DISCUSSIONS IN EITHER THE

23  OCTOBER 8TH MEETING THAT YOU HAD WITH GOVERNMENT COUNSEL,

24  WHICH ARE ON EXHIBIT F OR OCTOBER 31 ON EXHIBIT G, ANY SPECIFIC

25  DISCUSSIONS ABOUT NEXIA STRATEGY CORPORATION OR NEXIA'S

1    CLAIMS IN THE PLAXAR LITIGATION?

2        A    I DO NOT.

3        Q    ALL RIGHT. AND IN TERMS OF THE LAWSUITS THAT WERE

4    BEING FORFEITED TO THE GOVERNMENT UNDER EXHIBIT A, IF YOU WANT

5    TO TURN TO THAT, DO YOU SEE THE FIVE OF THEM LISTED THERE?

6        A    I DO.

7        Q    SO THERE WERE NO DISCUSSIONS THAT YOU RECALL ABOUT

8    THE GOVERNMENT WANTING TO MAINTAIN THESE FIVE LAWSUITS?

9        A    NOT THAT I RECALL AND THEY WERE ALWAYS --- THEY WERE

10    ON THE GOVERNMENT'S FORFEITURE LIST AND OBVIOUSLY, IF I HAD

11    WANTED THEM, I WOULD HAVE NEGOTIATED FOR THEM, I DIDN'T DO

12    THAT --- AND I DON'T RECALL ANY DISCUSSION WITH THE GOVERNMENT

13    ABOUT THE BANKRUPTCY ESTATE GETTING WHAT I CALL THE AMADEO

14    LITIGATION, WHICH IS ON EXHIBIT A.

15        Q    BUT IT WAS YOUR UNDERSTANDING AS A RESULT OF THESE

16    DISCUSSIONS THAT THE GOVERNMENT WANTED THE AMADEO

17    LITIGATION AS YOU REFER TO IT?

18        A    ACTUALLY, THEY TOLD ME THEY WEREN'T GOING TO

19    PROSECUTE IT. I DON'T KNOW WHY THEY WANTED IT.

20        Q    BUT IN TERMS OF THESE FIVE LAWSUITS LISTED HERE, YOUR

21    TESTIMONY WAS THAT THE GOVERNMENT WAS GOING TO GET THE

22    AMADEO LITIGATION AND MIRABILIS ESTATE WAS GOING TO GET

23    EVERYTHING ELSE, DO YOU RECALL ANY DISCUSSIONS WITH MR. GOLD

24    OR MS. CREAM WHERE THEY TOLD YOU, WE WANT THE AMADEO

25    LITIGATION TO BE FORFEITED TO THE UNITED STATES?

| 1 | A | NO, I DON'T RECALL SPECIFIC DISCUSSIONS TO THAT EXTENT. |

2      Q      BUT IT'S STILL YOUR UNDERSTANDING THAT JUST THESE

3   FIVE LAWSUITS AS THE QUOTE, UNQUOTE, AMADEO LAWSUITS WERE

4   GOING TO BE FORFEITED TO THE UNITED STATES AS PART OF THIS

5   COMPROMISE AGREEMENT?

6      A      YES.

7      Q      IS THERE A REASON WHY IF NEXIA WAS JUST A SHELL

8   CORPORATION AND YET, THE LAWSUIT THAT NEXIA HAD AGAINST

9   PLAXAR WAS BEING LEFT WITH THE BANKRUPTCY ESTATE, IS THERE A

10   REASON WHY YOU DIDN'T WANT THE NEXIA CORPORATION AS A

11   COMPANY TO BE LISTED ON YOUR ASSETS?

12      A      I DIDN'T NEED IT. ACTUALLY, I HAD, I DON'T KNOW, 50 SHELL

13   CORPORATION SUBSIDIARIES, I WOULD HAVE BEEN HAPPY TO GIVE THE

14   GOVERNMENT ALL 50 OF THEM.

15      Q      SO IN REGARDS TO ANY OF YOUR DISCUSSIONS WITH

16   GOVERNMENT COUNSEL, YOU DON'T REMEMBER NEXIA COMING UP AT

17   ALL?

18      A      NO.

19      Q      EITHER WITH MS. CREAM OR WITH MR. GOLD?

20           MR. COBERT: YOUR HONOR, OBJECTION, HE ASKED AND

21   ANSWERED AND HE'S BEING REPETITIVE HERE, YOUR HONOR.

22           THE COURT: OVERRULED.

23           THE WITNESS: NO.

24   BY MR. PARK:

25      Q      IN TERMS OF THE NEGOTIATIONS YOU HAD ON OCTOBER THE

1    8TH AND OCTOBER THE 31ST, WAS ELIZABETH GREEN PRESENT DURING

2    THOSE DISCUSSIONS AS WELL?

3        A    SHE WAS.

4        Q    WERE THERE ANY DISCUSSIONS THAT YOU RECALL HER

5    ENGAGING IN, IN YOUR PRESENCE WITH ANYONE ON THE GOVERNMENT

6    REGARDING NEXIA OR THE LITIGATION INVOLVING PLAXAR?

7        A    I DON'T RECALL ANY DISCUSSIONS AT EITHER MEETING BY

8    ANY PARTY IN THE MEETINGS REGARDING SPECIFIC LITIGATION WITH

9    THE EXCEPTION OF WHAT I PREVIOUSLY TESTIFIED TO, WHICH WOULD

10    EXCLUDE THE PLAXAR LITIGATION.

11        Q    DID YOU EVER HAVE ANY DISCUSSIONS WITH MS. CREAM AT

12    ALL REGARDING HER AUTHORITY AS A GOVERNMENT LAWYER IN TERMS

13    OF WHAT SHE COULD AND COULD NOT AGREE TO PROVIDE TO THE

14    ESTATE?

15        A    IN ONE OF THE TWO MEETINGS ON OCTOBER 8TH AND 31ST OR

16    IN GENERAL?

17        Q    IN GENERAL.

18        A    I HAVE HAD DISCUSSIONS WITH MS. CREAM ABOUT WHETHER

19    SHE COULD SELL THE BANKRUPTCY ESTATE, SPECIFIC ASSETS THAT

20    WERE FORFEITED. THESE WERE ACTUALLY LATER, I BELIEVE IN

21    NOVEMBER OF '08 OR POTENTIALLY EARLY DECEMBER, I DON'T RECALL

22    EXACTLY, BUT THEY WERE IN HER OFFICE IN TAMPA, AND WE HAD SOME

23    E-MAILS BACK AND FORTH BETWEEN MY COUNSEL IN TAMPA AND MS.

24    CREAM REGARDING THAT, BUT WITHOUT LOOKING AT THEM, I DON'T

25    RECALL THE --- YOU KNOW, THE DETAILS OF THOSE DISCUSSIONS.

1        MR. PARK: OKAY. THAT'S ALL I HAVE, YOUR HONOR.

2        THE COURT: THANK YOU.

3        MR. COBERT, ANY FURTHER QUESTIONS?

4        MR. COBERT: JUST A FEW, YOUR HONOR.

5                    REDIRECT EXAMINATION

6    BY MR. COBERT:

7        Q        DURING YOUR SETTLEMENT DISCUSSIONS WITH THE

8    GOVERNMENT BETWEEN THE FORFEITURE ACTION AND THE

9    BANKRUPTCY ESTATE, WERE YOU LEADING THOSE DISCUSSIONS ON

10   BEHALF OF THE MIRABILIS ESTATE?

11       A        YES.

12       Q        OKAY.  DID YOU AUTHORIZE MS. GREEN TO HAVE ANY

13   DISCUSSIONS WITHOUT YOU REGARDING ANY SETTLEMENT OF THE

14   DISPUTE BETWEEN THE TWO COURTS?

15       A        SHE WAS AUTHORIZED TO HAVE DISCUSSIONS, BUT NOT TO

16   MAKE AGREEMENTS.  AGREEMENTS ARE ONLY MADE WHEN THEY'RE

17   SIGNED.

18       Q        NOW THIS LANGUAGE THAT THE PROSECUTOR KEEPS

19   BRINGING UP, INCLUDING BUT NOT LIMITED TO LANGUAGE, DID YOU

20   INSERT THAT LANGUAGE ON EXHIBIT A OR B BEFORE THE LIST OF

21   CORPORATIONS AND LAWSUITS, IS THAT LANGUAGE?

22       A        NO, IT'S NOT.

23       Q        WHERE DID YOU GET IT FROM --- OR WHERE WAS THIS

24   LANGUAGE OBTAINED FROM, IF YOU KNOW?

25       A        ACTUALLY, MS. GREEN WAS THE SCRIVENER FOR A AND B

1    AND I THINK THAT CAME OUT OF THE FORFEITURE DOCUMENT.

2        Q    WELL, ACTUALLY, IF YOU LOOK AT EXHIBIT D IN EVIDENCE,

3    AND TURN TO PAGE 3 OF 9, THIS IS THE FORFEITURE, AT LEAST, A

4    PRIMARY ORDER HERE. DO YOU SEE THAT SAME LANGUAGE ON PAGE 3

5    OF 9 ON EXHIBIT D?

6        A    ON EXHIBIT D?

7        Q    D AS IN DOG, PARAGRAPH F, ON PAGE 3 OF 9, EXHIBIT D.

8        A    YES.

9        Q    OKAY. IS THAT THE SAME LANGUAGE FROM THE

10   FORFEITURE THAT APPEARS IN EXHIBITS A AND B INCLUDING, BUT NOT

11   LIMITED TO, LAWSUITS AND/OR SETTLEMENTS?

12       A    YES. AGAIN, A LOT OF THE LANGUAGE THAT WAS USED IN

13   EXHIBIT A AND B WAS --- WE CUT AND PASTE THE FORFEITURE

14   DOCUMENT INTO EXHIBIT A AND B. WE JUST SEPARATED THE ASSETS

15   INTO A AND B. WE WERE USING A LOT OF THE SAME LANGUAGE. I DID

16   ALL MY TEMPLATE AND MS. GREEN WHO DRAFTED EXHIBITS A AND B

17   HERE USED THE SAME LANGUAGE, WE WERE TRYING TO BE CONSISTENT

18   WITH THE LANGUAGE.

19       Q    AND WHEN COUNSEL WAS GOING THROUGH WITH YOU ON

20   WHICH ONES ARE AMADEO ENTITIES OR MIRABILIS SUBSIDIARIES. WE

21   TALKED EARLIER ABOUT QUANTUM DELTA ENTERPRISES, INC. DBA SIREN

22   RESOURCES, INC. DO YOU SEE THAT?

23       A    I DO. ON THE BOTTOM ON PAGE 3 UNDER EXHIBIT D.

24       Q    AND ON EXHIBIT A, THE GOVERNMENT LIST, EXHIBIT A IN

25   EVIDENCE UNDER CORPORATIONS, UNDER CC, DO YOU SEE QUANTUM

1    DELTA ENTERPRISES, INC. DBA SIREN RESOURCES, INC?

2        A    YES, IT'S THE SAME ITEM.

3        Q    BUT IT'S A MIRABILIS SUBSIDIARY; CORRECT?

4        A    THAT'S CORRECT.

5        Q    THEN WHY LEAVE IT HERE?

6        A    IT WAS ONE OF THE CORPORATE SHELL AND WHY THE

7    GOVERNMENT WANTED IT, I HAVE NO IDEA. I DID LOOK TO SEE IF IT HAD

8    ANY ASSETS BEFORE I GAVE IT UP, BUT, YOU KNOW, IT DIDN'T HAVE ANY

9    ASSETS.

10       Q    HOW DID YOU DETERMINE THAT QUANTUM DID NOT HAVE

11   ANY ASSETS?

12       A    TWO PRIMARY WAYS. THE PRIMARY WAY IS I TALKED TO

13   THE OFFICERS OF MIRABILIS AND  THE COUNSEL FOR MIRABILIS TO

14   DETERMINE THE PENDING LITIGATION AND SO I TRIED TO DETERMINE

15   WHAT I WANTED TO KEEP AND WHAT I DIDN'T WANT TO KEEP BEFORE I

16   EVEN STARTED NEGOTIATING THIS COMPROMISE AGREEMENT.  AND

17   SECONDLY, I LOOKED AT THE ACCOUNTING RECORDS THAT WERE

18   AVAILABLE TO ME.

19       Q    DID YOU ALSO LOOK AT ANY FINANCIAL RECORDS OR TALK

20   TO ANYONE ABOUT THE VALUE OF THE NEXIA SHELL OR NEXIA

21   CORPORATION?

22       A    I PREVIOUSLY STATED I MET WITH THE BOSH AND BIGHAM

23   COUNSEL, WHO WERE COUNSEL FOR BOTH NEXIA AS WELL AS MIRABILIS

24   IN THE PLAXAR CASE AND THEY TOLD ME THE VALUE OF THE CASE AND

25   THE GENERAL BASIS FOR THE CASE AND THAT IS WHY I WANTED TO KEEP

1   THE CASE IS BECAUSE IT HAD VALUE. I DISMISSED THE CASES THAT

2   DIDN'T HAVE VALUE.

3          MR. COBERT: OKAY. THANK YOU VERY MUCH.

4          THE WITNESS: YOU'RE WELCOME.

5          THE COURT: ANYTHING FURTHER FOR MR. CUTHILL?

6          MR. PARK: NOTHING, YOUR HONOR.

7          THE COURT: THANK YOU. THANK YOU, SIR.

8          ANY FURTHER EVIDENCE YOU CARE TO OFFER, MR. COBERT?

9          MR. COBERT: NOT AT THIS TIME, YOUR HONOR.

10         THE COURT: THANK YOU. MR. PARK, WHO WOULD YOU LIKE

11   TO CALL?

12         MR. PARK: YES, YOUR HONOR, WE WOULD CALL ANITA

13   CREAM.

14         THE COURT: AND DO THE PARTIES NEED A BREAK OR NOT

15   ARE WE OKAY? I DON'T KNOW HOW LONG IT'S GOING TO BE?

16         MR. PARK: I WOULD THINK --- WE HAVE TWO WITNESSES, SO

17   PROBABLY ANOTHER MAYBE HALF HOUR, 45 MINUTES, DEPENDING

18   ON THE CROSS.

19         THE COURT: WHAT DO YOU ---

20         MR. COBERT: I WOULD LIKE TO KEEP GOING AND FINISH,

21   YOUR HONOR.

22         THE COURT: I DON'T MIND IF EVERYBODY IS OKAY. OKAY.

23         MR. PARK: LET ME CALL ELIZABETH GREEN FIRST. SHE'S

24   HERE VOLUNTARILY, SO.

25         THE COURT: NO PROBLEM.

55

| 1 | MR. PARK: SHE'S UNDER SUBPOENA, BUT WE'RE NOT PAYING |
| 2 | FOR YOUR TIME. |
| 3 | MS. IDE: IF I MAY BE EXCUSED, YOUR HONOR? |
| 4 | THE COURT: CERTAINLY. THANK YOU, MS. IDE. |
| 5 | COME FORWARD AND BE SWORN. |
| 6 | ELIZABETH GREEN, |
| 7 | HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS |
| 8 | FOLLOWS: |
| 9 | THE CLERK: CAN YOU PLEASE STATE YOUR FULL NAME AND |
| 10 | ADDRESS FOR THE RECORD? |
| 11 | THE WITNESS: SURE. ELIZABETH ANN GREEN, 1224 EAST |
| 12 | LAKE COLONY DRIVE, MAITLAND, FLORIDA 32751. |
| 13 | THE CLERK: HAVE A SEAT. |
| 14 | MR. SHUKER: YOUR HONOR, I'M GOING TO HANDLING THE |
| 15 | CROSS IF THERE IS ONE. JUST SO YOU KNOW AS A GENERAL |
| 16 | BACKGROUND, WE CLEARLY DON'T WAIVE THE PRIVILEGE, BUT WE |
| 17 | ALSO THINK THIS IS IRRELEVANT TESTIMONY. IT'S THE PARTY'S |
| 18 | INTENT, NOT THE COUNSEL, BUT WE'LL GET TO THOSE ON SPECIFIC |
| 19 | QUESTIONS, BUT I WANTED TO CLEAR WE DON'T WAIVE THE |
| 20 | PRIVILEGE. |
| 21 | THE COURT: VERY GOOD. |
| 22 | DIRECT EXAMINATION |
| 23 | BY MR. PARK: |
| 24 | Q    GOOD AFTERNOON. COULD YOU STATE YOUR NAME, |
| 25 | PLEASE? |

1     A     YES. ELIZABETH A. GREEN.

2     Q     AND WHERE DO YOU PRESENTLY WORK?

3     A     AT BAKER AND HOSTETTLER.

4     Q     NOW, YOU WERE PREVIOUSLY THE COUNSEL FOR THE

5     DEBTOR IN THIS CASE?

6     A     I WAS.

7     Q     AND FOR WHAT PERIOD OF TIME WERE YOU COUNSEL FOR

8     MIRABILIS?

9     A     FROM THE DATE OF FILING THE PETITION UNTIL SEPTEMBER

10    21, 2009.

11    Q     THERE IS A STACK OF DOCUMENTS IN FRONT OF YOU, IF YOU

12    COULD TAKE A LOOK AT EXHIBIT C AND TELL US WHAT THE DOCUMENT

13    IS AND IF YOU RECOGNIZE IT?

14    A     THAT IS A MOTION FOR APPROVAL OF COMPROMISE

15    CONTROVERSY UNDER BANKRUPTCY RULE 90.19.

16    Q     AND WHO DRAFTED THIS?

17    A     THE INITIAL MOTION FOR COMPROMISE WAS DRAFTED BY

18    MYSELF. IT WAS TRANSMITTED TO ANITA CREAM WHO MADE ACTUALLY

19    SIGNIFICANT REVISIONS AND THEN WAS REVISED AGAIN AND SO, I

20    WOULD SAY IT WAS PROBABLY A MUTUAL DRAFTING BETWEEN THE

21    GOVERNMENT AND MIRABILIS.

22    Q     AND IF YOU TAKE A LOOK AT EXHIBIT H-10 OF THAT EXHIBIT

23    AND JUST CONFIRM THAT THAT'S YOUR ELECTRONIC SIGNATURE ON THE

24    DOCUMENT?

25    A     YES.

1     Q    AND THEN FLIP BACK TO EXHIBIT A AND B, DO YOU

2   RECOGNIZE BOTH OF THOSE DOCUMENTS?

3     A   I DO.

4     Q    AND CAN YOU RECALL WHO PREPARED THESE TWO CHARTS,

5   WHICH WERE ATTACHED TO EXHIBIT C?

6     A   THE CHARTS THAT WERE ATTACHED, DIDN'T THEY HAVE

7   LITTLE BOXES AROUND --- OKAY. I ACTUALLY DO NOT RECALL WHO

8   PREPARED THESE. I DO NOT THINK I DID.

9     Q    OKAY.

10    A   I WOULDN'T KNOW HOW TO DO THE BOXES.

11    Q    NOW AS DEBTOR'S COUNSEL AT THIS TIME, WERE YOU

12   INVOLVED IN NEGOTIATING THE RESOLUTION, WHICH ULTIMATELY

13   MADE IT INTO EXHIBIT C?

14    A   I WAS.

15    Q    AND WHO WERE YOU NEGOTIATING WITH ON THE

16   GOVERNMENT'S SIDE, IF YOU CAN TELL US, PLEASE?

17    A   SURE. ANITA CREAM AND RANDY GOLD.

18    Q    ALL RIGHT. AND YOU ---

19    A   AND CAROL IDE TO SOME EXTENT.

20    Q    YOU WERE IN COURT JUST NOW WHEN MR. CUTHILL

21   TESTIFIED, DO YOU RECALL THE TWO MEETINGS HE DISCUSSED ON

22   OCTOBER 8TH AND OCTOBER 31ST?

23    A   I RECALL THE OCTOBER 8TH. I VAGUELY RECALL THE

24   OCTOBER 31ST MEETING.

25    Q    WERE THERE ANY --- APART FROM THESE TWO MEETINGS

1   THAT HE TALKED ABOUT, WERE THERE ANY FACE-TO-FACE MEETINGS

2   THAT YOU HAD WITH EITHER MS. CREAM OR MR. GOLD IN CONNECTION

3   WITH TRYING TO REACH AN AGREEMENT HERE?

4       A       WE TRIED TO REACH AN AGREEMENT ACTUALLY BEFORE THE

5   CASE WAS FILED AND SO THERE WERE A NUMBER OF MEETINGS HELD

6   BETWEEN MYSELF, MR. GOLD, MS. CREAM AND REPRESENTATIVES OF

7   MIRABILIS, INCLUDING MR. SHUKER.

8       Q       AND IN TERMS OF THOSE MEETINGS, IF YOU COULD TURN TO

9   EXHIBIT A, THE SECOND PAGE AT THE VERY BOTTOM IT LISTS THE

10  CORPORATIONS THAT ARE GOING TO BE FORFEITED TO THE UNITED

11  STATES.

12      A       YES.

13      Q       WHAT'S SPECIFIC DISCUSSIONS, IF ANY, DO YOU RECALL

14  HAVING WITH EITHER MR. GOLD OR MS. CREAM ABOUT ANY OF THESE

15  CORPORATIONS THAT ARE LISTED HERE?

16      A       AT THE MEETING ON OCTOBER 8TH?

17      Q       ANY TIME WITH YOUR DISCUSSIONS WITH THEM OVER THE

18  PERIOD THAT THE AGREEMENT WAS UNDER CONSIDERATION.

19      A       I DON'T THINK THERE WERE ANY ACTUAL DISCUSSIONS

20  RELATED TO THE CORPORATIONS THEMSELVES AT THE MEETING ON

21  OCTOBER 8TH.

22      Q       AT SOME POINT IN THESE CORPORATIONS WERE IDENTIFIED

23  AS CORPORATIONS THERE WERE GOING TO BE FORFEITED TO THE UNITED

24  STATES AS A RESULT OF THIS COMPROMISE AGREEMENT; CORRECT?

25      A       YES.

59

1    Q    ANY RECOLLECTION AS TO HOW IT WAS AGREED UPON THAT

2    THESE WOULD GO TO THE GOVERNMENT AND THE OTHER THREE LISTED

3    ON EXHIBIT B WOULD GO TO THE BANKRUPTCY ESTATE?

4         MR. SHUKER: OBJECTION, YOUR HONOR, THAT'S GOING TO

5         PROBABLY CALL FOR SOME ATTORNEY-CLIENT PRIVILEGE OR

6         ATTORNEY-CLIENT WORK PRODUCT, IF HE WANTS TO ASK HER

7         ABOUT CONVERSATIONS WITH NOT HER CLIENT, THEN THAT

8         WOULD BE DIFFERENT, BUT HER MENTAL IMPRESSIONS OR

9         DISCUSSIONS WITH MR. CUTHILL, WE OBJECT.

10        THE COURT: AND YOUR RESPONSE, MR. PARK.

11        MR. PARK: I AGREE WITH THAT. SHE CAN LIMITED IT TO

12        WHATEVER CONVERSATION SHE RECALLS HAVING REGARDING THE

13        FORFEITURE OF THE CORPORATIONS AND THE ONES THAT WERE

14        GOING TO STAY IN THE ESTATE.

15        THE COURT: EXCLUDING ANY ATTORNEY-CLIENT

16        DISCUSSIONS?

17        MR. PARK: CORRECT.

18        THE WITNESS: COULD YOU REPEAT THE QUESTION?

19   BY MR. PARK:

20    Q    YES. IN TERMS OF THE CORPORATIONS THAT ARE GOING TO

21   GO TO THE GOVERNMENT, WHAT CONVERSATIONS DO YOU RECALL

22   HAVING WITH ANYONE FROM THE GOVERNMENT REGARDING THESE

23   COMPANIES COMING TO THE U.S. AS PART OF THE COMPROMISE

24   AGREEMENT?

25    A    I DON'T THINK I RECALL ANY EXACT CONVERSATIONS.

1     Q    AT SOME POINT IN TIME, WERE YOU PROVIDED A LIST BY THE

2   GOVERNMENT INDICATING WHICH CORPORATIONS THE UNITED STATES

3   WANTED TO HAVE FORFEITED AS PART OF ANY SETTLEMENT?

4     A    I WOULD ASSUME THAT'S WHERE THIS LIST CAME FROM.

5     Q    ON EXHIBIT B, IF YOU TURN TO THAT, THERE ARE THREE

6   CORPORATIONS LISTED THERE, AEM, HOTH AND MIRABILIS, THOSE WERE

7   GOING TO REMAIN IN THE BANKRUPTCY ESTATE AS PART OF THE

8   COMPROMISE; CORRECT?

9     A    THOSE WERE THE DEBTORS.  THERE WERE BANKRUPTCY

10  CASES FILED FOR THESE ENTITIES.

11     Q    I UNDERSTAND.  WAS THERE ANY DISCUSSION BY THE

12  GOVERNMENT WANTING TO FORFEIT THOSE CORPORATIONS AS PART OF

13  THE FORFEITURE?

14     A    INITIALLY, YES.

15     Q    OKAY.  WAS THERE AN AGREEMENT REACHED AS PART OF

16  THIS RESOLUTION THAT THE GOVERNMENT WOULD NOT, AND I'M

17  TALKING JUST IN CONVERSATIONS WITH GOVERNMENT COUNSEL, THAT

18  THE GOVERNMENT WOULD NOT FORFEIT THESE CORPORATIONS AND

19  THEY WOULD REMAIN DEBTORS IN BANKRUPTCY?

20     A    THAT WAS THE PURPOSE OF THE COMPROMISE.

21     Q    OKAY.  WHAT SPECIFIC DISCUSSIONS DO YOU RECALL WITH

22  MR. GOLD OR MS. CREAM REGARDING THE NEXIA STRATEGY

23  CORPORATION VERSUS PLAXAR LITIGATION THAT'S THE SUBJECT OF THE

24  HEARING TODAY?

25     A    AT THE SETTLEMENT CONFERENCE THAT WE HAD?

1    Q    ANY TIME DURING YOUR DISCUSSIONS WITH THEM.

2    A    I DON'T RECALL ANY CONVERSATION AT ALL RELATED TO

3    PLAXAR ITSELF AT THE SETTLEMENT CONFERENCE.

4    Q    DO YOU RECALL ANY CONVERSATION DURING THE OCTOBER

5    8TH SETTLEMENT CONFERENCE WITH THE GOVERNMENT INDICATED THAT

6    THEY WERE WILLING TO ALLOW LITIGATION INVOLVING MIRABILIS AND

7    ITS SUBSIDIARIES TO REMAIN WITH THE BANKRUPTCY ESTATE?

8         MR. SHUKER: OBJECTION, YOUR HONOR, HE JUST ASKED IF

9         SHE RECALLED ANY DISCUSSIONS AT ALL, SO IT'S ASKED AND

10        ANSWERED. IF SHE DOESN'T RECALL ANY DISCUSSIONS, YOU

11        CAN'T RECALL A PART OF THAT.

12        MR. PARK: WELL, I'M LIMITING IT TO WHAT IS ON EXHIBIT E.

13        THE COURT: I WILL OVERRULE, IF YOU CAN.

14        THE WITNESS: NOW, I DON'T KNOW WHAT THE QUESTION IS,

15        I'M SORRY.

16   BY MR. PARK:

17   Q    DO YOU RECALL ANY DISCUSSION DURING THE OCTOBER 8TH

18   SETTLEMENT CONFERENCE WHERE LITIGATION BY MIRABILIS AND ITS

19   SUBSIDIARIES IN GENERAL WAS DISCUSSED?

20   A    I THINK THE CONCEPT WAS THAT MIRABILIS WOULD KEEP

21   LITIGATION BECAUSE THAT WAS AN ASSET THAT WE BELIEVED THE

22   BANKRUPTCY ESTATE COULD PURSUE AND THAT THE GOVERNMENT

23   WOULD GET THE OTHER ASSETS.

24   Q    OKAY. AND IN CONNECTION WITH THAT REGARDING THE

25   MIRABILIS LITIGATION, WHICH NEXIA WAS ALSO A NAMED PLAINTIFF,

| | |
|---|---|
| 1 | THERE WAS NO DISCUSSION BY THE GOVERNMENT LAWYERS WERE THEY |
| 2 | WERE EXPRESSING CONCERN ABOUT ALLOWING THAT TO REMAIN IN THE |
| 3 | ESTATE SINCE NEXIA WAS BEING FORFEITED TO THE U.S; IS THAT |
| 4 | CORRECT? |

5      A    NOT THAT I RECALL.

6      Q    OKAY. AT ANY POINT IN TIME, WAS THERE ANY DISCUSSION

7  WITH MR. GOLD OR MS. CREAM ABOUT THE SPECIFIC CLAIMS, JUST THE

8  CLAIMS, THAT NEXIA HAD IN THE PLAXAR LITIGATION?

9      A    NO.

10     Q    WERE THERE DISCUSSIONS DURING THIS OCTOBER 8TH

11  MEETING REGARDING THIS LANGUAGE IN EXHIBIT A AND B TALKING

12  ABOUT ASSETS OF THE FOLLOWING CORPORATIONS INCLUDING, BUT NOT

13  LIMITED TO, THE BELOW LISTED LAWSUITS AND/OR SETTLEMENTS, WAS

14  THAT PHRASING EVERY DISCUSSED DURING ANY MEETING YOU HAD

15  WITH MR. GOLD OR MS. CREAM?

16     A    NO.

17     Q    DO YOU RECALL HAVING DISCUSSIONS WITH MS. CREAM

18  ABOUT SPECIFIC LITIGATION?

19     A    I RECALL HAVING EXTENSIVE DISCUSSIONS ABOUT THE

20  WINDPARK CASE.

21     Q    AND WHERE WAS THAT LITIGATION PENDING?

22     A    THAT WAS IN CHATTANOOGA, IT WAS A BANKRUPTCY CASE

23  IN CHATTANOOGA.

24     Q    OKAY. AND THAT ACTUALLY WAS MEMORIALIZED IN A

25  SEPARATE PROVISION IN THE MOTION FOR COMPROMISE SETTLEMENT?

63

| 1 | A | IT WAS. I THINK THERE WAS ALSO SOME DISCUSSION ABOUT |

THE LITIGATION RELATED TO THE PROFESSIONS OR THE MALPRACTICE

LITIGATION.

4          Q     OKAY.

5                MR. PARK:  THAT'S ALL I HAVE, YOUR HONOR.

6                THE COURT:  THANK YOU.  ANY CROSS?

7                MR. SHUKER:  YES, YOUR HONOR.

8                THE COURT:  MR. SHUKER.

9                        CROSS EXAMINATION

10  BY MR. SHUKER:

11         Q     GOOD AFTERNOON.

12         A     HELLO.

13         Q     DOES MR. CUTHILL KEEP A PRETTY TIGHT REIGN ON

14  SETTLEMENTS, HE PAY PRETTY PARTICULAR ATTENTION?

15         A     ABSOLUTELY.

16         Q     AND DID YOU MAKE ANY SETTLEMENTS THAT HE DIDN'T

17  AUTHORIZE?

18         A     NO.

19         Q     SO ANYTHING THAT WOULD HAVE BEEN DONE WAS DONE

20  WITH HIS AUTHORIZATION; CORRECT?

21         A     TO MY KNOWLEDGE, YES.

22         Q     MEANING, IF HE DIDN'T AUTHORIZE IT, YOU DIDN'T THEN GO

23  AND CUT A DIFFERENT DEAL?

24         A     NO.

25         Q     OKAY.  AND NOW, THE GOVERNMENT'S POSITION --- I WANT

1  TO SEE IF YOU UNDERSTAND THEIR POSITION --- IS THAT THIS LAWSUIT,

2  NEXIA, BECAUSE NEXIA WAS FORFEITED BECAME THEIR PROPERTY, IS

3  THAT YOUR UNDERSTANDING OF WHAT THEY'RE SAYING?

4      A    THAT'S WHAT I HEARD.

5      Q    OKAY. AND PRIOR TO THIS AGREEMENT, THE FIRM

6  REPRESENTING NEXIA AND MIRABILIS WAS BOSH AND BIGHAM;

7  CORRECT?

8      A    AND I BELIEVE ERIN BATES.

9      Q    OKAY. AND SO --- IF YOU'LL TURN TO EXHIBIT C AT THE END

10  THERE'S THE ORDER APPROVING COMPROMISE OF CONTROVERSY AND

11  THAT'S DATED MARCH 4, 2009; CORRECT?

12      A    IT IS.

13      Q    OKAY. SO UNDER THE GOVERNMENT'S POSITION, ON MARCH

14  4, 2009, THIS LAWSUIT ON NEXIA BECAME PROPERTY OF THE

15  GOVERNMENT; CORRECT, AS YOU UNDERSTAND THEIR POSITION?

16      A    I GUESS THAT'S WHAT THEY'RE SAYING.

17      Q    DID THE GOVERNMENT SUBSTITUTE IN AS COUNSEL FOR

18  NEXIA IN MARCH 2009 THAT YOU ARE AWARE OF?

19      A    NOT TO MY KNOWLEDGE.

20      Q    HOW ABOUT APRIL, MAY, JUNE, JULY, AUGUST, SEPTEMBER,

21  OCTOBER, NOVEMBER, DECEMBER 2009?

22      A    NOT THAT I KNOW OF.

23      Q    OKAY. TO YOUR KNOWLEDGE, DID THEY EVER SUBSTITUTE --

24  - ASK TO SUBSTITUTE AS COUNSEL FOR NEXIA OTHER THAN WHEN THEY

25  OPPOSED BROAD AND CASSEL'S NOTICE OF APPEARANCE?

1     A   I THINK THE ONLY ACTION THE GOVERNMENT TOOK WAS TO

2  INTERVENE IN THAT LITIGATION, TO STAY THE DISCOVERY.

3     Q   OKAY. AND DID THEY EVER REACH OUT TO YOU ABOUT

4  COORDINATING WITH BOSH AND BIGHAM SUBSTITUTION OF COUNSEL OR

5  FILES THEY WANTED TO GET UP TO SPEED ON THE LITIGATION?

6     A   NOT TO MY KNOWLEDGE.

7     Q   DID THEY TAKE ANY ACTION THAT SHOWED THEY WERE

8  GOING TO START RUNNING WITH THAT LITIGATION OR GET UP TO SPEED

9  AS TO WHAT IT INVOLVED?

10     A   NOT TO MY KNOWLEDGE.

11     Q   OKAY. THANK YOU.

12     THE COURT: AND MR. PARK, ANYTHING FURTHER?

13     MR. PARK: NOTHING FURTHER, YOUR HONOR.

14     THE COURT: THANK YOU. ANYTHING FURTHER FOR MS.

15  GREEN? CAN SHE LEAVE NOW? THANK YOU.

16     MR. LINSCOTT: MAY I BE EXCUSED, YOUR HONOR?

17     THE COURT: YES. THANK YOU, MR. LINSCOTT.

18     AND MS. CREAM, IF YOU'D COME FORWARD AND BE SWORN.

19     ANITA CREAM,

20  HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS

21  FOLLOWS:

22     THE CLERK: WILL YOU PLEASE STATE YOUR FULL NAME AND

23  ADDRESS FOR THE RECORD.

24     THE WITNESS: ANITA M. CREAM, U.S. ATTORNEY'S OFFICE,

25  400 NORTH TAMPA STREET, SUITE 3200, TAMPA, FLORIDA 33602.

1              THE CLERK: THANK YOU.

2                      DIRECT EXAMINATION

3    BY MR. PARK:

4        Q    GOOD AFTERNOON.

5        A    GOOD AFTERNOON.

6        Q    STATE YOUR NAME, PLEASE.

7        A    ANITA CREAM.

8        Q    AND TELL US WHERE YOU WORK?

9        A    I WORK FOR THE U.S. ATTORNEY'S OFFICE IN THE MIDDLE

10   DISTRICT OF FLORIDA.

11       Q    AND WHAT IS YOUR POSITION WITH THE U.S. ATTORNEY'S

12   OFFICE?

13       A    I'M THE CHIEF OF THE ASSET FORFEITURE SECTION AND THE

14   CRIMINAL DIVISION.

15       Q    AND HOW LONG HAVE YOU HELD THAT POSITION?

16       A    SINCE MAY OF 2002.

17       Q    NOW, JUST BRIEFLY, CAN YOU TELL US HOW YOU WERE

18   INVOLVED FROM BOTH A CIVIL STANDPOINT AND A CRIMINAL

19   STANDPOINT, I SUPPOSE, IN TERMS OF THE FORFEITURE BROUGHT

20   AGAINST THE VARIOUS ASSETS IN CONNECTION WITH THE LOSS ---

21   PROSECUTION AGAINST MR. AMADEO.

22       A    I CAN CERTAINLY EXPLAIN HOW I WAS INVOLVED. I DON'T

23   HAVE THE EXACT DATES THAT I FIRST BECAME AWARE OF IT. INITIALLY,

24   THE LITIGATION WAS BEING HANDLED BY --- OR THE INVESTIGATION WAS

25   BEING HANDLED BY MR. GOLD. AT SOME POINT, EITHER MR. GOLD OR

1   THE IRS SPECIAL AGENTS CONTACTED ME WITH SOME QUESTIONS ABOUT

2   ASSET FORFEITURE IN CONNECTION WITH THE FRANK AMADEO

3   INVESTIGATION AND I ANSWERED THOSE PRELIMINARY QUESTIONS,

4   MONTHS LATER IS WHEN WE ACTUALLY BEGAN ACTIVELY SEIZING

5   ASSETS AND MY RECOLLECTION IS WE DID THAT THROUGH BOTH

6   CRIMINAL AND CIVIL SEIZURE WARRANTS.

7           IT WAS AUSA, NICOLE ANDRACO, WHO IS THE ASSET

8   FORFEITURE LAWYER HERE IN THE ORLANDO OFFICE WHO HANDLED

9   THOSE, BUT I'M HERE DIRECT SUPERVISOR AND SO I HAD A ROLE IN THAT

10  AS HER SUPERVISOR.

11          AS TIME WENT ON AND THE CASE GOT COMPLICATED, I TOOK

12  ON A BIGGER ROLE AND ULTIMATELY TOOK OVER THE ASSET

13  FORFEITURE LITIGATION.

14      Q    NOW, IF YOU'LL LOOK AT EXHIBIT A AND B IN THE BOOK IN

15  FRONT OF YOU, CAN YOU TELL US IF YOU'VE SEEN THESE DOCUMENTS

16  BEFORE?

17      A    I HAVE.

18      Q    AND THERE ARE VARIOUS LAWSUITS LISTED ON EACH ONE; IS

19  THAT CORRECT?

20      A    CORRECT.

21      Q    DO YOU KNOW WHAT THE PROCESS WAS THAT ACTUALLY

22  LEAD TO THE IDENTIFICATION OF ALL OF THESE LAWSUIT AS

23  POTENTIALLY BEING FORFEITED TO THE US AS PART OF THE CRIMINAL

24  CASE?

25      A    YES, THROUGH THE CRIMINAL INVESTIGATION, MR. GOLD

1　　AND THE CASE AGENTS HAD OBTAINED FROM MR. AMADEO AND HIS I

2　　BELIEVE CIVIL LAWYERS, A LIST OR A CHART OF LITIGATION AND THEN

3　　THE AGENTS HAD GATHERED ADDITIONAL INFORMATION AS PART OF

4　　THEIR INVESTIGATION. THAT WAS THE GENESIS OF OUR FIRST

5　　INFORMATION ABOUT THE LAWSUITS.

6　　　　Q　　NOW, IN TERMS OF THE MOTION FOR COMPROMISE THAT IS

7　　BEING TESTIFIED ABOUT TODAY, IF YOU'LL LOOK AT EXHIBIT C, CAN YOU

8　　CONFIRM THAT YOUR ELECTRONIC SIGNATURE IS ON PAGE 10 OF THAT

9　　DOCUMENT?

10　　　　A　　IT IS.

11　　　　Q　　AND WHO ELSE SIGNED FOR THE GOVERNMENT?

12　　　　A　　MR. GOLD.

13　　　　Q　　WHO PREPARED THIS DOCUMENT, IF YOU CAN REMEMBER?

14　　　　A　　MS. GREEN AND I KNOW IT'S A LITTLE HARD TO TELL THE

15　　GREENS FROM THE CREAMS, BUT MS. GREEN INITIALLY DRAFTED THE

16　　AGREEMENT, TRANSMITTED IT TO US, I BELIEVE, ELECTRONICALLY, MR.

17　　GOLD AND I REVIEWED IT. WE HAVE REVISIONS AND MY RECOLLECTION

18　　IS WE HAD SEVERAL CONFERENCE CALLS BACK AND FORTH SENDING

19　　EDITS AND WORKING OUT AGREEMENTS. THERE WERE A FEW ISSUES

20　　THAT WERE PARTICULARLY CONTROVERSIAL AND TOOK UP MOST OF THE

21　　TIME. AS MS. GREEN TESTIFIED, A BIG ONE OF THOSE WAS THE WINDPAR

22　　LITIGATION.

23　　　　Q　　HOW INVOLVED WERE YOU OVERALL IN NEGOTIATING THE

24　　FINAL VERSION OF THIS COMPROMISE SETTLEMENT?

25　　　　A　　VERY INVOLVED.

1   Q      AND CAN YOU RECALL OVER WHAT PERIOD OF TIME THE

2   NEGOTIATIONS OCCURRED?

3   A      I BELIEVE IT WAS BETWEEN OCTOBER AND DECEMBER, BUT

4   I'M NOT CERTAIN ON THE DATES.

5   Q      NOW, TAKE A LOOK AT EXHIBIT A, WHICH IS THE

6   GOVERNMENT'S ASSET LIST. DO YOU HAVE ANY IDEA HOW THIS WAS

7   PREPARED OR WHO PREPARED IT?

8   A      I DON'T RECALL FOR CERTAIN WHO PREPARED IT. I HAD

9   THOUGHT THAT MS. GREEN HAD ORIGINALLY TRANSMITTED A DRAFT OF

10  BOTH THE GOVERNMENT EXHIBIT LIST AND THE DEBTOR'S ASSET LIST

11  BEHIND TAB B, BUT I'M NOT CERTAIN. I THINK THE INFORMATION

12  REFLECTED ON THE GOVERNMENT'S ASSET LIST WAS PULLED FROM THE

13  CIVIL FORFEITURE CASE AND THE CRIMINAL INDICTMENT, EITHER THE

14  PLEA AGREEMENT OR THE PRELIMINARY ORDER OF FORFEITURE.

15  Q      NOW, IN TERMS OF THE NEGOTIATIONS THAT HAVE BEEN

16  DISCUSSED THIS AFTERNOON, DO YOU HAVE ANY RECOLLECTION OF THE

17  OCTOBER 8TH AND OCTOBER 31ST MEETINGS THAT ARE REFERENCED IN

18  MR. CUTHILL'S NOTES IN EXHIBITS F AND G?

19  A      I DO.

20  Q      OKAY. DO YOU RECALL ANY DISCUSSIONS DURING EITHER

21  OF THOSE MEETINGS WHERE LITIGATION INVOLVING MIRABILIS AND ITS

22  SUBSIDIARIES WAS GOING TO REMAIN AN ASSET OF THE DEBTOR'S

23  BANKRUPTCY ESTATE?

24  A      I REMEMBER DISCUSSION OF CERTAIN PIECES OF MIRABILIS'

25  LITIGATION, I DON'T RECALL DISCUSSING ALL OF THE VARIOUS PIECES OF

70

1    LITIGATION NOR DO I RECALL A DISCUSSION OF MIRABILIS KEEPING THE

2    LITIGATION OF ITS SUBSIDIARIES.

3         Q       WHICH SPECIFIC PIECES OF LITIGATION DO YOU RECALL

4    BEING DISCUSSED DURING EITHER OF THOSE MEETINGS IN OCTOBER?

5         A       I REMEMBER DISCUSSIONS ABOUT THE POTENTIAL

6    MALPRACTICE CLAIMS, SOME OF THE FRAUDULENT TRANSFER ACTIONS,

7    THE LITIGATION INVOLVING THE PROPERTY IN RICHMOND, VIRGINIA

8    AND, OF COURSE, THE WINDPAR LITIGATION.

9         Q       AT ANY TIME DURING THE OCTOBER 8TH OR OCTOBER 31ST

10   MEETINGS, DID NEXIA STRATEGY CORPORATION COME UP AS A TOPIC OF

11   DISCUSSION?

12        A       I DON'T RECALL ANY SPECIFIC DISCUSSIONS ABOUT WHAT

13   WAS BEING FORFEITED FROM NEXIA OR NEXIA'S ASSETS NOR DO I --- I

14   DON'T REMEMBER THAT.

15        Q       OKAY. DO YOU RECALL ANY SPECIFIC DISCUSSION WITH MS.

16   GREEN, EITHER AT THOSE MEETINGS OR SOME OTHER TIME, WHERE THE

17   CLAIMS THAT NEXIA HAS IN THE PLAXAR LITIGATION WERE BEING

18   DISCUSSED?

19        A       NO.

20        Q       IF YOU LOOK AT EXHIBIT A AGAIN, AT THE VERY BOTTOM OF

21   THE SECOND PAGE, IT LISTS THESE VARIOUS CORPORATIONS. IN

22   CONNECTION WITH THE FORFEITURE OF THESE CORPORATIONS, WHAT

23   WAS YOUR UNDERSTANDING AS A SIGNATORY TO THIS DOCUMENT AS TO

24   WHAT EXACTLY WAS BEING FORFEITED TO THE UNITED STATES?

25        A       THE CORPORATIONS AND ANY ASSETS THAT THEY HELD.

| 1 | Q | AND IF YOU LOOK ABOUT THE LISTING OF THE |

CORPORATIONS UNDER CC, IT MAKES REFERENCE THE ASSETS OF THE

FOLLOWING CORPORATIONS INCLUDING, BUT NOT LIMITED TO, THE

BELOW LISTED LAWSUITS AND/OR SETTLEMENTS. DO YOU SEE THAT

LANGUAGE?

A   I DO.

Q   DO YOU RECALL ANY DISCUSSION WITH MS. GREEN WHERE

THE MEANING OF THAT LANGUAGE WAS DISCUSSED?

A   NO.

Q   WAS THAT LANGUAGE OR SOMETHING SIMILAR TO THAT

DISCUSSED DURING THE OCTOBER 8TH OR OCTOBER 31ST MEETING WITH

MR. CUTHILL PRESENT?

A   NOT THAT I RECALL.

Q   DID MS. GREEN EVER GIVE YOU THE AUTHORITY TO HAVE

CONVERSATIONS WITH MR. CUTHILL OUTSIDE OF HER PRESENCE?

A   YES, SHE DID.

Q   WHAT WAS THE SUBJECT OF THOSE CONVERSATIONS?

A   MR. CUTHILL HAD WANTED TO TALK TO ME ABOUT TWO

PIECES OF LITIGATION REGARDING NOTES FROM O2HR AND HE WAS

INTERESTED IN HAVING THE GOVERNMENT RETAIN HIM OR ALLOW HIM

TO PURSUE THAT --- THE COLLECTION OF THOSE DEBTS. MIRABILIS

RETAINED A THIRD NOTE OF O2HR THAT MR. CUTHILL WAS PURSUING

THROUGH HIS COUNSEL, MR. ADAMS, AND MS. GREEN HAD ALLOWED ME

TO SPEAK DIRECTLY WITH MR. CUTHILL AND MR. ADAMS ABOUT THAT

POSSIBILITY.

1      Q    AND DID YOU EVER HAVE ANY DISCUSSIONS WITH MR.

2  CUTHILL ABOUT THE LIMITS OF YOUR AUTHORITY IN TERMS OF WHAT

3  YOU COULD DO WITH THOSE NOTES?

4      A    YES.

5      Q    AND WHAT DID THAT CONSIST OF?

6      A    WHAT I EXPLAINED TO MR. CUTHILL AND THEN AGAIN, TO

7  MR. CUTHILL AND MR. ADAMS, WAS THAT NEITHER THE UNITED STATES

8  ATTORNEY NOR BY EXTENSION ANY ASSISTANT UNITED STATES

9  ATTORNEY HAD THE AUTHORITY TO HIRE PRIVATE COUNSEL OR

10  AUTHORIZE ANYONE TO HANDLE LITIGATION ON BEHALF OF THE UNITED

11  STATES, THAT ONLY DEPARTMENT OF JUSTICE LAWYERS COULD HANDLE

12  LITIGATION FOR THE UNITED STATES UNLESS THERE WAS APPROVAL

13  THROUGH WASHINGTON AS PART OF CONTRACTING  BID, A FORMAL

14  PROCESS.

15      BECAUSE OF THAT IS THE REASON THAT MR. CUTHILL

16  WANTED TO TALK ABOUT THE GOVERNMENT SELLING THE O2HR NOTES

17  TO MIRABILIS.

18      Q    IN TERMS OF THE LITIGATION INVOLVING MIRABILIS AND

19  NEXIA AGAINST PLAXAR, AS A SIGNATORY TO THIS DOCUMENT, WAS IT

20  YOUR UNDERSTANDING THAT NEXIA'S CLAIMS IN THAT LAWSUIT WERE

21  REMAINING IN THE BANKRUPTCY ESTATE?

22      A    NO, IT WAS NOT.

23      Q    WHAT WAS YOUR UNDERSTANDING?

24      A    MY UNDERSTANDING WAS THAT MIRABILIS WAS RETAINING

25  ITS RIGHTS TO THE LAWSUIT WAS A CO-PLAINTIFF.

1    Q    AND AS A GOVERNMENT LAWYER, WHAT AUTHORITY DID

2    YOU HAVE TO SETTLE A CASE SUCH AS THIS AND ALLOW A CLAIM BY

3    NEXIA BEING FORFEITED AS A CORPORATION TO THE U.S ALLOWING A

4    CLAIM BY THAT CORPORATION TO REMAIN IN LITIGATION BY PRIVATE

5    COUNSEL?

6    A    I HAVE NO AUTHORITY TO DO THAT.

7    Q    DID THAT SUBJECT EVER COME UP OUTSIDE OF THE CONTEXT

8    OF THE NOTES AS YOU JUST DISCUSSED?

9    A    I DON'T --- I DON'T BELIEVE SO.

10    Q    LOOK AT EXHIBIT A, AND ON THE SECOND PAGE, IT SAYS:

11    THE ASSETS OF THE FOLLOWING CORPORATIONS INCLUDING, BUT NOT

12    LIMITED TO, THE BELOW LISTED LAWSUITS OR SETTLEMENTS AND THEN

13    THERE ARE FIVE PIECES OF LITIGATION LISTED THERE. DO YOU SEE

14    THAT?

15    A    I DO.

16    Q    AND THEN BELOW THAT, THE CORPORATIONS ARE LISTED,

17    WHICH INCLUDES NEXIA; CORRECT?

18    A    CORRECT.

19    Q    DO YOU HAVE AN EXPLANATION AS TO WHY NEXIA'S CLAIMS

20    AGAINST PLAXAR ARE NOT LISTED WITH THESE FIVE PIECES OF

21    LITIGATION HERE?

22    A    I DON'T HAVE A SPECIFIC RECOLLECTION OF A DECISION

23    BEING MADE NOT TO INCLUDE IT. LOOKING BACK ON IT, I BELIEVE IT

24    WAS AN ERROR.

25    Q    AND SIMILARLY, IF YOU LOOK AT EXHIBIT B, WHERE IT LISTS

1    THE NEXIA STRATEGY LITIGATION AS THE SECOND LAWSUIT LISTED

2    THERE, WAS IT YOUR UNDERSTANDING AS A SIGNATORY OF THIS

3    DOCUMENT THAT NEXIA'S CLAIMS TO THAT LITIGATION WERE

4    REMAINING WITH THE DEBTOR AS AN ASSET OF MIRABILIS SINCE IT WAS

5    A SUBSIDIARY?

6         A    NO.

7         Q    WHEN DID YOU FIRST FIND OUT THAT THIS WHOLE ISSUE

8    WITH PRIVATE COUNSEL REPRESENTING NEXIA IN FRONT OF A CASE

9    PENDING BETWEEN JUDGE ANTON, WHEN DID IT FIRST COME TO YOUR

10   ATTENTION AS BEING A PROBLEM?

11        A    WELL, I WAS --- LET ME TAKE A STEP BACK IF I COULD TO

12   EXPLAIN THE FRAME WORK OF MY INVOLVEMENT. AFTER THE

13   COMPROMISE WAS APPROVED BY THE BANKRUPTCY COURT, WE

14   CONTINUED ON WITH THE FORFEITURE. WE DID NOT YET HAVE A FINAL

15   ORDER OF FORFEITURE IN THE CRIMINAL CASE THAT VESTED OWNERSHIP

16   OF ANYTHING IN THE UNITED STATES.

17        Q    WHEN DID THAT FINALLY GET ENTERED?

18        A    I BELIEVE IT WAS NOVEMBER OF LAST YEAR.

19        Q    2009?

20        A    CORRECT. THE FINAL ORDERS OF FORFEITURE IN THE

21   AMADEO CASE CAME IN PIECEMEAL. IN ORDER TO OBTAIN A FINAL

22   ORDER OF FORFEITURE, I HAVE --- THE GOVERNMENT IS REQUIRED TO

23   SEND NOTICE TO ALL POTENTIAL CLAIMANTS, ANYONE THAT THE

24   GOVERNMENT BELIEVES MAY HAVE AN INTEREST IN THE PROPERTY, AND

25   ALSO, TO PUBLISH NOTICE OF THE FORFEITURE ON THE INTERNET, ON THE

1    GOVERNMENT WEBSITE FOR THIRTY DAYS, THEN WE HAVE TO WAIT

2    THIRTY DAYS, BOTH FROM THE DATE OF DIRECT WRITTEN NOTICE TO

3    THIRD PARTIES AND THIRTY DAYS FROM THE DATE OF PUBLICATION

4    BEFORE WE CAN SEEK ENTRY OF A FINAL ORDER OF FORFEITURE.

5            FOR SOME OF THE ASSETS THAT HAPPENED EARLIER. FOR

6    THE CORPORATIONS, WE WEREN'T IN A POSITION TO FILE THE MOTION

7    UNTIL AS I SAY NOVEMBER OF 2009.

8        Q    OKAY. AND WHY IS THE FINAL ORDER OF FORFEITURE

9    SIGNIFICANT?

10       A    BECAUSE UNTIL THAT ORDER IS ENTERED, THE GOVERNMENT

11   DOESN'T HAVE A LEGAL RIGHT, IT DOESN'T OWN ANYTHING. THE

12   DEFENDANT IS DIVESTED OF INTEREST, BUT THE PROPERTY IS SORT OF IN

13   A LIMBO LAND. WHILE MR. AMADEO TECHNICALLY WAS NOT THE

14   OWNER, THE UNITED STATES WAS NOT YET THE OWNER EITHER. SO THAT

15   ORDER WAS ENTERED IN AS I SAY 1 BELIEVE, NOVEMBER OF 2009. AT

16   THAT POINT, WE ASKED THAT THE CIVIL DIVISION OF THE U.S.

17   ATTORNEY'S OFFICE EVALUATE THE PIECE OF LITIGATION AND

18   DETERMINE HOW TO PROCEED ON BEHALF OF THE UNITED STATES.

19           MR. PARK: THAT'S ALL I HAVE, YOUR HONOR.

20           THE COURT: AND MR. COBERT.

21           MR. COBERT: THANK YOU, JUDGE.

22                       CROSS EXAMINATION

23   BY MR. COBERT:

24       Q    GOOD AFTERNOON, MS. CREAM.

25       A    GOOD AFTERNOON.

76

1    Q    THOUGH I'VE KNOWING YOU FOR MANY YEARS, THIS IS MY

2    FIRST I THINK EVER CROSS EXAMINING YOU IN COURT. MS. CREAM ---

3    A    OR OUTSIDE.

4    Q    OR OUTSIDE OF THE COURT.

5         MS. CREAM, I PURPOSELY DID NOT INVOKE THE RULE SO YOU

6    WERE PRESENT HERE AND HEARD ALL OF MR. CUTHILL'S TESTIMONY.

7    A    I DID.

8    Q    OKAY. AND I WANT TO CLARIFY A COUPLE OF THINGS IF I

9    COULD WITH YOU. IF YOU TURN --- AGAIN, THE EXHIBIT BOOK --- I WANT

10   TO MAKE SURE WE'RE ALL CLEAR HERE --- LOOKING AT EXHIBIT B, THE

11   DEBTOR'S ASSET'S LIST.

12   A    YES.

13   Q    IF YOU'LL LOOK AT A AND B, THE FONT LOOKS PRETTY MUCH

14   THE SAME AND IF YOU LOOK THE ORDER OF FORFEITURE, EXHIBIT D IN

15   EVIDENCE, WOULD YOU AGREE WITH ME THE FONTS FOR A, B AND D ARE

16   PRETTY CLOSE, IT LOOKS LIKE AS YOU SAID EARLIER, THE FORFEITURE

17   ORDER WAS USED AS A TEMPLATE FOR A AND B?

18   A    YES, ABSOLUTELY. I JUST DON'T RECALL WHETHER I USED IT

19   AS A TEMPLATE OR MS. GREEN USED IT AS A TEMPLATE.

20   Q    OKAY.

21   A    BUT THERE'S NO QUESTION THAT IT WAS THE TEMPLATE.

22   Q    RIGHT. YOU WOULD AGREE WITH ME A LOT OF THE

23   LANGUAGE, THE WAY THINGS ARE DESCRIBED OR THE PREAMBLES OR

24   THE DESCRIPTIONS ARE ALMOST --- ARE VERBATIM FROM THE

25   FORFEITURE ORDERS?

1    A    I DO.

2    Q    LOOKING AT EXHIBIT B IN EVIDENCE, THE DEBTOR'S ASSET

3    LIST. THE SECOND LAWSUIT IT SAYS: MIRABILIS VENTURES, INC AND

4    NEXIA STRATEGY CORP VERSUS PLAXAR GROUP, LLC. WHAT DID YOU

5    BELIEVE THE GOVERNMENT WAS GETTING FROM THAT LAWSUIT ON THE

6    DEBTOR'S LIST?

7    A    IN TERMS OF A RECOVERY? I'M NOT SURE I UNDERSTAND

8    THE QUESTION.

9    Q    AS AN ASSETS. IT SAYS MIRABILIS AND NEXIA VERSUS

10   PLAXAR. WHAT WAS THE GOVERNMENT GETTING OUT OF THAT LAWSUIT

11   ON THE DEBTOR'S LIST? WHAT WAS THE DEBTOR NOT GETTING IN NEXIA

12   VERSUS PLAXAR?

13   A    NEXIA'S INTEREST IN THE LAWSUIT. THE WAY I READ

14   EXHIBIT B WAS THAT THE ASSETS OF MIRABILIS INCLUDING, BUT NOT

15   LIMITED TO, MIRABILIS' INTEREST IN THAT LAWSUIT AS A CO-PLAINTIFF

16   WERE GOING --- WAS GOING TO REMAIN IN THE ESTATE AND THAT THE

17   INTEREST OF NEXIA WOULD BE FORFEITED TO THE GOVERNMENT AS

18   PART OF THE FORFEITURE OF NEXIA.

19   Q    DID YOU PUT FORTH A LIST ON THE GOVERNMENT'S SIDE

20   THAT SAYS: NEXIA VERSUS PLAXAR IS A GOVERNMENT ASSET, IS THAT IN

21   THERE AT ALL?

22   A    IT'S NOT, BUT NOR IS THERE AN EXCEPTION NOTED THAT THE

23   GOVERNMENT IS FORFEITING ALL OF THE ASSETS OF NEXIA EXCEPT ITS

24   INTEREST IN THE MIRABILIS AND NEXIA VERSUS PLAXAR LITIGATION.

25   Q    THAT'S TRUE. BUT YOU SAID EARLIER THAT, IF I MAY QUOTE

1  YOU, YOU SAID THAT YOU DON'T RECALL ANY DISCUSSIONS REGARDING

2  MIRABILIS OR ITS SUBSIDIARIES.

3      A    CORRECT.

4      Q    AND WERE YOU AWARE THAT NEXIA IS A 100-PERCENT

5  WHOLLY OWNED SUBSIDIARY OF MIRABILIS?

6      A    IT WAS UNTIL IT WAS FORFEITED.

7      Q    OKAY. WERE YOU --- BEFORE IT WAS FORFEITED, WERE YOU

8  AWARE THAT IT WAS 100-PERCENT SUBSIDIARY OF MIRABILIS?

9      A    YES.

10      Q    OKAY. AND YOU SAID THE FORFEITURE OF NEXIA, THE SHELL

11  IF YOU WILL, THE CORPORATION, DIDN'T BECOME FINAL UNTIL

12  NOVEMBER OF 2009?

13      A    THAT'S MY RECOLLECTION, YES.

14      Q    OKAY. AND YOU SAID YOU DON'T RECALL ANY DISCUSSIONS

15  REGARDING NEXIA, THE WORD NEXIA AT ALL, IN TERMS OF THE

16  NEGOTIATIONS OF THE SETTLEMENT?

17      A    THAT'S CORRECT.

18      Q    YOU DON'T RECALL ANY DISCUSSIONS REGARDING THE

19  WORD PLAXAR, THE PLAXAR LITIGATION ---

20      A    I DON'T.

21      Q    --- IN REGARDS TO THE SETTLEMENT? OKAY. BUT YOU DO

22  RECALL THAT MIRABILIS WAS ONLY RETAINING ITS RIGHTS AS A CO-

23  PLAINTIFF IN THE PLAXAR LITIGATION?

24      A    THAT WAS MY UNDERSTANDING.

25      Q    THAT WAS YOUR UNDERSTANDING ON YOUR OWN, NOT

1    THROUGH ANY DISCUSSIONS WITH ANYBODY?

2        A    BASED UPON THE WAY THIS DOCUMENT WAS DRAFTED,

3    THAT'S WHAT I UNDERSTOOD MIRABILIS WAS ASKING FOR.

4        Q    OKAY. YOU SAID ALSO ON DIRECT THAT NEXIA VERSUS

5    PLAXAR, THE WAY IT WAS DESCRIBED HERE, AS MIRABILIS AND NEXIA

6    VERSUS PLAXAR, THAT THE LISTING WAS IN ERROR. IT SHOULD HAVE

7    BEEN LISTED DIFFERENTLY, BREAKING IT OUT TO THE CO-PLAINTIFFS?

8        A    NO. WHAT I MEANT TO SUGGEST IS, IT SHOULD HAVE BEEN

9    LISTED BOTH PLACES. IT WOULD BE --- IT WAS LISTED HERE --- I'M SORRY,

10   I TURNED THE PAGE NOW. IT'S IN B.

11            ALL OF THE LITIGATION WAS LISTED. AS YOU CAN SEE, SOME

12   OF IT HAS MULTIPLE PLAINTIFFS. SOME TIMES IT SAYS ET AL. IT WASN'T

13   A CONSCIOUS DECISION TO SUGGEST THAT MIRABILIS WAS GETTING

14   NEXIA'S INTEREST. IT WAS AN ATTEMPT TO MAKE CLEAR WHAT THE

15   PIECE OF LITIGATION WAS.

16       Q    RIGHT. BUT YOU SAID IT WAS ERROR TO HAVE NOT LISTED ---

17   THE BENEFIT OF HINDSIGHT, IF YOU WOULD HAVE LISTED NEXIA VERSUS

18   PLAXAR SEPARATE FROM MIRABILIS VERSUS PLAXAR.

19       A    IF ---

20       Q    THAT WOULD HAVE MADE IT MORE CLEAR. ISN'T THAT

21   TRUE?

22       A    WHAT I'M TRYING TO SAY, HAD THIS SAME CASE CAPTION

23   BEEN LISTED BOTH ON EXHIBIT A AND ON EXHIBIT B, PERHAPS IT WOULD

24   HAVE BEEN MORE CLEAR.

25       Q    AND IT WOULD HAVE BEEN MORE CLEAR IF ON EXHIBIT A, IT

1   SAID NEXIA VERSUS PLAXAR IS THE GOVERNMENT'S AND MIRABILIS

2   VERSUS PLAXAR STAYS WITH THE DEBTOR THAT WOULD HAVE BEEN

3   MORE CLEAR?

4       A       WELL, IT'S THE SAME PIECE OF LITIGATION, SO I DON'T --- I'M

5   NOT SURE THAT I UNDERSTAND YOUR QUESTION.

6       Q       WELL, WHO OWNS THE LITIGATION --- BECAUSE YOU CAN'T

7   HAVE TWO STEERING WHEELS, IF SOMEONE SAYS LEFT AND SOMEONE

8   SAYS RIGHT, WHO OWNS THE LITIGATION?

9       A       WELL, IF YOU AND I WERE TO SUE MR. PARK, YOU WOULD

10  OWN YOUR SHARE OF THE LITIGATION AND I WOULD OWN MINE. THAT'S

11  HOW I SEE THIS.

12      Q       RIGHT. BUT WHEN YOU SAID IT WAS IN ERROR NOT TO

13  BREAK IT APART, WOULDN'T HAVE BEEN MORE CLEAR TO NEXIA VERSUS

14  PLAXAR ON THE GOVERNMENT'S SIDE OF THE LEDGER AND MIRABILIS

15  VERSUS PLAXAR ON THE MIRABILIS SIDE OF THE LEDGER, FROM YOUR

16  PERSPECTIVE?

17      A       FROM MY PERSPECTIVE, IT WOULDN'T HAVE MADE A

18  DIFFERENCE TO BREAK IT OUT OR LIST IT TWICE, IT'S THE SAME THING.

19      Q       OKAY. BUT IT WASN'T LISTED TWICE AND IT WASN'T

20  BROKEN OUT.

21      A       NO, IT WASN'T.

22      Q       SO THAT ERROR WAS YOUR FAULT?

23      A       IT WAS APPARENTLY A SHARED MISUNDERSTANDING, MR.

24  COBERT, BECAUSE WHEN I CALLED YOU TO EXPRESS MY CONCERN

25  ABOUT WHAT WAS HAPPENING UPON LEARNING THAT YOUR FIRM WAS

1    TRYING TO REPRESENT THE DEBTOR, IT WAS I THINK VERY CLEAR TO

2    BOTH OF US THAT WE HAD ABSOLUTE OPPOSITE UNDERSTANDINGS OF

3    WHAT THIS DOCUMENT MET AND I CERTAINLY AGREE, THAT'S NOT A

4    SIGN OF SHARED LAWYERING, SO I WISH I WOULD HAVE DONE IT BETTER.

5        Q    WELL, THE FACT THAT I DISAGREE WITH YOU, DOESN'T MEAN

6    THAT IT'S A PROBLEM OF SHARED LAWYERING. YOU HEARD MR.

7    CUTHILL'S TESTIMONY, HE WAS PRETTY CLEAR THAT HE UNDERSTOOD

8    THAT HE OWNED THIS LAWSUIT, ALL OF IT, MIRABILIS VERSUS PLAXAR

9    AND NEXIA VERSUS PLAXAR, THOUGH THE GOVERNMENT IS GETTING THE

10   SHELL. SO THE ONLY ONE THAT IS NOT CLEAR ON IT, THE

11   MISUNDERSTANDING WOULD BE ON THE GOVERNMENT'S SIDE.

12       A    WELL, THAT'S ONE WAY OF VIEWING IT. I DON'T

13   UNDERSTAND. I DIDN'T HEAR ANYTHING TO EXPLAIN WHY MR. CUTHILL

14   HAD THE BELIEF THAT HE DID. AND IT CERTAINLY WASN'T WHAT HE HAS

15   EXPRESSED AS HIS INTENT. AND THIS COMPROMISE IS SOMETHING THAT I

16   UNDERSTOOD, DESPITE HAVING MULTIPLE CONVERSATIONS WITH HIM

17   AND WITH MS. GREEN.

18       Q    WELL, TO MAKE IT CLEAR, THE DUTY OF --- IN TERMS OF

19   INDICATING WHAT PART OF LITIGATION THE GOVERNMENT IS GETTING,

20   THE GOVERNMENT DIDN'T PUT IN MORE DETAIL IN EXHIBIT A, THE FACT

21   THAT THEY THOUGHT THEY OWNED THE NEXIA VERSUS PLAXAR

22   LITIGATION.

23       A    WELL, THE GOVERNMENT SAID, IT GOT ALL OF THE ASSETS

24   OF NEXIA INCLUDING, BUT NOT LIMITED TO, NOT LIMITED TO THIS

25   LITIGATION. I DON'T THINK THERE'S ANY AMBIGUITY THERE.

1     Q    WELL, YOU COULD HAVE SPLIT THE LITIGATION. YOU

2   ALREADY TALKED ABOUT THAT OR PUTTING IT BOTH PLACES. AND

3   AREN'T THERE OTHER ASSETS ON HERE. IT WASN'T UNUSUAL. THERE ARE

4   OTHER ASSETS ON HERE THAT THE GOVERNMENT AND MIRABILIS DID

5   SPLIT; ISN'T THAT TRUE?

6     A    THERE ARE OTHER ASSETS OF MIRABILIS THAT THE

7   GOVERNMENT FORFEITED AND WHERE THE GOVERNMENT FORFEITED AN

8   ASSET OF MIRABILIS, IT IS SEPARATELY LISTED, YES.

9     Q    WELL, SO WE'VE DONE OTHER SPLITS IN THIS CASE. IF YOU

10  LOOK AT EXHIBIT A AND B, WASN'T THERE A SPLIT OF THE WINDPAR

11  MATTER, WASN'T THAT SPLIT BETWEEN THE GOVERNMENT AND

12  MIRABILIS?

13     A    NO.

14     Q    NO?

15     A    THE GOVERNMENT GOT THE PROCEEDS OF THE SALE OF

16  MIRABILIS. IF YOU LOOK AT EXHIBIT A, PARAGRAPH D, PROCEEDS FROM

17  THE SALE OF 509 RIVER FRONT PARKWAY.

18     Q    YOU'RE CORRECT. BUT LET'S BE FAIR HERE. LOOK AT

19  EXHIBIT B, THAT'S WHAT THE GOVERNMENT GOT FROM SPLITTING

20  WINPAR. DIDN'T MIRABILIS ON EXHIBIT B ALSO GET PART OF WINDPAR?

21     A    WELL, THERE WERE NO FUNDS GENERATED BY A

22  FRAUDULENT TRANSFER ACTION, THAT ACTION WAS DISMISSED.

23     Q    AND WHO CAUSED --- BUT BESIDES THE VALUE OF IT, IT SAYS

24  THE FUNDS OF ANY. THE GOVERNMENT WAS GETTING PART OF WINDPAR

25  AND MIRABILIS GOT PART OF WINDPAR; CORRECT?

1    A    IT'S CORRECT THAT THERE WAS A POTENTIAL THAT

2    MIRABILIS MIGHT HAVE GOTTEN SOMETHING FROM WINDPAR, IT DID NOT

3    WORK OUT THAT WAY.

4    Q    OKAY. AND THE REASON IT DIDN'T WORK OUT THAT WAY IS

5    BECAUSE OF THE ACTIONS TAKEN BY THE GOVERNMENT.

6    A    THE REASON IT DIDN'T WORK OUT THAT WAY WAS BECAUSE

7    AS THIS COMPROMISE WAS BEING DISCUSSED, THE GOVERNMENT MADE

8    CLEAR THAT IT BELIEVED IT WOULD PREVAIL IN ITS MOTION FOR

9    TURNOVER OF ALL OF THE ASSETS OF THE ESTATE AND THE

10   GOVERNMENT WAS CLEAR THAT IN NO WAY WOULD IT AGREE TO BACK

11   DOWN FROM THAT LITIGATIVE POSITION AND KNOWING THAT, THIS

12   COMPROMISE WAS NONETHELESS ENTERED. AND YES, YOU'RE CORRECT,

13   THAT THE GOVERNMENT DID PREVAIL AND THE FUNDS WERE TURNED

14   OVER.

15   Q    SO AS A RESULT OF THE GOVERNMENT'S ACTION, THE SPLIT

16   OF WINDPAR, THE ESTATE GOT NOTHING?

17   A    AS WAS ANTICIPATED AT THE TIME OF SIGNING.

18   Q    IT'S STILL A SPLIT, BUT IT'S A SPLIT FOR THE MIRABILIS

19   ESTATE OF ZERO?

20   A    CORRECT.

21   Q    OKAY. AND THE REASON WHY THE ESTATE GOT ZERO IS

22   BECAUSE THE GOVERNMENT MADE A SETTLEMENT WITH THE TARGET

23   DEFENDANT; ISN'T THAT CORRECT?

24   A    THAT IS NOT CORRECT.

25   Q    THERE WERE ALSO OTHER SPLITS IN THE CASE. WASN'T

1    THERE ALSO A SPLIT INVOLVING THE NOTE FROM EIGENMANN, E-I-G-E-N-

2    M-A-N-N, WASN'T THERE A SPLIT THERE AS WELL?

3         A        THERE WAS IN TWO WAYS. I'M NOT SURE IF THEY'RE BOTH

4    ADDRESSED ON THIS LIST. THE FIRST WAY WAS THAT SHORTLY BEFORE

5    SETTLEMENT DISCUSSIONS BEGAN, MR. EIGENMANN HAD MADE, I

6    BELIEVE, A $500,000.00 ON THE NOTE TO MIRABILIS AND THE

7    GOVERNMENT AGREED NOT TO PURSUE FORFEITURE OF THAT NOTE. IN

8    ADDITION ---

9         Q        I'M SORRY. LET ME HELP YOU OUT. IF YOU GO TO EXHIBIT A

10   AND LOOK AT BB, IS THAT THE REFERENCE ON THE GOVERNMENT'S LIST

11   FOR THE ASSET FOR THE EIGENMANN NOTE?

12        A        CORRECT. BUT THE PAYMENT I JUST DISCUSSED CAME

13   BEFORE THIS. SO IN OTHER WORDS, THERE WAS A $500,000.00 PAYMENT

14   SITTING IN MIRABILIS' BANK ACCOUNT AT THE TIME THE DISCUSSIONS

15   WERE TAKING PLACE. THE GOVERNMENT AGREED NOT TO FORFEIT THAT

16   $500,000 AND ALSO TO ALLOW THE ESTATE TO KEEP THE NEXT PAYMENT,

17   WHICH I BELIEVE WAS DUE IN DECEMBER OF 2008.

18        Q        SO THERE WAS A SPLIT OF THE EIGENMANN NOTE BETWEEN

19   THE GOVERNMENT AND MIRABILIS?

20        A        CORRECT.

21        Q        AND WHERE IS THAT SPLIT ON THE DEBTOR'S ASSET LIST,

22   EXHIBIT B?

23        A        ON C.

24        Q        OKAY. SO THE GOVERNMENT DID A SPLIT WITH MIRABILIS

25   ON THE EIGENMANN NOTE. THE GOVERNMENT DID A SPLIT WITH

1   MIRABILIS ON THE WINDPAR MATTER AND IT'S YOUR TESTIMONY, THE

2   GOVERNMENT DID A SPLIT WITH MIRABILIS ON THE PLAXAR LITIGATION?

3      A       IT'S NOT MY TESTIMONY THAT IT'S A SPLIT, BUT THE

4   GOVERNMENT WAS FORFEITING NEXIA'S INTEREST AND MIRABILIS WAS

5   RETAINING ITS INTEREST.

6      Q       NOW, ON THE LIST OF CORPORATIONS, ON EXHIBIT A, IF YOU

7   KEEP ONE HAND IF YOU WILL ON EXHIBIT A, PARAGRAPH CC. LET'S TALK

8   ABOUT TWO THINGS IN PARTICULAR. I WANT TO TALK ABOUT THE

9   LAWSUITS AND THE CORPORATIONS. THAT'S WHERE THE COURT'S FOCUS

10  IS ON THE LAWSUITS AND CORPORATIONS.

11          IF YOU LOOK AT EXHIBIT A, PARAGRAPH CC AND AT THE

12  SAME TIME, PUT YOUR HAND IF YOU CAN ON EXHIBIT D, D AS IN DOG,

13  PAGE 3 OF 9.

14     A       YES.

15     Q       THEY LOOK THE SAME, BUT THEY'RE SLIGHTLY DIFFERENT,

16  AREN'T THEY? AND WOULD YOU AGREE WITH ME THEY'RE DIFFERENT

17  BECAUSE ON THE GOVERNMENT'S LIST, WHAT'S REMOVED THAT WAS ON

18  THE FORFEITURE LIST IS THE THREE DEBTORS?

19     A       CORRECT.

20     Q       OKAY. AND THE TWO OTHER NON-DEBTORS THAT ARE

21  OWNED BY MIRABILIS ARE STILL THERE, AND THAT WOULD BE NEXIA

22  STRATEGY AS WELL AS QUANTUM DELTA?

23     A       CORRECT.

24     Q       SO WHAT WAS YOUR UNDERSTANDING OF WHAT YOU WERE

25  GETTING OF VALUE FROM GETTING THE QUANTUM DELTA SHELL?

1    A    WELL, I ACTUALLY WASN'T CERTAIN THAT I WAS GETTING

2    ANYTHING OF VALUE, BUT IN A FORFEITURE CASE, IT'S ONE OF OUR

3    GOALS TO MAKE SURE THE DEFENDANT IS DEPRIVED OF THE

4    OPPORTUNITY TO CONTINUE TO ENGAGE IN CONDUCT WITH AN ENTITY

5    THAT'S USED AS AN INSTRUMENTALITY OF CRIME. AND SO IN MANY

6    WAYS, THE FORFEITURE WAS FOR A LAW ENFORCEMENT PURPOSE AS

7    OPPOSED TO A PECUNIARY PURPOSE.

8    Q    OKAY. THE LAW ENFORCEMENT PURPOSE IS TO PREVENT ---

9    A    THE CONTINUED USE.

10    Q    --- THE QUANTUM SHELL FROM BEING USED BY ANYBODY?

11    A    CORRECT.

12    Q    AND THE PRIMARY PERSON USING IT WAS --- WAS IT STILL

13    BEING USED AT THE TIME THE BANKRUPTCY CASE WAS FILED?

14    A    NOT THAT I KNOW OF, BUT THAT DIDN'T GIVE ME A

15    COMFORTABLE LEVEL THAT IT WOULDN'T BE USED AGAIN.

16    Q    AND IS IT FAIR TO SAY FOR THE NEXIA SHELL, YOU WERE

17    ALSO FOCUSING ON THE DETERRENT OR THE ASPECT, RATHER THAN ANY

18    MONETARY RECOVERY FROM NEXIA?

19    A    CORRECT.

20    Q    OKAY.

21    A    IN FACT, MR. COBERT, THAT IS THE POINT OF THE ISSUE THAT

22    I RAISED WITH YOU ABOUT THE REPRESENTATION OF NEXIA. THE ISSUE

23    ISN'T THAT THE GOVERNMENT IS ATTEMPTING TO PREVENT MIRABILIS

24    FROM RECOVERING NEXIA'S SHARE IN THE LITIGATION, IT'S THAT I DON'T

25    HAVE THE AUTHORITY AND I DID NOT AUTHORIZE THROUGH THIS

87

1   COMPROMISE FOR A PRIVATE LAW FIRM TO PURSUE AN ASSET THAT THE

2   GOVERNMENT FORFEITED.

3       Q      OKAY. SO YOUR TESTIMONY IS THAT THE NEXIA SHELL, IT'S

4   A DETERRENT ISSUE, IT'S NOT A MONETARY ISSUE?

5       A      CORRECT.

6       Q      SO CLEARLY FROM A DETERRENT ISSUE, YOU'RE NOT

7   FOCUSED AT ALL ON THE NEXIA VERSUS PLAXAR LITIGATION, IT WASN'T

8   A CONSIDERATION?

9       A      WELL, AS I INDICATED, ONCE WE OWNED NEXIA, THAT PIECE

10  OF LITIGATION WAS GIVEN TO OUR CIVIL DIVISION TO EVALUATE. UP

11  UNTIL THAT POINT, I REALLY DIDN'T HAVE A FIRM UNDERSTANDING AND

12  I'M NOT SURE I DO TODAY OF WHETHER OR NOT THAT'S LIKELY TO YIELD

13  ANY PROCEEDS.

14      Q      WHAT IS THE GOVERNMENT DOING --- I GUESS SINCE YOU

15  SAID NOVEMBER OF '09, I'LL GIVE YOU THE BENEFIT THERE, I DON'T HAVE

16  THAT HERE IN EVIDENCE, WHAT HAS THE GOVERNMENT DONE SINCE

17  NOVEMBER OF '09 TO PRESERVE THE VALUE, IF ANY, OF NEXIA VERSUS

18  PLAXAR WHILE IT FINISHES ITS EVALUATION?

19      A      THAT'S NOT SOMETHING THAT I'M HANDLING DIRECTLY, AS I

20  SAID, IT WAS REFERRED TO OUR CIVIL DIVISION.

21      Q      OKAY. WELL, LET'S TALK ABOUT WHAT THE GOVERNMENT

22  DID DO CONSISTENT WITH THEIR PRESERVATION AND VALUE. IF YOU

23  LOOK AT EXHIBIT J IN EVIDENCE, THIS IS THE PLAXAR LITIGATION, DO

24  YOU RECOGNIZE THE STYLE OF THE CASE? HAVE YOU EVER SEEN IT

25  BEFORE?

1        A     I'M NOT SURE IF I'VE SEEN THIS PARTICULAR DOCUMENT,

2   BUT I'VE SEEN SOME DOCUMENTS FROM THE PLAXAR LITIGATION.

3        Q     HAVE YOU DONE ANY ANALYSIS OR INVESTIGATION THAT'S

4   NOT YOUR RESPONSIBILITY?

5        A     I HAVE NOT DONE ANY.

6        Q     OKAY. THERE'S A NOTICE OF APPEARANCE AS ADDITIONAL

7   COUNSEL FOR THE UNITED STATES, DO YOU SEE THAT ON EXHIBIT J IN

8   EVIDENCE?

9        A     YES.

10       Q     FILED BY MR. PARK SITTING HERE?

11       A     YES.

12       Q     OKAY. IS THERE ANY APPEARANCE --- ARE YOU AWARE OF

13   ANY NOTICE OF APPEARANCE FILED BY THE GOVERNMENT ON BEHALF OF

14   NEXIA?

15       A     I AM NOT, BUT I AM NOT FAMILIAR WITH THE PLEADINGS

16   FILE IN THAT CASE.

17       Q     ARE YOU AWARE OF THE GOVERNMENT TAKING ANY STEPS

18   TO APPEAR TO AT LEAST PRESERVE ANY ASSETS AVAILABLE FOR NEXIA

19   IN THIS LITIGATION?

20       A     I'M NOT AWARE OF WHAT THE CIVIL DIVISION MAY OR MAY

21   NOT HAVE DONE. I DON'T BELIEVE THAT THERE WAS AN APPEARANCE,

22   BUT I'M REALLY NOT CERTAIN.

23       Q     OKAY. THE NEXT DOCUMENT THAT'S PART OF THIS

24   COMPOSITE THAT YOU REFERENCED EARLIER, IS THE GOVERNMENT'S

25   OBJECTION TO THE SUBSTITUTION OF MY FIRM AS COUNSEL FOR NEXIA,

1   YOU DIDN'T OBJECT TO MIRABILIS, BUT COUNSEL FOR NEXIA. DO YOU

2   SEE THAT?

3        A    YES.

4        Q    HAVE YOU EVER SEEN THIS BEFORE?

5        A    YES, I HAVE.

6        Q    OKAY. AND ARE YOU AWARE OF GOVERNMENT --- AND I'LL

7   REPRESENT TO YOU I HAVE THE DOCKET HERE IF YOU WANT TO LOOK AT

8   IT --- ARE YOU AWARE OF THE GOVERNMENT TAKING ANY STEPS TO

9   SUBSTITUTE IN AS COUNSEL FOR NEXIA?

10       A    AGAIN, I AM NOT FAMILIAR WITH THE DOCKET. IF YOU SAY

11  THEY HAVE NOT, I CERTAINLY HAVE NO REASON TO DOUBT YOU.

12       Q    THE LAST DOCUMENT IS A COURT FROM THE MAGISTRATE

13  JUDGE, JUDGE KELLY. HAVE YOU EVER SEEN THIS ORDER BEFORE?

14       A    I BELIEVE I HAVE, I'M NOT CERTAIN.

15       Q    OKAY. THIS IS PART OF THE REASON WE'RE HERE, THIS

16  ORDER OF APRIL 29TH OF THIS YEAR DISCUSSING THE SUBSTITUTION OF

17  COUNSEL FOR MIRABILIS AND NEXIA AND IF YOU'D LOOK AT

18  PARAGRAPHS 1 AND 3.

19       A    PARAGRAPHS 1 AND --- ARE THEY NUMBERED OR ---

20       Q    THEY'RE NUMBERED.

21       A    YOU MEAN IN THE ORDER PART, ON PAGE 3?

22       Q    CORRECT.

23       A    OKAY.

24       Q    DO YOU SEE WHERE THE COURT ALLOWED MY FIRM TO

25  SUBSTITUTE IN FOR MIRABILIS?

1     A    I DO.

2     Q    AND IF YOU READ PARAGRAPH 3 TO YOURSELF.

3     A    OKAY.

4     Q    ARE YOU AWARE OF ANY STEPS THE GOVERNMENT HAS

5 TAKEN TO PREVENT NEXIA FROM BEING DISMISSED FROM THE CASE?

6     A    AGAIN, IT'S NOT MY AREA OF RESPONSIBILITY. I'M NOT

7 CERTAIN WHAT THE GOVERNMENT MAY OR MAY NOT HAVE DONE.

8     Q    SO THE GOVERNMENT STILL AS FAR AS YOU KNOW TODAY,

9 HAS MADE NO DETERMINATION ON THE VALUE, IF ANY, OF NEXIA VERSUS

10 PLAXAR?

11    A    I'M REALLY NOT CERTAIN.

12    Q    AND YOU TESTIFIED EARLIER THAT THE MAIN PURPOSE OF

13 GETTING A FORFEITURE AS YOU SEE IT OF THE NEXIA SHELL, WAS A

14 DETERRENCE TO PREVENT ANY BAD PEOPLE OR BAD ACTS FROM

15 UTILIZING THE SHELL TO FURTHER A BAD ACT?

16    A    WELL, THAT'S ONE PURPOSE. IT WAS ALSO MY

17 UNDERSTANDING BASED ON THE CRIMINAL INVESTIGATION, THAT NEXIA

18 WAS WHOLLY FUNDED WITH PROCEEDS OF THE CRIMES TO WHICH MR.

19 AMADEO PLED GUILTY AND AGAIN, THROUGH FORFEITURE, ONE OF THE

20 THINGS THAT WE DO IS TRY TO RECOVER PROCEEDS. OFTEN TIMES, THAT

21 INVOLVES THE FORFEITURE OF SOMETHING WE ULTIMATELY LEARN

22 DOES NOT, IN FACT, HAVE VALUE, BUT THAT'S A DECISION THAT IS OFTEN

23 TIMES MADE AT THE END RATHER THAN AT THE BEGINNING.

24    Q    WELL, HERE WE ARE IN MAY OF 2010, WHAT VALUE, IF ANY,

25 DOES THE NEXIA SHELL HAVE FOR THE GOVERNMENT?

1      A     I DON'T KNOW THAT IT HAS ANY VALUE.

2          MR. COBERT: A FEW MORE, JUDGE.

3   BY MR. COBERT:

4      Q     IF YOU LOOK AT PARAGRAPH 26C OF THE MOTION, EXHIBIT C

5   IN EVIDENCE.

6      A     EXHIBIT C, PARAGRAPH WHICH?

7      Q     26C.

8      A     AND WHAT PAGE IS THAT ON?

9      Q     PAGE 7.

10     A     OKAY.

11     Q     YOU TESTIFIED ON DIRECT THAT YOU PARTICIPATED IN

12 REITERATIONS OF THIS DRAFT MOTION, IT BECAME A FINAL MOTION

13 THAT'S FILED WITH THE COURT, DOCKET ENTRY 101?

14     A     YES.

15     Q     OKAY. AND THESE DRAFTS OF THE SETTLEMENT MOTION,

16 DID YOU BRING ANY WITH YOU TODAY?

17     A     I DID NOT.

18     Q     AND YOU DIDN'T TAKE ANY NOTES AT THE SETTLEMENT

19 CONFERENCES WITH MR. CUTHILL, DID YOU?

20     A     I MAY HAVE. I DON'T RECALL.

21     Q     YOU DIDN'T BRING ANY OF YOUR SETTLEMENT NOTES WITH

22 YOU HERE TODAY?

23     A     I DID NOT.

24     Q     OKAY. LOOKING AT PARAGRAPH 26 C. IF YOU'D READ 26C TO

25 YOURSELF, PLEASE. NOW, 26C REFERS TO THE ASSETS ON EXHIBIT B THAT

1    ARE GOING TO REMAIN WITH MIRABILIS; DO YOU SEE THAT?

2        A    I DO.

3        Q    OKAY. AND IT SAYS ALL CAUSE OF ACTION INCLUDING, BUT

4    NOT LIMITED TO, FRAUDULENT TRANSFER CAUSE OF ACTION SHALL

5    REMAIN OR SHALL BE RETAINED BY THE DEBTORS.

6        A    I SEE THAT.

7        Q    AND DID YOU UNDERSTAND THAT INCLUDED ALL OF THE,

8    NOT ONLY THE CORPORATIONS, BUT THE CAUSE OF ACTION LISTED ON

9    EXHIBIT B?

10        A    I UNDERSTOOD THAT IT MET ANY CAUSE OF ACTION THAT

11    MIRABILIS, HOTH OR AEM HAD, YES.

12        Q    DOES IT SAY THAT?

13        A    THIS IS WHAT I UNDERSTAND IT TO SAY, ALL CAUSES OF

14    ACTION. I MEAN, OBVIOUSLY, IT DOESN'T ENCOMPASS A CAUSE OF

15    ACTION NOT OWNED BY MIRABILIS.

16        Q    WELL, IT DOESN'T SAY THAT, THAT'S JUST YOUR

17    INTERPRETATION OF IT, ISN'T THAT CORRECT?

18        A    SURE.

19        Q    BUT ISN'T IT CLEAR BY THIS THAT MIRABILIS, FOR EXAMPLE,

20    CAN'T SUE NEXIA BECAUSE YOU HAVE THE SHELL?

21        A    CORRECT.

22        Q    WASN'T THAT THE ATTEMPT TO PREVENT MR. CUTHILL FROM

23    SUING ANY OF THE ASSETS THAT MADE IT OVER TO THE GOVERNMENT'S

24    SIDE, INCLUDING THE CORPORATE SHELL?

25        A    AS I SIT HERE TODAY, I DON'T RECALL SPECIFICALLY WHY

1    WE BELIEVED THAT THIS PARAGRAPH WAS NECESSARY, BUT I THINK

2    THAT WE WERE INTENDING TO PREVENT AS YOU SAY, THE BANKRUPTCY

3    ESTATE FROM UNDERMINING THE SPIRIT OF THE --- OR RATHER THE

4    ACTUAL AGREEMENT REACHED BY PURSUING A FRAUDULENT TRANSFER

5    ACTION OF AN ASSET THAT HAD BEEN ALREADY FORFEITED TO THE

6    UNITED STATES.

7           MR. COBERT: ONE MOMENT, YOUR HONOR.

8           THE COURT: SURE.

9    BY MR. COBERT:

10    Q    YOU MENTIONED EARLIER THAT THERE IS SOME DIFFICULTY

11    OR PREVENTION THAT PRECLUDES THE GOVERNMENT FROM

12    PROSECUTING PRIVATE CAUSES OF ACTION?

13    A    THAT PREVENTS THE GOVERNMENT FROM?

14    Q    YEAH. COULD PRIVATE COUNSEL --- PRIVATE COUNSEL

15    COULD PURSUE THE LAWSUIT OF NEXIA VERSUS PLAXAR?

16    A    NOT IF IT'S AN ASSET OF THE UNITED STATES.

17    Q    OKAY. SO IT WOULD HAVE TO BE ASSIGNED OR SOME OTHER

18    WAY AROUND THAT PROBLEM TO ALLOW THE GOVERNMENT TO GET

19    SOME VALUE FROM NEXIA VERSUS PLAXAR IS THE ONLY THING YOU

20    COULD IS ABANDON IT?

21    A    I'M NOT SURE I UNDERSTAND YOUR QUESTION.

22    Q    IF YOU THOUGHT THE GOVERNMENT WAS SUPPOSED TO GET

23    NEXIA VERSUS PLAXAR, IS THERE SOME OTHER METHODOLOGY TO

24    ACHIEVE VALUE FOR THAT, TO GET IT TO PRIVATE COUNSEL AND

25    MONETIZE THAT LAWSUIT?

| 1 | A | WELL, THERE WOULD BE A COUPLE OF THINGS. THE |

2   GOVERNMENT COULD HANDLE THE LITIGATION DIRECTLY.

3   Q   THE GOVERNMENT COULD SETTLE WITH PLAXAR?

4   A   THE GOVERNMENT COULD SETTLE WITH PLAXAR. THE

5   GOVERNMENT COULD LITIGATE IT. THE GOVERNMENT WOULD, WITH

6   APPROVAL FROM THE APPROPRIATE AUTHORITIES AT THE DEPARTMENT

7   OF JUSTICE, RETAIN COUNSEL TO DO THAT. I GUESS THE GOVERNMENT

8   COULD SELL THE LITIGATION AS AN ASSET AND ALLOW SOMEONE ELSE

9   TO PURSUE IT.

10   Q   WELL, AS PART OF THE SETTLEMENT, YOU COULD HAVE

11   REQUIRED THERE BE SOME SORT OF DIRECT ASSIGNMENT OF NEXIA

12   VERSUS PLAXAR TO A THIRD PARTY, YOU COULD HAVE MONETIZED IT

13   DURING THE BANKRUPTCY PROCESS, COULDN'T YOU?

14   A   IF IT HAD EVERY BEEN DISCUSSED, WE CERTAINLY COULD

15   HAVE EXPLORED THAT.

16   Q   WERE YOU AWARE THAT --- OR ARE YOU AWARE NOT THAT

17   THERE'S ALSO A COUNTER-CLAIM?

18   A   I AM AWARE.

19   Q   OKAY. SO PLAXAR IS PROSECUTING A CLAIM, NOT ONLY

20   AGAINST MIRABILIS, BUT AGAINST NEXIA?

21   A   CORRECT.

22   Q   AND ARE YOU AWARE OF THE GOVERNMENT TAKING ANY

23   STEPS TO PREVENT PLAXAR FROM GETTING A JUDGMENT AGAINST NEXIA

24   AT ALL?

25   A   AGAIN, I AM NOT THE ASSISTANT UNTIED STATES ATTORNEY

1 RESPONSIBLE FOR HANDLING THAT LITIGATION NOW THAT NEXIA HAS

2 BEEN FORFEITED AND SO I AM REALLY NOT CERTAIN WHAT STEPS, IF

3 ANY, ANYONE IN THE OFFICE HAS TAKEN. AS I SIT HERE TODAY, I DON'T

4 SPECIFICALLY KNOW OF ANYTHING, BUT I'M NOT CERTAIN THAT I AM

5 FULLY AWARE OF WHAT MIGHT HAVE GONE ON.

6  Q DID THE GOVERNMENT TAKE ANY STEPS, DO YOU KNOW, TO

7 DISMISS THE NEXIA LAWSUIT?

8  A NOT THAT I KNOW OF.

9  MR. COBERT: I HAVE NOTHING FURTHER, JUDGE.

10  THE COURT: THANK YOU.

11  MR. PARK: JUST BRIEFLY, YOUR HONOR.

12  THE COURT: AND MR. PARK.

13   REDIRECT EXAMINATION

14 BY MR. PARK:

15  Q MS. CREAM, DO YOU KNOW WHETHER OR NOT THE PLAXAR

16 CASE IN FRONT OF THE FEDERAL COURT WAS STAYED FOR ANY PERIOD

17 OF TIME BECAUSE OF THE CRIMINAL INVESTIGATION?

18  A I KNOW THAT IT WAS STAYED. I'M NOT AWARE OF

19 PRECISELY OF WHEN THE STAY WAS LIFTED.

20  Q OKAY. NOW, YOU WERE ASKED SOME QUESTIONS ABOUT

21 THE SPLIT AGREEMENTS THAT YOU REACHED WITH MS. GREEN. WOULD

22 YOU SAY THAT YOUR NEGOTIATIONS WITH DEBTOR'S COUNSEL ON

23 WINDPAR WERE RATHER HEATED?

24  A THAT WOULD BE A FAIR CHARACTERIZATION, YES.

25  Q SO UNLIKE NEXIA STRATEGY CORPORATION, YOU HAVE

1     SPECIFIC RECOLLECTIONS OF DISCUSSIONS WITH DEBTOR'S COUNSEL

2     REGARDING WINDPAR?

3     A   YES.

4     Q   AND WHAT ABOUT THIS EIGENMANN NOTE, WAS THAT

5     SOMETHING YOU RECALL DISCUSSING WITH MS. GREEN?

6     A   YES.

7     Q   AND IS IT FAIR TO SAY THAT THESE SO CALLED SPLITS THAT

8     YOU AGREED TO WAS DONE AS A WAY TO ENTER INTO THE COMPROMISE

9     AS TO THOSE ASSETS?

10     A   YES.

11        MR. PARK: THAT'S' ALL I HAVE, YOUR HONOR.

12        THE COURT: THANK YOU. ANYTHING FURTHER?

13        MR. COBERT: VERY, VERY BRIEF, YOUR HONOR.

14              RECROSS EXAMINATION

15     BY MR. COBERT:

16     Q   SO MS. CREAM, YOU'RE NOT AWARE THAT THE PLAXAR STAY

17     WAS LIFTED ON DECEMBER 2ND OF 2009?

18     A   I AM NOT AWARE OF THAT, NO.

19     Q   OKAY. AND ARE YOU AWARE OF ANY OTHER PARTICIPATION

20     BY THE GOVERNMENT OTHER THAN THE ITEMS I IDENTIFIED IN EXHIBIT J,

21     THE APPEARANCE BY THE GOVERNMENT ON MARCH 29TH AND AN

22     OBJECTION TO OUR SUBSTITUTION AS COUNSEL FOR NEXIA?

23     A   AGAIN, I DON'T HAVE ECF ACCESS. I'M NOT AN ATTORNEY

24     OF RECORD IN THE CASE. I DON'T GET A COPY OF ALL OF THE PLEADINGS.

25     I REALLY AM NOT FULLY FAMILIAR WITH WHAT THE LITIGATION HAS

1   BEEN. AS I SIT HERE TODAY, I CAN'T THINK OF ANOTHER DOCUMENT,

2   BUT I'M NOT AT ALL CERTAIN.

3      Q   SO SITTING HERE TODAY, YOU DON'T KNOW IF NEXIA HAS

4   COUNSEL OR NEXIA IS SITTING OUT THERE UNREPRESENTED AND ABOUT

5   TO BE DISMISSED?

6      A   I KNOW THAT THE CIVIL DIVISION HAS TALKED ABOUT

7   PURSUING A VARIETY OF THINGS. I DON'T KNOW WHAT HAS ACTUALLY

8   BEEN FILED. AGAIN, I AM DIRECTLY INVOLVED IN THAT.

9      Q   WELL, YOU SAW THE ORDER YOU SAID BEFORE, EXHIBIT J,

10  THE THIRD ITEM, WHICH MAGISTRATE KELLY GAVE NEXIA 14 DAYS FROM

11  APRIL 29TH OR MAY 12TH TO SECURE COUNSEL. ARE YOU AWARE OF

12  ANYTHING DONE TO PROTECT NEXIA FROM HAVING ITS CASE DISMISSED?

13     A   I AM NOT IN THE LOOP. I AM NOT INVOLVED. I WOULD NOT

14  KNOW.

15          MR. COBERT: THANK YOU.

16          THE COURT: ANY FURTHER QUESTIONS?

17          MR. PARK: THAT'S ALL, YOUR HONOR.

18          THE COURT: THANK YOU, MS. CREAM.

19          MS. CREAM: THANK YOU.

20          THE COURT: THANK YOU.

21          ANY FURTHER EVIDENCE?

22          MR. PARK: NO, YOUR HONOR.

23          MR. COBERT: NO, YOUR HONOR.

24          THE COURT: THANK YOU. HOW LONG ARE YOU ARGUMENTS

25  GOING TO BE?

| 1 | MR. COBERT: THREE AND HALF MINUTES, YOUR HONOR. |
| 2 | THE COURT: PERFECT. GO. WHAT ABOUT YOU, MR. PARK? |
| 3 | MR. PARK: IF HE'S THREE AND HALF, I'LL BE THREE. |
| 4 | MALE SPEAKER: YOUR HONOR, MAY I GO AHEAD AND BE |
| 5 | EXCUSED, YOUR HONOR? |
| 6 | THE COURT: ALL YOU GUYS CAN LEAVE AS FAR AS I'M |
| 7 | CONCERNED. THANK YOU. |
| 8 | MR. COBERT: I DON'T THINK IT'S NECESSARY FOR DEFENSE |
| 9 | COUNSEL AND LITIGATION TO BE HERE, BUT THEY'RE WELCOME TO |
| 10 | STAY OR LEAVE. |
| 11 | THE COURT: YES. |
| 12 | MR. COBERT: YOUR HONOR, WHAT I PROVIDED TO COUNSEL |
| 13 | AND YOUR HONOR, I CAME UP WITH THE BEST SYSTEM I COULD |
| 14 | COME UP WITH, WHICH IS COLOR CODES. AND YOUR HONOR, I |
| 15 | TOOK BASICALLY THE ORDER ON FORFEITURE YOU HAVE HERE |
| 16 | AND I TOOK EXHIBIT A AND B, WHICH SERVED AS THE TEMPLATE |
| 17 | FROM THE FORFEITURE TO ARRIVE AT THE BANKRUPTCY |
| 18 | SETTLEMENT AND I HIGHLIGHTED THEM. I MATCHED THEM UP AND |
| 19 | WE'VE GOT THEM ALL THERE, JUDGE. |
| 20 | WE'VE GOT THE BLUE ONES, WHICH ARE THE ONES THAT GO |
| 21 | TO THE GOVERNMENT AND THE YELLOWS ONES, THE ONES THAT |
| 22 | REMAIN WITH THE DEBTOR. AND THE LOWER CASE INDICATES IT'S |
| 23 | ON THE GOVERNMENT'S LIST, AND THE UPPER CASE INDICATES IT'S |
| 24 | ON THE DEBTOR'S LIST. AND THEN ANY PARAGRAPH REFERENCE |
| 25 | FOR EMPHASIS, ARE REFERENCED TO YOUR MOTION TO APPROVE |

1  THE COMPROMISE FILED BY THE PARTIES, DOCKET ENTRY 101.

2  AND AS YOU HEARD TESTIMONY, YOUR HONOR, IF YOU

3  LOOK, YOU COULD SEE THERE ARE SPLITS. PARAGRAPH 5 WAS A

4  SPLIT BETWEEN THE GOVERNMENT AND MIRABILIS DEALINGS

5  WITH AS REFERRED TO AS THE WINDPAR LITIGATION. YOU SEE

6  SPLITS IN TERMS OF DEALING WITH THE CONRAD EIGENMANN

7  PROMISSORY NOTE BETWEEN THE GOVERNMENT AND MIRABILIS.

8  BUT WHAT YOU DON'T SEE IS A SPLIT BETWEEN THE LITIGATION ON

9  PAGE 4, DEALING WITH MIRABILIS VENTURES AND NEXIA VERSUS

10  PLAXAR. IT'S YELLOW. IT ONLY SHOWS UP IN ONE PLACE, WHICH

11  IS THE LIST OF THE ASSETS LITIGATION TO REMAIN WITH PLAXAR,

12  I'M SORRY, REMAIN WITH THE DEBTOR.

13  BUT FOCUSING, JUDGE, IF I COULD ON PAGE THREE AND FOUR

14  OF THIS BLUE AND YELLOW DOCUMENT, YOU'LL NOTICE THE LIST

15  OF CORPORATIONS, WHICH IS TAKEN IN THE SAME ORDER,

16  VERBATIM FROM THE FORFEITURE. THE ONLY ONES REMOVED ARE

17  THE THREE DEBTORS; AEM, HOTH AND MIRABILIS. THE ONES LEFT

18  BEHIND ARE EITHER AMADEO ENTITIES OR AS YOU HEARD

19  TESTIMONY ON, JUDGE, THERE'S NEXIA STRATEGY CORPORATION

20  AND THERE IS ALSO, JUDGE, THE QUANTUM ENTITY, WHICH ARE

21  LEFT BEHIND FROM THE TESTIMONY OF MR. CUTHILL BECAUSE

22  THEY'RE THE SHELLS, LEAVE THE CORPORATIONS, YOU WANT TO

23  PICK AND CHOSE YOUR FIGHTS.

24  THE KEY THING WAS TO GET, AS MR. CUTHILL ANALYZED,

25  THE LITIGATION. THAT WAS IMPORTANT TO HIM. AND THE

1     LITIGATION THAT WAS IMPORTANT AS YOU CAN SEE UNDER

2     LAWSUITS, JUDGE, ALL OF THEM ARE YELLOW AND THE ONES THAT

3     ARE BLUE, EVERYONE THAT IS BLUE, INVOLVES AN AMADEO

4     ENTITY. ALL OF THE BLUE ONES THAT WENT TO THE GOVERNMENT

5     ARE ALL EITHER AN AMADEO PLAINTIFF OR AN AMADEO RELATED

6     DEFENDANT. THAT IS WHY THERE IS NO DISCUSSION ABOUT THESE,

7     IT'S CLEAR, LITIGATION FOR MIRABILIS OR ITS RELATED ENTITIES

8     STAYS WITH MIRABILIS, LITIGATION INVOLVING AMADEO OR

9     AMADEO RELATED ENTITIES GOES TO AMADEO.

10     THE LANGUAGE OF INCLUDING, BUT NOT LIMITED TO, THAT

11     YOUR HONOR FOCUSED ON, IS TAKEN VERBATIM FROM THEIR

12     FORFEITURE ACTION. IT'S A CUT AND PASTE. YOU HEARD

13     TESTIMONY FROM MR. CUTHILL THAT HE WAS FOCUSED ON

14     GETTING LITIGATION AND HE HAD MIRABILIS AND NEXIA VERSUS

15     PLAXAR AND THAT'S WHERE THE VALUE WAS, ESPECIALLY, ON THE

16     NEXIA SIDE OF THE EQUATION.

17     YOU HEARD TESTIMONY FROM THE GOVERNMENT THAT

18     WITH THE SHELL, SHE THOUGHT BENEFIT OF HINDSIGHT, THAT SHE

19     ALSO GO THE NEXIA LITIGATION, BUT THERE'S NO REFERENCE IN

20     THE DOCUMENT TO THAT.

21     YOU HEARD TESTIMONY THAT UNFORTUNATELY IT WAS A

22     MISTAKE, AND I THINK IT WAS A MISTAKE MADE BY THE

23     GOVERNMENT, I THINK INNOCENT ENOUGH, BUT IT'S NOT A

24     QUESTION OF A MISINTERPRETATION OR PAROLE EVIDENCE TO

25     EXPLAIN THAT IT SHOULD HAVE BEEN ANYTHING DIFFERENT THAN

1    WHAT'S THERE. I CITED IN MY MOTION THE CASE LAW THAT IS

2    SPECIFIC OVERRULES THE GENERAL AND I HAVE 30 SECONDS LEFT

3    TO TELL THE COURT THAT I THINK THIS DOCUMENT, IN

4    SUMMARIZING HOW THIS WOULD WORK, SPEAKS VOLUMES

5    CLEARLY, THE OTHER STATEMENT OF INTENTION OF PARTIES IS

6    HOW THEY ACTED.

7         DID THE GOVERNMENT ACT AS IF IT OWNED NEXIA VERSUS

8    PLAXAR? YOU HEARD TESTIMONY THAT THEY FELT THEY

9    COULDN'T DO ANYTHING UNTIL THE FORFEITURE WAS FINAL. NOT

10   IN EVIDENCE, BUT THEY TELL ME I TAKE THEIR WORD, THAT IT WAS

11   NOVEMBER OF 2009 THAT THEY FINALLY COULD DO SOMETHING.

12   AND WHAT DO THEY DO? THEY DID NOTHING.

13        THE ONLY THING THEY DID DO WAS FILE A NOTICE OF

14   COUNSEL FOR THE GOVERNMENT BECAUSE THE GOVERNMENT HAD

15   PREVIOUSLY JUST FILED AN INTERVENTION AND OBJECTED TO MY

16   SUBSTITUTION. EVEN WITH THE ORDER FROM THE MAGISTRATE,

17   JUDGE, THE GOVERNMENT TOOK NO ACTION TO PROTECT NEXIA OR

18   DEFEND NEXIA IN REGARDS TO THE COUNTER-CLAIM, SO I THINK

19   THEIR ACTIONS ARE CONSISTENT WITH MR. CUTHILL'S POSITION IN

20   TERMS OF WHAT HE EXPECTED TO GET INTO THE SETTLEMENT,

21   WHICH WAS THE LITIGATION HIGHLIGHTED IN YELLOW.

22        THANK YOU, JUDGE.

23        THE COURT: THANK YOU. AND MR. PARK.

24        MR. PARK: THANK YOU, YOUR HONOR.

25        THE COURT: YOU'RE WELCOME.

1    MR. PARK: ALL RIGHT. LET ME FALL ON MY SWORD FIRST

2    BECAUSE THIS IS MY FAULT. THE CASE WAS ASSIGNED TO ME BY

3    MY CIVIL DIVISION IN 2009 AND QUITE CANDIDLY IT SAT AS A

4    STACK ON THE FLOOR OF MY OFFICE FOR A LONG TIME BECAUSE I

5    WAS WORKING ON OTHER MATTERS, AND FINALLY ONE DAY MR.

6    GOLD CAME INTO MY OFFICE AND SAID WHAT'S THE STATUS OF

7    NEXIA? I BEGAN LOOKING AT THE LAWSUIT AND THEN ALL OF THIS

8    HAPPENS WHEN BROAD AND CASTEL MOVES TO STEP IN TO

9    SUBSTITUTE AS COUNSEL.

10    IN TERMS OF WHAT WE'VE DONE IN THE CASE, JUDGE KELLY

11    AND JUDGE ANTON HAVE BEEN INFORMED THAT THIS DISPUTE IS

12    GOING ON. IN RESPONSE TO THE JUDGE'S ORDER, I THINK BOTH

13    SIDES FILED A NOTICE SAYING THE BANKRUPTCY JUDGE HAS TO

14    DECIDE THIS, SO THE GOVERNMENT IS NOT GOING TO TAKE ANY

15    FURTHER STEPS UNTIL THAT DECISION IS MADE.

16    I THINK IT WOULD HAVE BEEN IMPROPER OF ME TO AT THAT

17    POINT IN TIME TO GO IN AND SAY I'M REPRESENTING NEXIA, SO WE

18    HAVE ADVISED THE DISTRICT COURT OF THE CURRENT STATUS.

19    BUT I THINK THIS ARGUMENT CUTS BOTH WAYS. I HAVEN'T

20    MARKED THIS AS AN EXHIBIT. IT IS A PUBLICALLY FILED

21    DOCUMENT IN THE PLAXAR LITIGATION. MIRABILIS FILED A

22    MOTION TO EXTEND THE DEADLINE TO AMEND ITS COMPLAINT

23    AND THIS WAS FILED IN MARCH OF 2010 AND ONE REASON THEY

24    WANT TO AMEND THE COMPLAINT WAS AS THEY SAY, TO CHANGE

25    THE CAPTION TO REFLECT THAT THE NAMED PLAINTIFF IN THE

1    COMPLAINT SHOULD BE MIRABILIS VENTURES, INC., IN ITS

2    CORPORATE CAPACITY AS ASSIGNEE OF THE RIGHT OF NEXIA. THIS

3    WAS FILED BY BROAD AND CASTEL JUST A COUPLE OF MONTHS

4    AGO.

5         I MEAN, I THINK THE SAME ARGUMENT APPLIES TO THEM IF

6    THEY FELT THAT AFTER THIS AGREEMENT, WHICH THE COURT

7    APPROVED, IF THEY OWNED NEXIA, THEN THIS COULD HAVE BEEN

8    DONE A LONG TIME AGO.

9         I THINK THE FACT OF THE MATTER IS THAT BOTH PARTIES

10   WERE KIND OF CAUGHT OFF GUARD BY THIS AND IT HASN'T COME

11   TO A HEAD UNTIL THE LAST COUPLE OF MONTHS AND THAT IS WHY

12   WE'RE BACK IN FRONT OF THIS COURT.

13        THE COURT FOUND THE DOCUMENT TO BE AMBIGUOUS, SO I

14   BELIEVE WE'RE RELYING UPON THE EVIDENCE YOU HEARD TODAY

15   IS THE PROPER COURSE AND MS. CREAM TESTIFIED QUITE

16   EMPHATICALLY, THAT SHE HASN'T GOT THE AUTHORITY TO DO

17   WHAT BROAD AND CASTEL IS ASKING THIS COURT TO FIND. SHE

18   DID NOT HAVE THE AUTHORITY AS GOVERNMENT COUNSEL TO

19   ALLOW A PRIVATE LAW FIRM TO REPRESENT A CAUSE OF ACTION

20   BY EVEN A CORPORATE SHELL THAT'S BEEN FORFEITED TO THE

21   UNITED STATES.

22        PERHAPS AS SHE TESTIFIED, EXHIBIT A AND B, COULD HAVE

23   BEEN MADE CLEAR TO SAY NEXIA VERSUS PLAXAR IS FORFEITED,

24   MIRABILIS VERSUS PLAXAR STAYS IN THE LAWSUIT.

25        THE COURT: LET ME JUST ASK A QUESTION THEN. HOW CAN

1    YOU ALLOW MIRABILIS TO HIRE PRIVATE COUNSEL IF YOU

2    COULDN'T ALLOW NEXIA TO, HOW CAN YOU ALLOW MIRABILIS TO?

3    MIRABILIS WAS ALSO PART OF THE FORFEITURE.

4         MR. PARK: WE DID NOT FORFEIT MIRABILIS, YOUR HONOR.

5    THEY'RE REPRESENTING THEMSELVES THROUGH BROAD AND

6    CASTEL, THAT'S NOT A GOVERNMENT OWNED ENTITY.

7         THE COURT: IN THE SETTLEMENT, YOU SEPARATED WHO

8    WOULD BE CERTAINLY IN THE PRELIMINARY FORFEITURE ORDER,

9    MIRABILIS WAS INCLUDED.

10        MR. PARK: CORRECT.

11        THE COURT: AND THEN THERE WAS A SETTLEMENT HERE

12   AND YOU DIVIDED UP WHO WAS DEBTORS AND WHO WAS NOT, AND

13   THAT WAS THE WHOLE ISSUE --- THAT WAS ONE OF THE PRIMARY

14   ISSUES THAT WAS PENDING AT THE TIME THAT THE SETTLEMENT

15   WAS REACHED.

16        MR. PARK: RIGHT.

17        THE COURT: DOESN'T IT CUT THAT WAY ALSO?

18        MR. PARK: I DON'T BELIEVE, YOUR HONOR.

19        THE COURT: OKAY.

20        MR. PARK: CLEARLY, MIRABILIS WAS NOT FORFEITED, SO

21   IT'S NOT AN ISSUE.

22        THE COURT: BECAUSE THEY WERE NEVER IN THE FINAL

23   FORFEITURE ORDER, IS THAT THE ARGUMENT?

24        MR. PARK: CORRECT.

25        THE COURT: OKAY. I WAS JUST TRYING TO UNDERSTAND

1    WHY MIRABILIS WAS ABLE TO HIRE PRIVATE COUNSEL, BUT NEXIA

2    WOULD NOT BE ABLE TO.

3        MR. PARK: AND THAT'S ALL I HAVE.

4        THE COURT: OKAY.

5        MR. PARK: THANK YOU.

6        THE COURT: THANK YOU.

7        MR. COBERT: LET ME SAY ONE THING IN RESPONSE ON THAT

8    ISSUE. IF YOU LOOK AT THE FOOTNOTE ISSUED BY THE

9    MAGISTRATE, JUDGE, HE'S PERPLEXED. IT'S THE LAST DOCUMENT

10   IN EXHIBIT J. THE MAGISTRATE JUDGE IS SCRATCHING HIS HEAD

11   AND SAYING, SINCE THE ORDER OF THE BANKRUPTCY COURT,

12   FOOTNOTE 1, AND REFERRING TO THE ORDER OF MARCH OF '09

13   APPROVING THE SETTLEMENT, NO ATTORNEY HAS FILED A NOTICE

14   OF APPEARANCE ON BEHALF OF NEXIA BESIDES ITS CURRENT

15   COUNSEL AND WHO WAS ITS CURRENT COUNSEL AT THAT TIME,

16   IT'S THE COUNSEL THAT MIRABILIS HIRED FOR MIRABILIS AND

17   NEXIA. THEY'RE STILL THERE. THEY'VE ALWAYS BEEN THERE.

18   THEY HAVEN'T DONE ANYTHING LOOKING TO WITHDRAW AND

19   LEAVE NEXIA UNREPRESENTED.

20       BUT IT'S CLEAR THAT HERE IS NOW THE COURT SAYING

21   SOMEBODY DO SOMETHING AND EVEN SINCE NOVEMBER OF '09

22   WHEN THEY HAD CONTROL OF THE LITIGATION, DO SOMETHING,

23   THAT EITHER MY FIRM OR NEXIA AND MIRABILIS ORIGINAL

24   COUNSEL WAS DOING TO GIVE THEM DIRECTION. THE

25   GOVERNMENT GAVE NO DIRECTION. IT WAS NOT SUPERVISING OR

| 1 | HIRING EXISTING PRIVATE COUNSEL, LEAVING NEXIA BEAR, WHICH |
| 2 | IS INCONSISTENT WITH THE TERMS OF THE SETTLEMENT |
| 3 | AGREEMENT. |
| 4 | THE COURT: IF YOU WERE ALLOWED TO BE RETAINED AS |
| 5 | NEXIA'S COUNSEL IN THE PLAXAR LITIGATION AND YOU GOT A |
| 6 | SETTLEMENT OFFER FROM PLAXAR, WHO WOULD YOU CALL? |
| 7 | MR. COBERT: MR. CUTHILL. HE OWNS THE CHOSEN ACTION. |
| 8 | AND AS I SET FORTH IN MY MOTION I FILED A MONTII AGO, IT GOES |
| 9 | BACK TO LAW SCHOOL 101, I HAVEN'T SAID THE WORD CHOSEN |
| 10 | ACTION IN OPEN COURT, LIKE THE RULE AGAINST REPETITIOUS, WE |
| 11 | ALWAYS FORGET AT TIME LIKE PERSONAL PROPERTY OR REAL |
| 12 | PROPERTY THE GOVERNMENT WAS LIQUIDATING, ANOTHER ASSET, |
| 13 | A PIECE OF PROPERTY IS A CHOSEN ACTION, A CAUSE OF ACTION IS |
| 14 | A TANGIBLE PIECE OF PROPERTY AND ITS DEFINED IN BLACK'S LAW |
| 15 | DICTIONARY AND THAT CHOSEN ACTION OF MIRABILIS AND NEXIA |
| 16 | VERSUS PLAXAR, THAT ASSET, THAT CHOSEN ACTION WAS MR. |
| 17 | CUTHILL'S, PERIOD. |
| 18 | THE COURT: THANK YOU. |
| 19 | MR. SHUKER: YOUR HONOR. |
| 20 | THE COURT: YES, SIR, MR. SHUKER. |
| 21 | MR. SHUKER: ONE QUICK OBSERVATION FROM WHAT MS. |
| 22 | CREAM SAID. IF THEIR ISSUE IS: WELL, THIS PRIVATE ATTORNEY |
| 23 | CAN'T PURSUE ON BEHALF OF THIS FORFEITED COMPANY. THEN --- |
| 24 | AND THAT'S THEIR ISSUE, THAT CAN BE SOLVED ONE OF TWO |
| 25 | WAYS, LETTING MIRABILIS SUBSTITUTE IN AS A CHAPTER 11 |

1     TRUSTEE AS IT OFTEN DOES AS THE PROPER PARTY OR THEY

2     ASSIGN US THE CAUSE OF ACTION, WHICH I THINK WAS IMPLICIT IN

3     THE SETTLEMENT AGREEMENT. IT'S A FURTHER DOCUMENTATION,

4     ASSIGN IT. IF THAT'S THEIR ISSUE, WHICH IS WHAT I HEARD THEM

5     SAY, THEN THAT'S FINE BECAUSE THE IDEA WAS THAT THE

6     PROCEEDS ARE TO GO TO THE ESTATE.

7     THE COURT: THANK YOU.

8     MR. PARK: AND YOUR HONOR.

9     THE COURT: YES, SIR.

10    MR. PARK: IN TERMS OF THE PLAXAR CASE, I DO WANT TO

11    REMIND THE COURT THAT IT WAS STAYED FOR A LENGTHY PERIOD

12    OF TIME AND I BELIEVE THE STAY WAS LIFTED. I DON'T HAVE THE

13    EXACT DATE, BUT I THINK IT WAS AT THE END OF LAST YEAR.

14    MR. COBERT: YOUR HONOR, THAT'S CORRECT. IT'S DOCKET

15    ENTRY 178 IN THE DISTRICT COURT ACTION. THE STAY WAS LIFTED

16    DECEMBER 2, 2009 BY JUDGE ANTON.

17    THE COURT: VERY GOOD. AND JUST THAT YOU ALL KNOW, I

18    AM GOING TO CONSIDER ONLY WHAT I HEARD TODAY. I'M NOT

19    GOING TO GO THROUGH THE PLAXAR DOCKET. I'M NOT GOING TO

20    GO LOOK AND SEE WHAT ELSE MAY HAVE HAPPENED IN

21    CONNECTION WITH THE VARIOUS CRIMINAL MATTERS OR

22    ANYTHING ELSE, THAT'S WHY I SET TODAY'S HEARING. I

23    UNDERSTAND THAT THIS WAS NOT A HOT ISSUE AT THE TIME THAT

24    THE SETTLEMENT WAS ISSUED, BUT I WILL SAY THAT I STILL

25    TODAY FIND THE AGREEMENT CONFUSING ON THIS POINT, AND

1    YOUR TESTIMONY TODAY WAS QUITE HELPFUL.

2         I'M GOING TO ISSUE A WRITTEN OPINION. I THINK YOU NEED

3    A WRITTEN OPINION IN THE CASE. I'M NOT GOING TO TRY TO MAKE

4    AN ORAL RULING. MOREOVER, I'M TOO TIRED TO MAKE AN ORAL

5    RULING. I FIND I DO VERY POORLY WHEN I DO THAT. SO I WILL

6    ISSUE ONE AS QUICKLY AS I CAN. CERTAINLY, I KNOW WITH THE

7    PENDING LITIGATION ACTIVE, YOU NEED ME TO DO SO QUICKER

8    RATHER THAN LATER, SO I'LL DO THE BEST I CAN.

9         IS THERE ANYTHING ELSE THAT I NEED TO KNOW TODAY?

10        MR. COBERT: NO, YOUR HONOR.

11        MR. PARK: NO.

12        THE COURT: AND IN MIRABILIS, DO WE HAVE ANYTHING

13   FURTHER SET, MR. SHUKER?

14        MR. SHUKER: WE HAVE SOME STATUS CONFERENCE, PRE-

15   TRIALS AND CLAIMS OBJECTIONS IN JUNE OR SOMETHING LIKE

16   THAT.

17        THE COURT: OKAY. SO WE DON'T NEED TO SET A FURTHER

18   DATE FOR MISCELLANEOUS STUFF?

19        MR. SHUKER: NO, NO, I THINK WE'VE GOT IT COVERED.

20        THE COURT: OKAY. THANK YOU. THE COURT IS IN RECESS.

21   I'M GOING TO FINISH MY NOTES. THANK YOU.

22        (WHEREUPON, THE HEARING WAS CONCLUDED AT 5:11 P.M.)

23

24

25

109

1                           CERTIFICATE OF OATH

2    STATE OF FLORIDA

3    COUNTY OF SEMINOLE

4

5        I, MARGIE A. GREEN, NOTARY PUBLIC, CERTIFY THAT I WAS

6    AUTHORIZED TO AND DID TRANSCRIBE, FROM CD-R, THE FOREGOING

7    PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD

8        I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE,

9    ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY

10   INTERESTED IN THE ACTION.

11        DATED THE 5TH DAY OF AUGUST 2010.

12

13

14                         Margie A. Green

15                         MARGIE A. GREEN

16                   NOTARY PUBLIC – STATE OF FLORIDA

17                   MY COMMISSION NO.: DD0714428

18                   MY COMMISSION EXPIRES: 9/13/2011

19

20

21

22

23

24